## IN THE UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **IN RE:** | **CHAPTER 7** |
| **BLOMQUIST BUILDERS GROUP INC.,** | |
| **Debtor.** | **CASE NO. 23-59198-WLH** |

### NOTICE OF HEARING ON DEBTOR'S MOTION TO DISMISS

      **PLEASE TAKE NOTICE** that on January 18, 2024, Blomquist Builders Group Inc. ("Debtor") filed its *Motion to Voluntarily Dismiss Chapter 7 Case or for Court to Abstain* (the "Motion") and related papers with the Court seeking an order dismissing the above-captioned Chapter 7 case.

      **PLEASE TAKE FURTHER NOTICE** that the Court will hold a hearing on the Motion at **10:30 A.M. on February 13, 2024 in Courtroom 1403, United States Courthouse, 75 Ted Turner Drive, SW, Atlanta, Georgia 30303**, which may be attended in person or via the Court's Virtual Hearing Room. You may join the Virtual Hearing Room through the "Dial-in and Virtual Bankruptcy Hearing Information" link at the top of the homepage of the Court's website, www.ganb.uscourts.gov, or the link on the judge's webpage, which can also be found on the Court's website. Please also review the "Hearing Information" tab on the judge's webpage for further information about the hearing. You should be prepared to appear at the hearing via video, but you may leave your camera in the off position until the Court instructs otherwise. Unrepresented persons who do not have video capability may use the telephone dial-in information on the judge's webpage.

      Your rights may be affected by the court's ruling on these pleadings. You should read these pleadings carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.) If you do not want the Court to grant the relief sought in these pleadings or if you want the Court to consider your views, then you and/or your attorney must attend the hearing. You may also file a written response to the pleading with the Clerk at the address stated below, but you are not required to do so. If you file a written response, you must attach a certificate stating when, how and on whom (including addresses) you served the response. Mail or deliver your response so that it is received by the Clerk before the hearing. The address of the Clerk's Office is Clerk, U. S. Bankruptcy Court, Suite 1340, 75 Ted Turner Drive, Atlanta Georgia 30303. You must also mail a copy of your response to the undersigned at the address stated below.

      This 18th day of January, 2024.

**JONES & WALDEN LLC**
*/s/ Leslie M. Pineyro*
Leslie M. Pineyro
Georgia Bar No. 969800
Mark Gensburg
Georgia Bar No. 213119
*Proposed Attorneys for Debtor*
699 Piedmont Avenue, NE
Atlanta, GA 30308
(404) 564-9300
lpineyro@joneswalden.com
mgensburg@joneswalden.com

**IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| IN RE:<br><br>**BLOMQUIST BUILDERS GROUP INC.,**<br><br>Debtor. | **CHAPTER 7**<br><br>**CASE NO. 23-59198-WLH** |

**MOTION TO VOLUNTARILY DISMISS CHAPTER 7 CASE OR FOR COURT TO
ABSTAIN**

COMES NOW Blomquist Builders Group Inc. ("Debtor") and files this *Motion to Voluntarily Dismiss Chapter 7 Case or for Court to Abstain* (this "Motion"). By and through this Motion Debtor requests that the Court dismiss the above-captioned Chapter 7 case (this "Case").

**BACKGROUND**

1.      Debtor initiated this Case by filing a voluntary petition (the "Petition") under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") on September 21, 2023 (the "Petition Date").

2.      Debtor is a Georgia corporation. Prior to the Petition Date, Debtor built and sold custom homes for its clients (the "Business").

3.      Debtor and H. Alan Mushegan ("Mr. Mushegan") and Denise Mushegan a/k/a Anita D. Chapman ("Ms. Mushegan", together with Mr. Mushegan, the "Defamation Defendants") were parties to a *New Construction Contract for the Purchase and Sale of Residential Real Property*, dated April 27, 2016 (the "Construction Contract").

4.      Pursuant to the terms of the Construction Contract, Debtor was to construct a home for Defamation Defendants (the "Home") at an address of 5020 Pindos Trail, Powder Springs, Georgia, 30127 (the "Property").

5.    Over the course of Debtor's construction of the Home, a dispute arose between Debtor and the Defamation Defendants concerning work that had been done to the Home and on the Premises (the "Dispute").

6.    As a consequence of the Dispute, the Defamation Defendants created a website for the purpose of making what Debtor alleges are defamatory allegations against Debtor.[1]

7.    On or about February 23, 2018, Debtor sued the Defamation Defendants for defamation in the Superior Court of Cobb County, Georgia (the "Superior Court"), Civil Action File No. 18101356 (the "Defamation Lawsuit"). The Defamation Lawsuit remains pending.

8.    Well after discovery had been extended and completed in the Defamation Lawsuit, on or about September 22, 2020, Defamation Defendants filed a motion to add parties, specifically, Jennifer Blomquist, Debtor is sole shareholder, and re-open discovery.  The Superior Court denied such motion for good cause shown pursuant to order entered on or about May 24, 2021.  A true and correct copy of said order is attached hereto as **Exhibit "A"**.

9.    Also on September 22, 2020, the Defamation Defendants filed an *Answer, Defenses, and Counterclaim*, in the Defamation Lawsuit, which asserted counterclaims against Debtor (the "Counterclaims").

10.    One week after the Superior Court denied the Defamation Defendant's request to reopen discovery and add parties in the Defamation Lawsuit, on June 2, 2021, the Defamation Defendants filed a complaint against Jennifer Blomquist individually initiating civil action number 21104229 in the Superior Court of Cobb County, Georgia (the "Dismissed Superior Court Proceeding") which was nearly identical to the Amended Complaint the Defamation Defendants filed in conjunction with the motion to add, which was denied, in the Defamation Lawsuit. A true

---

[1] As of the date hereof, the website is still active.

and correct copy of the complaint filed in the Dismissed Superior Court Proceeding is attached hereto as **Exhibit "B"**.

11.     The Superior Court granted Jennifer Blomquist's Motion to Dismiss in the Dismissed Superior Court Proceeding on December 20, 2021.  A trued and correct copy of said order is attached hereto as **Exhibit "C"**.

12.     After years of exhaustive and expensive litigation, Debtor filed the instant Bankruptcy Case with the misunderstanding that it would bring an end to the Defamation Lawsuit and Counterclaims in which Debtor is both a plaintiff and counterclaim defendant.

13.     However, with the discovery period closed in the Defamation Lawsuit and Defamation Defendants attempts to re-open the same denied, the Defamation Defendants have used this Case to issue discovery requests pursuant to Federal Rule of Bankruptcy Procedure ("Rule") 2004.

14.     The Defamation Lawsuit is ready for trial, and Debtor's pre-petition litigation counsel is prepared to proceed to trial.

15.     It is very unlikely that the Defamation Defendants will prevail with their Counterclaims, and in, in fact, it is probable that Debtor will prevail and obtain a judgment against the Defamation Defendants in the Defamation Lawsuit.

16.     Debtor has no non-insider creditors outside of the unliquidated and disputed claims of the Defamation Defendants.

17.     Debtor is not seeking to reorganize and has ceased operations.

18.     Additionally, four parcels of real estate have been identified as being titled in Debtor's name. Debtor was not aware that the four parcels of real estate were titled in Debtor's

name until after the Petition Date. However, as detailed below, any interest of Debtor, and therefore the bankruptcy estate, is junior to the resulting trust of Blake Blomquist.

19.     Accordingly, the Bankruptcy Estate has no material assets and no non-insider allowed claims to which a distribution would be due regardless.

## ARGUMENT

20.     This Court should permit the Debtor to voluntarily dismiss this Case for two reasons: (A) there is cause to dismiss this case under Section 707(a), and (B) dismissal so as to abstain under Section 305 is appropriate because this Bankruptcy Case serves no bankruptcy purpose.

### A. *Cause Exists to Dismiss Under 11 U.S.C. § 707(a).*

21.     "[B]ankruptcy courts routinely apply § 707(a) to a debtor's motion to voluntarily dismiss." *In re Mercer*, 2010 Bankr. LEXIS 4693, *4 (Bankr. M.D. Ga. Dec. 16, 2010). While a debtor has no absolute right to a voluntary dismissal under Section 707(a), a Court may grant the Debtor's request with an adequate showing of "cause." *Id.*

22.     "Cause" is not defined in the Bankruptcy Code. *Id.* However, broadly there are three lines of cases courts apply to determine if cause exists for voluntary dismissal, which are as follows:

> The first line of cases holds that there can be no dismissal under § 707(a) "if there is any showing of prejudice to creditors." This expression of the test implies that any prejudice to creditors is an absolute bar to voluntary dismissal, no matter how compelling the reasons for the debtor's request for voluntary dismissal.
>
> Another line of cases holds that "the test [for cause] turns on whether or not the dismissal is in the best interests of the debtor and the creditors of the estate ... with particular emphasis on whether the dismissal would be prejudicial to creditors." Courts adhering to this line of cases apply what may be characterized as a balancing of interests test. A "[d]ebtor's interest lies in securing a fresh start while [a] creditor's interest concerns the prejudice and delay encountered in pursuing its claim."

Finally, in a third line of cases, dismissal is granted freely unless it will cause "plain legal prejudice" to creditors. Plain legal prejudice has been described as "prejudice that is significant and real, not potential, when viewed in terms of the rights that debtors and creditors have after dismissal." From the debtor's perspective, the "plain legal prejudice" test is the most hospitable standard. It appears to set the bar for opposing dismissal at the highest level among the three tests because it requires demonstrable prejudice and rules out potential prejudice as a basis for denying the motion.

*In re Dzierzawski*, 528 B.R. 397, 403-404 (Bankr. M.D. Mich. 2015) (*quoting Barry v. Sommers (In re Cochener)*, 382 B.R. 311, 334 (S.D. Tex. 2007), *rev'd on other grounds*, 297 Fed. Appx. 382 (5th Cir.2008)).

23.     Regardless of the test chosen, all courts engage in, "a factually intensive assessment of the debtor's reasons for requesting dismissal and of the impact dismissal can be expected to have on the creditors." *Id*.

24.     In this case, regardless of the test adopted by this Court, "cause" exists to dismiss this case under Section 707(a). As to the first line of cases, here there will be no prejudice to creditors. The Defamation Defendants are the only possible creditors, and the Defamation Defendants' rights and entitlements are ripe for decision in the Defamation Lawsuit. There is no reason to involve the Bankruptcy Court in a two-party dispute, which has been pending for six years.

25.     For this same reason cause also exists under the second line of cases. The Defamation Defendants would not be prejudiced from dismissal because dismissal would allow their Counterclaims to continue. Moreover, dismissal is in the best interest of Debtor because dismissal would result in a resolution of the state law claims in the Defamation Lawsuit and vitiate the need for Debtor to respond to Rule 2004 discovery in this Case. Rule 2004 discovery could be used as an attempt to circumvent the closed discovery period in the Defamation Lawsuit. Neither Debtor nor the Defamation Defendants would be prejudiced by dismissal.

26.     Finally, no creditor could show that they would endure "plain legal prejudice" from the dismissal of this Case. In fact, as stated above, dismissal would avoid the plain legal prejudice of responding to unnecessary Rule 2004 discovery requests and delay the adjudication of the Defamation Lawsuit. Cause exists to dismiss under the third line of cases.

27.     Regardless of what test this Court chooses to adopt, "cause" exists to dismiss this Case under Section 707(a) to preserve judicial resources and unnecessary further expansion of this two-party dispute.

28.     Moreover, "cause to dismiss exists where the debtor filed for Chapter 7 relief based on misguided advice." *In re Kennedy*, 342 B.R. 848, 849 (Bankr. M.D. Fla. 2005). This is so because, "[n]othing in the statute, case law, or legislative history precludes the court from dismissing a Chapter 7 case based on misguided filing." *Id.*

29.     Here, Debtor filed this Case under the misguided understanding that a Chapter 7 bankruptcy would put an end to the Defamation Lawsuit and Counterclaims. This understanding was incorrect, but reflects no wrongdoing on the part of Debtor. Now with the corrected knowledge that this Case will not extinguish the Counterclaims, Debtor wishes to dismiss this Case so that the Defamation Lawsuit is not unnecessarily stuck in limbo. Debtor's misunderstanding of the effect of this Case constitutes additional "cause" for dismissal under Section 707(a).

B.  *Dismissal so as to Abstain Under Section 305 is Appropriate Because this Case has no Legitimate Bankruptcy Purpose*

30.     A bankruptcy case should not interfere with a state court lawsuit when doing so would serve no bankruptcy purpose. This is because, "the Bankruptcy Code does not contemplate interference with the rights of creditors when it would serve no bankruptcy purpose." *Textile Mgmt. Assocs., Inc. v. FieldTurf USA, Inc. (In re Astroturf)*, 2017 Bankr. LEXIS 2515, *45 (Bankr. N.D. Ga. Sept. 5, 2017).

31.     Section 305(a)(1) permits the dismissal of a case for purposes of abstention at any time if dismissal would be in the best interests of a debtor and its creditors. 11 U.S.C. § 305(a)(1). As such, "[t]he absence of a true bankruptcy purpose (e.g., debt adjustment, breathing spell from creditors, and need for discharge and fresh start) is a significant factor in favor of granting section 305(a)(1) relief." 2 Collier on Bankruptcy P 305.02 (16th 2023).

32.     Where a bankruptcy case is "essentially a two-party dispute" courts have found that the bankruptcy does not serve a bankruptcy purpose. *In re Posner*, 610 B.R. 586, 592 (Bankr. N.D. Ill. 2019). "Courts have generally ruled in favor of abstention when the parties have access to a state court forum and the possible advantage of that forum over a bankruptcy court. Bankruptcy courts should abstain when that forum has a particular expertise which is relevant to the matters in dispute." *In re Efron*, 535 B.R. 505, 511 (Bankr. D.P.R. 2014).

33.     This Case is essentially a two-party dispute, regarding purely state law claims and serves no legitimate bankruptcy purpose. Debtor has no non-insider creditors outside the disputed claims of the Defamation Defendants and is not seeking to reorganize.

34.     To that end, the Superior Court is well positioned to resolve the Defamation Lawsuit, including the Counterclaims. The Defamation Lawsuit has been pending before the Superior Court for nearly six years and the facts underlying that Defamation Lawsuit and Counterclaims arise from the very same Dispute. The Superior Court has a high degree of expertise in the essential facts governing the Defamation Lawsuit, which are state law claims.

35.     Indeed, keeping this Case open would only serve to further expand this two-party dispute to another forum and incur administrative bankruptcy expenses in an estate that very well may not have any non-insider creditors and which may not possess any assets to pay said administrative expenses.

36.     There are few if any assets of the Debtor that a bankruptcy could liquidate for the benefit of creditors. A third-party can have an equitable interest in estate property, in the form of a purchase money resulting trust, that is a superior interest in that property than the estate's interest in the same. Pursuant to O.C.G.A. § 53-12-131:

> (a) A purchase money resulting trust is a resulting trust implied for the benefit of the person paying consideration for the transfer to another person of legal title to real or personal property.
>
> (b) Except as provided in subsection (c) of this Code section, the payment of consideration as provided in subsection (a) of this Code section shall create a presumption in favor of a resulting trust, but such presumption shall be rebuttable by a preponderance of the evidence.
>
> (c) If the payor of consideration and transferee of the property as provided in subsection (a) of this Code section are husband and wife, parent and child, or siblings, a gift shall be presumed, but such presumption shall be rebuttable by clear and convincing evidence.
>
> O.C.G.A. § 52-12-131.

37.     Here, Debtor is listed as the owner on the real estate records of four parcels of real property that are subject to a purchase money resulting trust for the benefit of Blake Blomquist ("Blake"). Through two notes made between Debtor and Blake, in the amounts of roughly $2,750,000.00 and $1,570,730.50, Blake sent all of the funds required to close on Debtor's real estate to the closing agent for Blake's eventual benefit.[2] It is only due to a clerical error that Blake did not receive title to the four parcels of real estate pre-petition. As such, Blake is presumed to benefit from a resulting trust which would be superior to the bankruptcy estate's interest.

38.     With no meaningful property to liquidate and distribute, there is no bankruptcy purpose to this Case. Creditors cannot benefit from the liquidation of Debtor's real property because Debtor's estate has a subordinate interest in that property to Blake. There is no other

---

[2] The purchase included additional parcels of real estate beyond the four remaining parcels.

meaningful property to liquidate and, as such, no real distribution to creditors is possible. This Case cannot serve a bankruptcy purpose.

39.     Moreover, pursuant to 11 U.S.C. § 727(a)(1), Debtor will not receive a discharge in this Case.

40.     Because this bankruptcy is essentially a two-party dispute without a bankruptcy purpose, this Court should abstain by dismissing this Case so as to permit the Superior Court to adjudicate the Defamation Lawsuit, including the discovery deadlines already established in the same.

WHEREFORE, Debtor prays that the Court enter an Order granting this Motion and dismissing this Case and that this Court grant such further and other relief as the Court deems just and appropriate.

Respectfully submitted this 18th day of January, 2024.

**JONES & WALDEN LLC**

*/s/ Leslie M. Pineyro*
Leslie M. Pineyro
Georgia Bar No. 969800
Mark Gensburg
Georgia Bar No. 213119
*Proposed Attorneys for Debtor*
699 Piedmont Avenue, NE
Atlanta, GA 30308
(404) 564-9300
lpineyro@joneswalden.com
mgensburg@joneswalden.com

## Exhibit "A"

**Order Denying Request to Re-Open Discovery**

ID# 2021-0067792-CV

⚜ EFILED IN OFFICE
CLERK OF SUPERIOR COURT
COBB COUNTY, GEORGIA

**18101356**

C. LaTain Kell Sr. - 49
MAY 25, 2021 10:37 AM

Connie Taylor, Clerk of Superior Court
Cobb County, Georgia

## IN THE SUPERIOR COURT OF COBB COUNTY

### STATE OF GEORGIA

BLOMQUIST BUILDERS GROUP, INC., )
)
     Plaintiff, )
)
v. )         CIVIL ACTION FILE
)
DENISE CHAPMAN MUSHEGAN a/k/a )    NO. 18101356
ANITA D. CHAPMAN, and H. ALAN )
MUSHEGAN, )
)
     Defendants. Counterclaimants. )
_____ )

## ORDER DENYING DEFENDAN'S MOTION TO ADD PARTIES AND REOPEN DISCOVERY

This Matter, having come before the Court on Defendant's Motion to Add Parties and

Reopen Discovery, and it appearing, based upon review of the pleadings and argument of

counsel and for good cause shown, that this Motion should be denied,

IT IS THEREFORE ORDERED that Defendant's Motion to Add New Parties and

Reopen Discovery is Denied.

So ORDERED this _____24ᵗʰ_____ day of ____May____, 2021.

_____
Judge Kell
Superior Court Judge
Cobb Judicial Circuit

Prepared by:
Travis M. Cain
1675 Lower Roswell Road
Marietta, Georgia 30068
travis@tmcalaw.com

IN THE SUPERIOR COURT OF COBB COUNTY
STATE OF GEORGIA

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have this day served a copy of the within and foregoing order (Civil Action File No. 18-1-1356-49) upon all parties electronically, via Peach Court, or through the Cobb County Mail System, addressed to the following:

Travis M. Cain, Esq.
J. David Haskin, Esq.
travismcain@gmail.com
david@haskinlawgroup.com

Brian W. Burkhalter, Esq.
David C. King, Esq.
April Freeman, Esq.
bburkhalter@patelburkhalter.com
dking@patelburkhalter.com
afreeman@patelburkhalter.com

Bryan E. Busch, Esq.
Laura Hl Mirmelli, Esq.
bryan.busch@arlaw.com
laura.mirmelli@arlaw.com

This _____ day of _____, 2021.

Natalie C. Bloodworth
for Honorable C. LaTain Kell, Judge
Superior Court of Cobb County
Cobb Judicial Circuit

## Exhibit "B"

**Dismissed Superior Court Proceeding Complaint**

ID# 2021-0071794-CV
⚡ EFILED IN OFFICE
CLERK OF SUPERIOR COURT
COBB COUNTY, GEORGIA

**21104229**

C. LaTain Kell Sr. - 49
JUN 02, 2021 03:29 PM

Connie Taylor, Clerk of Superior Court
Cobb County, Georgia

## IN THE SUPERIOR COURT OF COBB COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| **ANITA DENISE CHAPMAN, and H. ALAN MUSHEGAN, SR.,** )<br>)<br>**Plaintiffs,** )<br>)<br>**v.** )<br>)<br>**JENNIFER LEA ORTON BLOMQUIST,** )<br>)<br>**Defendant.** )<br>) | **CIVIL ACTION FILE NO.** |

## PLAINTIFFS' COMPLAINT FOR DAMAGES

COME NOW, PLAINTIFFS ANITA DENISE CHAPMAN AND H. ALAN MUSHEGAN, SR., and file this Complaint, respectfully showing as set forth below.

1.

Plaintiff Anita Denise Chapman is an individual resident of the State of Georgia. Plaintiff H. Alan Mushegan, Sr., is an individual resident of the State of Georgia. Hereinafter, Plaintiff Anita Denise Chapman and Plaintiff H. Alan Mushegan, Sr., will be collectively referred to as "Plaintiffs."

2.

Defendant Jennifer Lea Orton Blomquist ("Blomquist") is a resident of Cobb County and may be served at 3478 Rabbit Run, Acworth, Cobb County, Georgia, 30101, or at such other location as she may be found.

3.

All conditions precedent to bringing this Complaint have been fulfilled, waived, or otherwise satisfied.

4.

This Court has personal and subject matter jurisdiction over Blomquist.

5.

Venue is proper in this Court as to Blomquist.

6.

Blomquist Builders Group, Inc., ("BBG") and Plaintiffs were the parties to that certain "New Construction Contract for the Purchase and Sale of Residential Real Property," originally dated April 27, 2016 (the "Contract"). A true, accurate, and correct copy of the Contract, including all its various amendments and addenda, is attached hereto as Exhibit A.

7.

By the terms of the Contract, BBG was to construct a new home for Plaintiffs at BBG's residential development known as The Summit at Lost Mountain. The precise property to be conveyed was specified as 5020 Pindos Trail, Powder Springs, Georgia, 30127. The sales and purchase price as agreed was $1,000,038.00.

8.

Between April 27, 2016, and October 31, 2016, Plaintiffs paid BBG "Non-Refundable Builder Deposits" totaling $92,000.00.

9.

Cobb County issued Certificate of Occupancy No. 72254 on the property on April 15, 2017. Plaintiffs shortly thereafter inspected the property and noted numerous wholly uncompleted or incorrectly-completed items agreed upon in the Contract. These items were communicated to BBG's principal officer, Blomquist, as well as other of BBG's agents.

10.

Plaintiffs were repeatedly told by Blomquist, in her own capacity and on behalf of BBG, that they must close as soon as possible after the issuance of the Certificate of Occupancy or they would lose their deposits and all the costs of the upgrades contemplated in the Contract.

11.

The transaction closed on April 26, 2017, at which time Plaintiffs paid BBG the contract sales price of $1,000,038.00.

12.

At the time of closing, substantial material portions of the home were left uncompleted.

13.

Following closing, Plaintiffs extensively documented the portions of construction left partly or wholly uncompleted. In particular, Plaintiffs noted structural problems with the stairs inside the house, the walkway to the house, and erosion problems left unaddressed at the time of closing.

14.

In the months following closing, Plaintiffs repeatedly implored BBG and Blomquist to complete uncompleted work and to repair work which had been done incorrectly. Despite Plaintiffs' documentation of the structural issues, BBG and Blomquist repeatedly insisted that all matters noted by Plaintiffs were only "cosmetic" in nature, fraudulently misrepresenting and concealing problems the improper and incomplete construction.

15.

BBG and Blomquist continued to perform work on Plaintiff's home throughout June and July of 2017.

3

16.

On or about March 11, 2018, a sizeable sinkhole opened under the driveway on the property as a result of drainage issued left unaddressed by BBG and Blomquist.  Such sinkhole threatens the structural integrity of the driveway and, if not corrected, may compromise the structural integrity of adjacent portions of the house.

17.

BBG and Blomquist were negligent as they failed to adequately and properly backfill the site of Plaintiffs' home and failed to properly compact the soils on which the Plaintiffs' home was built.

18.

As the direct and proximate result of the negligence of BBG and Blomquist, Plaintiffs' home is experiencing uneven and accelerated settling, causing damage to many areas of the home, including, but not limited to the foundation, masonry walls and subwalls, exterior cladding, interior drywall, interior fixtures, windows, doors, the driveway, the front sidewalk and landscaping.

19.

BBG and Blomquist were negligent in that they failed to properly install drainage around the Plaintiffs' home resulting in significant erosion of soils around and under Plaintiffs' home. The erosion has contributed to the irregular and accelerated settlement of Plaintiffs' home.  In addition, the erosion has caused soils supporting the foundation, driveway and landscaping to wash away.  This erosion, a direct and proximate result of the negligence of Blomquist, has resulted in damage to the following areas of Plaintiffs' home: the foundation, the driveway, the front sidewalk, interior drywall, interior doors, interior flooring, interior framing, exterior cladding, windows and landscaping.

4

20.

BBG and Blomquist were negligent in failing to properly install flashing around windows and doors and otherwise failed to properly ensure a watertight exterior building envelope. Such negligence in incorrectly installing flashing to ensure the home has a watertight envelope has caused damages to the Plaintiffs' home. Specifically, the water intrusion caused by such negligence has damaged the windows, walls, floors, ceilings, trim, finishes and fixtures inside Plaintiffs' home.

## COUNT I - NEGLIGENCE AGAINST BLOMQUIST

21.

Plaintiffs repeat the allegations in Paragraphs 1 through 20 above, as if fully recited herein.

22.

Blomquist, in addition to being the principal and owner of BBG, also had hands-on duties relating to, and assisted in, the construction of Plaintiffs' home.

23.

Blomquist had a duty to perform her own construction activities related to Plaintiffs' home in a workmanlike manner and in compliance with the applicable standard of care and all applicable building codes.

24.

Blomquist had a duty to supervise the employees and subcontractors of BBG.

25.

Blomquist was negligent in failing to perform her construction activities related to Plaintiffs' home in a workmanlike manner and in compliance with the applicable standard of care

and all applicable building codes, in the manner noted above, in failing to properly supervise her employees, agents and/ or subcontractors, and in such other ways as may be proven at trial.

26.

Blomquist's acts and omissions constitute negligence *per se*, as they violated express provisions of applicable building codes.

27.

As a direct and proximate result of Blomquist's negligence, Plaintiffs have sustained substantial damages, including the damage noted above as well as, but not limited to, the following: (1) diminution in the value of both their real and personal property; (2) physical damages to other property not within BBG and Blomquist's scope of work, including, but not limited to, personal property and other portions of the real property at issue; (3) physical damages caused by subcontractors for which BBG and Blomquist were responsible; (4) physical damages to other, completed portions of structure; (5) costs necessary to correct the negligent work performed by BBG and Blomquist; (6) costs necessary to repair property damage by BBG and Blomquist's negligent work; and (7) such other damages as may be discovered.

28.

WHEREFORE, Plaintiffs are entitled to judgment against Blomquist for such negligence in an amount to be proven at trial.

## COUNT II - NEGLIGENT DESIGN AGAINST BLOMQUIST

29.

Plaintiffs repeat the allegations in Paragraphs 1 through 28 above, as if fully recited herein.

6

30.

The Plaintiffs home was built with Plans and Specifications wholly or partially prepared and/or altered by Blomquist.

31.

The Plans and Specifications prepared and/or altered by Blomquist were deficient in that they (a) failed to conform to the applicable building code, (b) contained design errors as to load bearing capacities, (c) failed to properly account for surface water flow, and (d) in such other ways as may be proven in this matter.

32.

Blomquist, to the extent she undertook design duties, had a duty to properly design the Plans and Specifications for the construction of Plaintiffs' home.

33.

Blomquist breached such duties in the manner set forth above and as further set forth in the Affidavit of Maureen Davis, P.E., attached hereto as Exhibit B.

34.

As a direct and proximate result of Blomquist's negligent design, Plaintiffs have sustained substantial damages, including the damage noted above as well as, but not limited to, the following: (1) diminution in the value of both their real and personal property; (2) physical damages to other property not within BBG and Blomquist's scope of work, including, but not limited to, personal property and other portions of the real property at issue; (3) physical damages caused by subcontractors for which BBG and Blomquist were responsible; (4) physical damages to other, completed portions of structure; (5) costs necessary to correct the negligent work performed by

7

BBG and Blomquist; (6) costs necessary to repair property damage by BBG and Blomquist's negligent work; and (7) such other damages as may be discovered.

35.

WHEREFORE, Plaintiffs are entitled to judgment against Blomquist for such negligence design in an amount to be proven at trial.

## COUNT III - FRAUD AGAINST BLOMQUIST

36.

Plaintiffs repeat the allegations in Paragraphs 1 through 35 above, as if fully recited herein.

37.

Blomquist made repeated false statements to Plaintiffs, to wit: (a) false statements regarding the quality of BBG and Blomquist's construction of Plaintiffs' home, (b) stating prior to closing that BBG and Blomquist planned to, and would, address all remaining items of concern after closing, and (c) that Blomquist would add gates to the entry of the neighborhood.

38.

Blomquist knew that these statements regarding construction quality were untrue at the time Blomquist made them to Plaintiffs.

39.

Blomquist made these statements regarding construction quality in an attempt to induce Plaintiffs to complete the sale of the home as noted herein.

40.

Plaintiffs reasonably relied upon these untrue statements regarding BBG and Blomquist's construction quality to their detriment.

8

41.

As a direct and proximate result of Blomquist's fraud, Plaintiffs' have sustained substantial damages, including the damage noted above as well as, but not limited to, the following: (1) diminution in the value of both their real and personal property; (2) physical damages to other property not within BBG and Blomquist's scope of work, including, but not limited to, personal property and other portions of the real property at issue; (3) physical damages caused by subcontractors for which BBG and Blomquist responsible; (4) physical damages to other, completed portions of structure; (5) costs necessary to correct the negligent work performed by BBG and Blomquist; (6) costs necessary to repair property damage by BBG and Blomquist's negligent work; and (7) such other damages as may be discovered.

42.

WHEREFORE, Plaintiffs are entitled to judgment against Blomquist for such fraud in an amount to be proven at trial.

## **COUNT IV - ALTER EGO LIABILITY AGAINST BLOMQUIST**

43.

Plaintiffs repeat the allegations in Paragraphs 1 through 42 above, as if fully recited herein.

44.

At all times relevant to this Complaint, Blomquist was the owner and CEO of BBG.

45.

At all times relevant to this Complaint, BBG was undercapitalized.

9

46.

Blomquist created and maintained the state of undercapitalization of BBG relative to its actual and expected obligations for the purpose of avoiding those corporate obligations — specifically including obligations to the Plaintiffs pursuant to this suit.

47.

Because Blomquist has kept BBG undercapitalized *vis a vis* its obligations for the purpose of avoiding those same obligations, Blomquist should be held personally liable for any obligations of BBG, including any obligations to Plaintiffs as raised and/or determined in this suit or Civil Action No. 18101356.

48.

Blomquist has otherwise abused the corporate form of BBG and should be held personally liable for its obligations, specifically including its obligations to the Plaintiffs.

49.

WHEREFORE, Plaintiffs are entitled to judgment against Blomquist for such alter ego liability in an amount to be proven at trial.

## <u>COUNT V - ATTORNEY'S FEES</u>

50.

Plaintiffs repeat the allegations in Paragraphs 1 through 49 above, as if fully recited herein.

51.

Through the acts and omissions noted above, as may be proven at trial and otherwise, Blomquist has acted in bad faith, been stubbornly litigious, and have caused Plaintiffs unnecessary trouble and expense.

52.

WHEREFORE, Plaintiffs are entitled to judgment against Blomquist for attorney's fees and expenses in an amount to be proven at trial.

**WHEREFORE**, Plaintiffs respectfully pray as follows:

(1)  That this Court award Plaintiffs a monetary judgment against Blomquist in an amount to be proven at trial;

(2)  That Plaintiffs have a trial by jury as to all issues so triable;

(3)  That Plaintiffs be awarded all costs of litigation and attorneys' fees incurred; and

(4) That Plaintiffs have such other and further relief as the Court deems just and proper.

Respectfully submitted this 2nd day of June 2021.

**BURKHALTER LAW, LLC**

_/s/ David C. King_
Brian W. Burkhalter
Georgia Bar No. 095809
brian@burkhalterlawllc.com
David C. King
Georgia Bar No. 422220
david@burkhalterlawllc.com
April Freeman
Georgia Bar No. 517093
april@burkhalterlawllc.com

_Counsel for Plaintiffs_

900 Circle 75 Parkway, Suite 950
Atlanta, Georgia 30339
Phone: (678) 825-8133

# EXHIBIT A





## New Construction Contract for the
## Purchase and Sale of Residential Real Property

### Offer Date: April 27 _____, 20 16

This **New Construction Contract for the Purchase and Sale of Real Property** (the "Contract") is by and between H. Alan Mushegan _____ Denise Mushegan _____, hereinafter called "Buyer" and Blomquist Builders Group _____, hereinafter called "Seller," for the hereinafter described Property, and in consideration of the mutual promises contained herein.

**THIS CONTRACT INCORPORATES BY REFERENCE THOSE CERTAIN STANDARD TERMS FOR THE PURCHASE AND SALE OF GEORGIA REAL PROPERTY PUBLISHED BY ORTHRUS REAL ESTATE ENTERPRISES, LLC AT WWW.GAREFORMS.COM AND IN EFFECT AS OF THE OFFER DATE (THE "STANDARD TERMS"), WHICH STANDARD TERMS SHALL BECOME A PART HEREOF BY REFERENCE THERETO. EACH PARTY, BY AFFIXING HIS OR HER SIGNATURE HERETO, EXPRESSLY AGREES THAT HE OR SHE HAS READ THE STANDARD TERMS, AND THAT IT IS HIS OR HER INTENT THAT THE STANDARD TERMS SHALL BE INCORPORATED INTO AND ARE A PART OF THIS CONTRACT.**

### 1. PROPERTY DESCRIPTION
Seller agrees to sell, and Buyer agrees to purchase from Seller, the land, described as follows: [check all that apply]

- ☒ property address: 5010 Pindo's Trail _____ Powder springs Ga. 30297 30127 ;
- ☐ more particularly described on the Legal Description Exhibit attached hereto;
- ☐ identical to the legal description for the property contained in the deed recorded in Deed Book _____, Page _____, et seq., _____ County, Georgia records;
- ☐ Land Lot(s) _____ of the _____ District, _____ Section/ GMD, Lot(s) _____, Block(s) _____, Unit(s) _____, Phase/Section(s)_____ of _____ Subdivision /Development, _____ County, Georgia according to the plat recorded in Plat Book _____, Page _____, et seq., _____ County, Georgia records;

together with all permits, privileges, rights, members, and appurtenances thereto and together with all improvements, fixtures, personal property, trees, timber and other crops and plants located thereon (the "Property").

### 2. PURCHASE PRICE
Buyer covenants that Buyer has adequate financial resources to purchase the Property. The Purchase Price shall be Seven Hundred Forty Six Thousand Two Hundred Twenty Six _____ US Dollars (US$ 746,226.00 _____).

### 3. EARNEST MONEY/NONREFUNDABLE BUILDER DEPOSIT
**3.1. Earnest Money-** A good faith deposit of $ 0 _____ (the "Earnest Money") shall be payable to [check one] ☐ Seller OR ☐_____ (Escrow Agent) in the form of a ☐ check; ☐ certified funds; ☐ money order; or, ☐ cash.
**3.1.1. Payment of Earnest Money -** [check one]
☐ Buyer has remitted the Earnest Money to Escrow Agent, and Escrow Agent shall deposit same into a trust account within three (3) banking days from the date Escrow Agent receives an original or copy of the Accepted (as hereinafter defined) Contract; or
☐ Buyer has not remitted the Earnest Money to Escrow Agent, but shall remit same to Escrow Agent within _____ days from the date of Acceptance of this contract and Escrow Agent shall deposit same into a trust account within three (3) banking days from the date of receipt of the deposit and a copy or original of the Accepted Contract. In the event said payment is not timely remitted, Seller shall be promptly notified by Escrow Agent and Seller shall have the rights and remedies set out in this section.
☐ Buyer has remitted the Earnest Money to Seller, and Seller shall deposit same into the account indicated above within three (3) banking days from the date Seller delivers to Buyer an original or copy of the Accepted (as hereinafter defined) Contract; or

Form RE101, *New Construction Contract for the Purchase and Sale of Residential Real Property*
Copyright© 2014 by Orthrus Real Estate Enterprises, LLC. All rights reserved.    Initials: _____
R06152014

☐ Buyer has not remitted the Earnest Money to Seller, but shall remit same to Seller within _____ days from the date of Acceptance of this contract and Seller shall deposit same into the account indicated above within three (3) banking days from the date of receipt of the deposit and a copy or original of the Accepted Contract. In the event said payment is not timely remitted, Seller shall have the rights and remedies set out in this section.

**3.2.    Non-Refundable Builder Deposit-** In addition to the Earnest Money described hereinabove, Buyer has paid Seller a Non-Refundable Builder Deposit in the amount of $ 5,000_____ which shall be applied to the Purchase Price at Closing. Within five (5) banking days from the Acceptance Date, the Builder Deposit shall be deposited into Seller's General Operating Account. Buyer's obligation to pay the Builder Deposit shall be binding and non-refundable, notwithstanding any contingency to which this Contract is otherwise subject.  BUYER SHALL BE ENTITLED TO A REFUND OF THE BUILDER DEPOSIT ONLY IN THE EVENT OF ONE OF THE FOLLOWING: (i) EXERCISE OF A CONTINGENCY THAT IS EXCLUSIVELY THAT OF SELLER; OR (ii) DEFAULT BY SELLER HEREUNDER.

**4.    CLOSING**

**4.1.    Closing Date and Venue -** Unless amended mutually by the parties, the closing of this transaction shall take place on  October 28_____, 20_16_, at a mutually agreed upon time (the "Closing").  Seller shall have the right to extend the Closing Date due to construction delays for one or more extension periods up to a total of an additional _30___ days by giving notice in writing to Buyer as provided in this Contract. Said Closing shall be at the office of Sparks, King, Watts_____ located at/in  Marietta_____, Georgia (the "Closing Attorney"). If Closing Attorney is unavailable or unacceptable to Buyer's lender or title insurance company, then _buyer___ shall have the right to select a different Closing Attorney. Possession of the Property shall be granted [check one] ☒ at Closing or ☐_____ days after the Closing at _____ o'clock ___a.m. **THE MOVEMENT OF ANY HOUSEHOLD GOODS OR OTHER MATERIALS BY BUYER INTO PROPERTY WILL NOT BE PERMITTED UNTIL AFTER CLOSING.**

**4.2.    Obligation to Complete and ILSA Compliance -** In order to ensure compliance with the Interstate Land Sales Full Disclosure Act ("ILSA"), Seller covenants that, in all events, the Seller will complete the Home within two (2) years from the date of Buyer's execution of this Contract; provided that, the date for completion may also be extended beyond two years in the event of delays incurred by circumstances beyond Seller's control that are recognized under Georgia contract law as impossibility or frustration of performance

**5.    CLOSING COST ALLOWANCE FOR BUYER**
Seller shall contribute a maximum of [check one] ☐ _____% of the purchase price, or ☒ US$ 0_____ toward costs associated with Buyer's purchase of the Property (the "Closing Cost Allowance").

**6.    CONTINGENCIES**
In consideration of the covenants contained herein and other good and valuable consideration, the receipt and sufficiency whereof is hereby acknowledged, the Seller grants to the Buyer the following contingencies, as the same are defined in the Standard Terms: [Check all that are applicable]

**6.1.    ☐ Buyer's General Right to Terminate -** *This contingency shall expire at 11:59 p.m. on the day that is _____ days after the Acceptance Date.*

**6.2.    ☐ Appraisal Contingency -** *This contingency shall expire at 11:59 p.m. on the day that is _0___ days after the Acceptance Date.*

**6.3.    ☐ Financing Contingency -** *This contingency shall expire at 11:59 p.m. on the day that is _0___ days after the Acceptance Date.* If Buyer and Seller agree to a financing contingency involving financing other than a new first or second mortgage from a third party institutional lender under the terms described below, such as a loan assumption or seller financing, an additional exhibit or special stipulation shall be attached hereto providing the additional terms of that financing. If Buyer chooses FHA or VA financing, a FHA or VA Exhibit shall be attached hereto.

**[In the event the Financing Contingency is selected, check all of the following that are applicable:]**

☐ **First Mortgage Loan Proceeds:** This Contract is contingent upon Buyer's ability to obtain a third party first mortgage loan to be secured by the Property, in a principal amount of no less than [check one] ☐ US$_____ or ☐ _____% of the purchase price, being amortized over a term of _____ years, at an interest rate per annum that is [check one] ☐ fixed at a rate not to exceed _____%; or ☐ adjustable beginning at a rate not to exceed _____% with the interest rate never to exceed _____%, pursuant to an institutional lender's standard and customary underwriting criteria. The balance of the purchase price shall be paid by Buyer in cash, or in such other form as may be required by the Closing Attorney listed below, at time of Closing.

☐ **Second Mortgage Loan Proceeds:** This Contract is contingent upon Buyer's ability to obtain a third party second mortgage loan to be secured by the Property, in a principal amount of no less than [check one] ☐ US$_____ or ☐ _____% of the purchase price, being amortized over a term of _____ years, at an interest rate per annum that is [check one] ☐ fixed at a rate not to exceed _____%; or ☐ adjustable beginning at a rate not to exceed _____% with the interest rate never to exceed _____%, pursuant to an institutional lender's standard and customary underwriting criteria . The balance of the purchase price shall be paid by Buyer in cash, or in such other form as may be required by the Closing Attorney listed below, at time of Closing.

## 7. CONDITION OF PROPERTY
**7.1.  Inspection of Property-** Buyer has the right and obligation, during normal business hours at reasonable times approved by Seller in advance, and without interfering with any work on the Home, to inspect the property (and all improvements located thereon) for defects and other issues including, but not limited to: air conditioning, electrical, fireplace, heating, lead/lead-based paint, mold, plumbing, radon, roof, structure, wood destroying organisms, environmental hazards, or other similar issues at any time and from time to time. In order to facilitate the inspection of the Property Seller shall make all required utilities operational and available on the Property a minimum of 48 hours prior to the day of Closing.
**7.2.  Plans and Specifications -** The improvements on the Property shall be constructed substantially in conformity with the plans and specifications (the "Plans and Specifications") [check one] ☒ attached hereto as an exhibit to this Contract, or ☐ with the quality and finish comparable to the Seller's standard plan known as _____
**7.3.  Warranty -** Seller agrees to deliver to Buyer at Closing, a limited [check one] ☐ one year builder's warranty, OR ☐ one year builder's/10 year structural warranty, OR ☐ one year builder's/2 year systems/10 year structural warranty for the Property.

## 8. CONSTRUCTION DEFECT CLAIMS
GEORGIA LAW O.C.G.A. § 8-2-38 CONTAINS IMPORTANT REQUIREMENTS THAT BUYER MUST FOLLOW BEFORE BUYER MAY FILE A LAWSUIT OR OTHER ACTION FOR DEFECTIVE CONSTRUCTION AGAINST THE CONTRACTOR (AS THAT TERM IS DEFINED IN THE LAW) WHO CONSTRUCTED THE HOME. NINETY DAYS BEFORE BUYER FILES A LAWSUIT OR OTHER ACTION, BUYER MUST SERVE ON THE CONTRACTOR A WRITTEN NOTICE OF ANY CONSTRUCTION CONDITIONS BUYER ALLEGES ARE DEFECTIVE. UNDER THE LAW, A CONTRACTOR HAS THE OPPORTUNITY TO MAKE AN OFFER TO REPAIR OR PAY FOR THE DEFECTS OR BOTH. BUYER IS NOT OBLIGATED TO ACCEPT ANY OFFER MADE BY A CONTRACTOR. THERE ARE STRICT DEADLINES AND PROCEDURES UNDER STATE LAW, AND FAILURE TO FOLLOW THEM MAY AFFECT BUYER'S ABILITY TO FILE A LAWSUIT OR OTHER ACTION.

## 9. INSULATION
Insulation has been installed (or will be installed prior to Closing) in accordance with the terms of this Contract and as described in the New Construction Exhibit attached hereto and Standard Terms incorporated herein.

## 10. UPGRADES AND OPTION SELECTIONS
Buyer shall have **45**_____ days from the date of Buyer's execution of this Contract (the "Selection Period") to finalize any and all selections for options and/or upgrades to the Property, which final selections shall be set forth on a separate list which shall be added as an Addendum to this Contract.

Form RE101, *New Construction Contract for the Purchase and Sale of Residential Real Property*
Copyright© 2014 by Orthrus Real Estate Enterprises, LLC. All rights reserved.    Initials: _____ _____
R08152014

ID# 2018-0056305-CV
Page 14

## 11. BROKERAGE

By signing below, all parties represented by a Broker acknowledge that no Broker in this transaction shall owe any duty to Buyer or Seller greater than what is set forth in their brokerage engagements and the Brokerage Relationships in Real Estate Transactions Act, O.C.G.A. § 10-6A-1 *et seq.*, and further, that they have read and acknowledged and consent to the inclusion of all additional brokerage disclosures provided in the Standard Terms.

**11.1.  Material Relationships -** Neither the Broker nor Broker's affiliated licensees have a material relationship with Seller or Buyer except as follows: _____ .

**11.2.  Buyer's Broker -** The Buyer's Broker identified on the signature page of this Contract is the Broker assisting the Buyer, regardless of whether the Buyer is a customer or a client as defined under Georgia law. It includes the agent or agents of the Broker who are involved in this particular transaction. The Buyer's Broker is [check one]:

    i.  ☐ representing the Buyer as a client under a written brokerage agreement; **or**
    ii.  ☐ representing the Buyer as a customer, performing only ministerial acts; **or**
    iii.  ☐ acting as a dual agent, with responsibilities to both Seller and Buyer; **or**
    iv.  ☒ acting as a designated agent, with responsibilities to both Seller and Buyer, as described more fully below.

**11.3.  Seller's Broker -** The Seller's Broker identified on the signature page of this Contract shall refer collectively to all persons assisting the Seller, regardless of whether the Seller is a customer or client as defined under Georgia law. It includes the agent or agents of the Broker who are involved in this particular transaction. The Seller's Broker is [check one]:

    i.  ☐ representing the Seller as a client under a written brokerage agreement; **or**
    ii.  ☐ representing the Seller as a customer, performing only ministerial acts; **or**
    iii.  ☐ acting as a dual agent, with responsibilities to both Seller and Buyer; **or**
    iv.  ☒ acting as a designated agent, with responsibilities to both Seller and Buyer, as described more fully below.

**11.4.**  By checking the designated agent box above, the parties acknowledge that they have consented to a designated agency and acknowledge that  Atlanta Communities- Jennifer Blomquist_____ will work exclusively with Buyer as Buyer's designated agent and  Atlanta Communities_____  Jennifer_____  will work exclusively with the Seller as Seller's designated agent.

## 12. EXHIBITS

**The following exhibits are attached to and made a part of this offer.** The provisions of any exhibit attached to this contract and referenced below, shall prevail if in conflict with the provisions of the Contract:

☐ Legal Description
☐ Disclosure of Information on Lead-Based Paint and/or Lead Based Paint Hazards
☐ Short Sale Exhibit
☐ _____
☐ _____

☐ FHA Exhibit
☐ VA Exhibit
☒ New Construction Exhibit (Required)
☐ _____
☐ _____
☐ _____

**Special Stipulations** (provisions of any stipulation included in this contract shall prevail if in conflict with the provisions of this Contract, including any exhibit attached hereto):

☐ Substantive provisions continued on additional page.

Form RE101, *New Construction Contract for the Purchase and Sale of Residential Real Property*   Initials: _____
Copyright© 2014 by Orthrus Real Estate Enterprises, LLC. All rights reserved.
R08152014

This **Offer** is open for **Acceptance** until _____ o'clock __a__ m. on _____, 20_____. An **Acceptance** after that time shall be considered a counteroffer.

The **Offer** is hereby **Accepted,** with notice in the form of an executed contract being properly delivered to the party making the last offer, at __2:40__ o'clock __p__ m. on __April 27__ _____, 20_16_.

_____ By initialing here, the parties acknowledge their receipt of a printed copy of the Standard Terms. Failure to initial this section shall indicate that the parties have declined a printed copy of and hereby acknowledge the sufficiency of the online copy of the Standard Terms.

*All Names should be both signed and printed.*

**Buyer:**

> _____

H. Alan Mushegan
Buyer Printed Name

> _____

Denise Mushegan
Buyer Printed Name

_____ / _____
Buyer Phone Number        Buyer Fax Number

_____
Buyer Email Address

 387 Nickajack Road
Buyer Address

 Mableton          GA        30126
Buyer City          State        Zip

**Seller:**

> _____

Blomquist Builders Group
Seller Printed Name

> _____

Seller Printed Name

_____ / _____
Seller Phone Number        Seller Fax Number

_____
Seller Email Address

_____
Seller Address

_____
Seller City          State        Zip

**Buyer's Broker**

 ATLANTA COMMUNITIES          / ATCM04
Name of Brokerage Firm        Broker Code

 770-240-2004          / 770-240-5404
Brokerage Phone Number        Brokerage Fax Number

> _____

Jennifer Blomquist
Agent Printed Name

 770-851-9275          / 770-218-2185
Agent Phone Number        Agent Fax Number

 jenblom28@yahoo.com
Agent Email Address

Required License Number(s):

 H-61807          / 351296
Broker License Number        Agent's License Number

**Seller's Broker**

_____ / _____
Name of Brokerage Firm        Broker Code

_____ / _____
Brokerage Phone Number        Brokerage Fax Number

> _____

Agent Printed Name

_____ / _____
Agent Phone Number        Agent Fax Number

_____
Agent Email Address

Required License Number(s):

_____ / _____
Broker's License Number        Agent's License Number

MLS Listing # _____

Page 5 of 5
Form RE101, *New Construction Contract for the Purchase and Sale of Residential Real Property* Initials: _____
Copyright© 2014 by Orthrus Real Estate Enterprises, LLC. All rights reserved.
R06152014

ID# 2018-0056305-CV
Page 16

# NEW CONSTRUCTION PLANS AND SPECIFICATIONS
## EXHIBIT " B "

ATLANTA COMMUNITIES
REAL ESTATE BROKERAGE



*Georgia*REALTORS®

2016 Printing

This Exhibit is part of the New Construction Purchase and Sale Agreement with an Offer Date of __April 27, 2016__
for the purchase and sale of that certain Property with the following address:

__5010 Pindo's Trail__ , Georgia .

*The Plans and Specifications referenced below or attached hereto are hereby referenced herein:*

Base price $699,000

Bump out Master bedroom 4ft————————————$10,517.00
Bump our Master bath 4ft————————————$7350.00
Add 3rd garage to side————————————$14,000.00
Take out pass thru add cabinets————————————$1250.00
Add Butlers pantry with sink————————————$3695.00
Add extra deck per plan————————————$400.00
Add powder room————————————$2850.00
Change bedroom 3 to full bathroom ————————————$2200.00
Extra windows in family room & basement————————$7200.00
Extra cabinet/granite & linen cabinet in master—————$1475.00
ADA tolets on first floor————————————$600.00
Double shower head w/glass see thru tile wall————$1975.00
Add hardwoods to bedroom 2 and hall————————$655.00
Add Full brick on sides of home————————————$9450.00
Add generator gas line————————————TBD once location is determined
3x5 concrete pad for generator————————————$200.00


Credit for removing fireplace in family room————————$-1330.00

Credit for commission————————————$-15,260.34

Total new price ————————————$746,226.00


Price includes $30,000 in budge for retaining wall/extra foundation above 10ft and extra grading work...


Buyer's Initials: _____ 4/28/2016   Seller's Initials: _____

THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH __Jennifer Blomquist__ IS INVOLVED AS A REAL
ESTATE LICENSEE. UNAUTHORIZED USE OF THE FORM MAY RESULT IN LEGAL SANCTIONS BEING BROUGHT AGAINST THE USER AND SHOULD BE REPORTED TO
THE GEORGIA ASSOCIATION OF REALTORS® AT (770) 451-1831.

Copyright© 2016 by Georgia Association of REALTORS®, Inc.          F28, New Construction Plans and Specifications Exhibit, 01/1/16

# The Summit

Exhibit "A"

## At Lost Mountain

# STANDARD FEATURES

### EXTERIOR CONSTRUCTION

- Traditional and Craftsman style elevations featuring brick, stone and siding combinations (per plan)
- Brick or stone exposed foundations
- Brick or stone steps on the front
- Architectural roof shingles
- Concrete fiber siding
- Poured concrete basement walls
- Insulated double pane vinyl single hung sash windows
- Insulated fiberglass front door
- Oil rubbed bronze exterior hardware
- Standing seam metal porch roof and accents per plan
- Seamless aluminum gutters
- Front and rear faucets with shut off valves
- Two exterior weatherproof electrical outlets and flood lights
- Professionally landscaped yards featuring a four zone irrigation system
- Courtyard or side entry style garages (per plan)
- 3-car garage (lot/plan permitting)
- Carriage style garage doors with openers
- Chimneys include chimney shroud
- Window screens on all windows

### INTERIOR CONSTRUCTION

- 9 foot, smooth ceilings throughout main level
- 8 foot, smooth ceilings throughout finished upper level
- Ceiling fan with light kit included in family and master bedroom
- Crown molding in foyer, great room, dining room, master bedroom, powder bath, kitchen and hallways
- Trey ceilings in master bedroom
- 5 ¼" baseboard on main level
- Howe casing on main level
- 3 ¼ field finished hardwood flooring in foyer, great room, dining room, kitchen, breakfast, main level hall and main level powder bath
- 42-inch wood burning fireplace with gas starter
- Custom mantels and hearths
- Ceramic tile flooring in laundry room or a builders tile allowance of $2.00/sq.ft.
- Builders carpeting allowance $16.00/sq.yd. (per plan)
- Custom oak stair handrails and steps with iron balusters and carpet runner
- Open daylight basements stubbed for future bath
- Designer oil rubbed bronze lighting package or a builders lighting allowance of $3,000
- Oil rubbed bronze door hardware
- Ventilated shelving in closets, pantry, and laundry room

### KITCHEN FEATURES

- Custom designed raised panel solid wood 42" upper cabinets with crown molding
- 3cm, level 1 granite countertops
- Tile backsplash
- 3 ¼" field finished hardwood flooring
- Stainless steel appliance package includes dishwasher, built-in microwave, range, and double oven or a builders appliance allowance of $4000

- Oversized granite island with eat in breakfast bar (per plan)
- Recessed can lighting
- Under-mount stainless steel kitchen sink with oil rubbed bronze faucet
- Ventilated shelving in pantry
- Ice maker line
- Garbage disposal

### BATH FEATURES

- Jetted tub in master
- Separate glass enclosed shower with tile wall in master
- Elongated toilets throughout
- Ceramic tile flooring and surrounds throughout all baths or a builders tile allowance of $2.00/sq.ft.
- Elegant Moen or Delta oil rubbed bronze fixtures throughout
- 3cm, level 1 granite countertops in master
- Marble countertops in secondary baths

### ENERGY SAVING FEATURES

- High insulation 'R' factors throughout with R-30 in attic, R-19 in vaults and basement ceilings and R-13 in first and second floor walls
- High-efficiency 16 Seer dual heating and air systems with programmable digital thermostats on both levels
- Low-'E' Insulated windows
- Continuous ridge vents with gable and soffit vents
- 50 gallon gas hot water heater
- Protective house wrap
- Sill sealer at foundation

### OTHER FEATURES

- RG6 cable pre-wire in family room and all bedrooms
- CAT-5 telephone pre-wired in kitchen, master bedroom, great room and media room (per plan)
- Pre-wired for security system
- Smoke detectors on all levels and in all bedrooms
- Termite treatment with renewable warranty
- 1 year comprehensive homebuilders warranty
- Three-sided sod, with seed and straw backyards

*Retaining walls and basement height are determined by Cobb county engineers on a per lot basis. Additional costs associated with these requirements must be calculated independently when the grading plan is completed and will be added to the total construction price of the home at the time the contract is written.

Updated 4/21/2016

ATLANTA COMMUNITIES
REAL ESTATE BROKERAGE

## AMENDMENT TO AGREEMENT
### AMENDMENT # 1

Date: 05/24/2016



*Georgia*REALTORS®

2016 Printing

Whereas, the undersigned parties have entered into a certain Agreement with a Binding Agreement Date of 4/27/2016 _____ for the purchase and sale of real property located at:
5020 Pindo's Trail _____, Powder Springs _____, Georgia, 30127 _____; and

Whereas, the undersigned parties desire to amend the aforementioned Agreement, it being to the mutual benefit of all parties to do so;

Now therefore, for and in consideration of the sum of Ten Dollars ($10) and other valuable considerations paid by each to the other, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree to modify and amend the aforementioned Agreement as follows: *[Note: The following language is furnished by the parties and is particular to this transaction.]*

Amendment to change sellers lot choice and address FROM lot 23 of The Summit at Lost Mountain (5010 Pindo's Trail, Powder Spring GA, 30127); TO lot 21 of The Summit at Lost Mountain (5020 Pindo's Trail, Powder Springs, GA 30127)

Additional pages ☐ are or ☒ are not attached.

It is agreed by the parties hereto that all of the other terms and conditions of the aforementioned Agreement shall remain in full force and effect other than as modified herein. Upon execution by all parties, this Amendment shall be attached to and form a part of said Agreement.

Buyer's Signature

Buyer's Signature

ATLANTA COMMUNITIES
Selling Broker

By: _____
Broker or Broker's Affiliated Licensee

Member of: Cobb _____ of REALTORS®

Seller's Signature

Seller's Signature

Atlanta communities
Listing Broker

By: _____
Broker or Broker's Affiliated Licensee

Member of: Cobb _____ of REALTORS®

**Acceptance Date.** The above Amendment is hereby accepted, 2:05 o'clock p .m. on the date of 5/24/16 ("Acceptance Date"). This Amendment will become binding upon the parties when notice of the acceptance of this Amendment has been received by offeror. The offeror shall promptly notify offeree when acceptance has been received.

THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH __Jennifer Blomquist__ IS INVOLVED AS A REAL ESTATE LICENSEE. UNAUTHORIZED USE OF THE FORM MAY RESULT IN LEGAL SANCTIONS BEING BROUGHT AGAINST THE USER AND SHOULD BE REPORTED TO THE GEORGIA ASSOCIATION OF REALTORS® AT (770) 451-1831.

Copyright© 2016 by Georgia Association of REALTORS®, Inc.          F105, Amendment to Agreement, 01/01/16

ID# 2018-0056305-CV
Page 19



ATLANTA COMMUNITIES
REAL ESTATE BROKERAGE

# AMENDMENT TO AGREEMENT
## AMENDMENT # 2

Date: 10/06/2016

*Georgia*REALTORS®

**2016 Printing**

Whereas, the undersigned parties have entered into a certain Agreement with a Binding Agreement Date of
04/27/2016 _____ for the purchase and sale of real property located at:
5020 Pindos Trail _____, Powder Springs _____, Georgia, 30127 _____; and

Whereas, the undersigned parties desire to amend the aforementioned Agreement, it being to the mutual benefit of all parties to do so;

Now therefore, for and in consideration of the sum of Ten Dollars ($10) and other valuable considerations paid by each to the other, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree to modify and amend the aforementioned Agreement as follows: *[Note: The following language is furnished by the parties and is particular to this transaction.]*

1. Add 5' wrought iron entry door - $3, 846.00
2. Installation Price for Iron Door - $1,200.00
3. 2nd Bedroom shower only No tub/combo - $800.00
4. Finish out 5th bedroom - paint, carpet, lighting, & trim out - $2,200.00
5. Add 7 1/4 base moulding w/ two piece crown on main level - $2,675.00
6. Stainless Kitchen Sink upgrade - $150.21
7. Add 2 fans to covered porch - $ 458.00
8. Install generator including the electrical hook-up and gas line installed - $7,575.00
9. Add additional water spigot on top back deck ( for a total of 3) - $150.00
10. Basement finish - not including cabinets in bar area.
Price is for 2139 sq ft @ $38 a sq ft plus $5000 for the bathroom  This is with stained concrete $3.50 allowance, 18 can lights, 5 1/4 base and 1 piece crown. Tray ceilings in the rooms the HVAC ductwork has to run under framing - $86,282.00
11. Add 3rd Shower Head Master Bath - $300.00
12. No tub in master bath - Run plumbing for master tub, leave at basement for future /HVAC Cover for access - $ (1,500.00)
13. Add additional window in family room & bsmt. on side wall - Total of two windows - $1,800.00
14. Credit for builder entry door - (-800)
15. Credit or 3rd car garage - (-7000.00)
16. Appliances with taxes and installation, - $18,206.90
17. Credit towards appliances - (-4000.00)
New purchase price to be $858.569.77

Additional pages ☐ are or ☒ are not attached.

It is agreed by the parties hereto that all of the other terms and conditions of the aforementioned Agreement shall remain in full force and effect other than as modified herein. Upon execution by all parties, this Amendment shall be attached to and form a part of said Agreement.

Buyer's Signature _____     Seller's Signature _____

Buyer's Signature _____     Seller's Signature _____

**ATLANTA COMMUNITIES**                          **ATLANTA COMMUNITIES**
Selling Broker _____        Listing Broker _____

By: _____                    By: _____
Broker or Broker's Affiliated Licensee           Broker or Broker's Affiliated Licensee

Member of: Atlanta Board of Realtors  of REALTORS®    Member of: Atlanta Board of Realtors  of REALTORS®

Acceptance Date. The above Amendment is hereby accepted, _____ o'clock a __.m. on the date of_____
("Acceptance Date"). This Amendment will become binding upon the parties when notice of the acceptance of this Amendment has been received by offeror. The offeror shall promptly notify offeree when acceptance has been received.

THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH  Brandi True  IS INVOLVED AS A REAL ESTATE LICENSEE. UNAUTHORIZED USE OF THE FORM MAY RESULT IN LEGAL SANCTIONS BEING BROUGHT AGAINST THE USER AND SHOULD BE REPORTED TO THE GEORGIA ASSOCIATION OF REALTORS® AT (770) 451-1831.

Copyright© 2016 by Georgia Association of REALTORS®, Inc.                    F105, Amendment to Agreement, 01/01/16

**ATLANTA COMMUNITIES**
REAL ESTATE BROKERAGE

# AMENDMENT TO AGREEMENT
## AMENDMENT # 3

Date: 1/27/2017

*Georgia* REALTORS®

2017 Printing

Whereas, the undersigned parties have entered into a certain Agreement between  H. Alan Mushegan

 Denise Mushegan ("Buyer") and  Blomquist Builders Group ("Seller"),
with a Binding Agreement Date of _____ for the purchase and sale of real property located at:
 5020 Pindo's Trail ,  Powder Springs , Georgia 30127 ; and

Whereas, the undersigned parties desire to amend the aforementioned Agreement, it being to the mutual benefit of all parties to do so;

Now therefore, for and in consideration of the sum of Ten Dollars ($10) and other valuable considerations paid by each to the other, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree to modify and amend the aforementioned Agreement as follows: [Note: The following language is furnished by the parties and is particular to this transaction.]

Contract amount before amendment $858,569.77

Closing date is to be on or before April 21st 2017

Upgrades See Exhibit "A" to amendment 3

New contract price after Amendment 3 - $1,000,038.23

Additional pages ☒ are or ☐ are not attached.

It is agreed by the parties hereto that all of the other terms and conditions of the aforementioned Agreement shall remain in full force and effect other than as modified herein. Upon execution by all parties, this Amendment shall be attached to and form a part of said Agreement.

_____
1 Buyer's Signature

_____
2 Buyer's Signature

_____
1 Seller's Signature

_____
2 Seller's Signature

Additional Signature Page ☒ is ☐ is not attached.

Additional Signature Page ☒ is ☐ is not attached.

 ATLANTA COMMUNITIES
Selling Brokerage Firm

_____
Broker/Affiliated Licensee Signature

 COBB
REALTOR® Membership

 ATLANTA COMMUNITIES
Listing Brokerage Firm

_____
Broker/Affiliated Licensee Signature

 COBB
REALTOR® Membership

Acceptance Date.  The above Amendment is hereby accepted, _____ o'clock _a_ .m. on the date of
_____, ("Acceptance Date"). This Amendment will become binding upon the parties when notice of the acceptance of the Amendment has been received by offeror. The offeror shall promptly notify offeree when acceptance has been received.

THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH  Jennifer Blomquist  IS INVOLVED AS A REAL ESTATE LICENSEE. UNAUTHORIZED USE OF THE FORM MAY RESULT IN LEGAL SANCTIONS BEING BROUGHT AGAINST THE USER AND SHOULD BE REPORTED TO THE GEORGIA ASSOCIATION OF REALTORS® AT (770) 451-1831.

Copyright© 2017 by Georgia Association of REALTORS®, Inc.

F105, Amendment to Agreement, 01/01/17

# Exhibit "A"    Amendment 3

| | Items to be determined | Updated 01.26.2017 | $ | 858,569.77 |
|---|---|---|---|---|
| | Additional brick on rear of house | | $ | 9,500.00 |
| | Additional brick on foundation | | $ | 12,500.00 |
| | Additional Retaining Wall Charges | | $ | 98,708.00 |
| | Tile Overages (via text 12.12.2016) *01.09.2017 changed butlers pantry to 3x6 tiles w/Knox Amara Pattern in the entire kitchen area - waiting for price update | Kitchen backsplash $1605.00 Master Bath Floor $250.50 Shower Walls $610.00 Shower floor and niches $905.48 Main Floor – 2nd Bath Shower Floor $378.82 Shower wall accent $291.66 | $ | 4,041.46 |
| | Kitchen & Butler Pantry additional 16" stack cabinets | Email: 01.05.2017 - I have it entered in the waypoint system and the total with custom Hood, Fridge Panels and the stack cabinets came to 28226.00 | $ | 3,750.00 |
| | Kitchen cabinet fronts built in 30" Frig 24" Freezer *Do not show Hinges | The stack cabinets added 3750.00 The Fridge panels are 2800 from Waypoint I'm looking to see if i can match doors and it would be about 2000. | $ | 2,800.00 |
| | Kitchen - larger island w/granite & cabinets | The master bath design the way it is was upgrade of $750. | $ | 3,047.00 |
| | Master Bath - additional 18" cabinets on vanity top | 01.26.2017 Kitchen Island $3,047.00 | $ | 750.00 |
| | Can Lights  - Overage | | $ | 3,375.00 |
| | Add linen closet in master bath | | $ | 900.00 |
| | Iron Baluster on rear outdoor balconies | *buyer to supply | | |
| TBD | Round downspouts on front | | | |
| TBD | 8' Interior door upgrade | | | 3005.00 |
| TBD | Electrical upgrades | | | |
| | | | | |
| Credit | Add 2 fans to covered porch Amendment 10.21.2016 | Fanimation Studio Collection Eastview 23 Item # 581596 Model # LP8074SLAZ @Lowes $229 each | $ | (458.00) |
| Credit | Comfort (ADA) toilets x2 Amendment 04.28.2016 | Put ADA in 2nd bedroom bath only | $ | (400.00) |
| Credit | Butler Pantry, cabinets and sink Amendment 04.28.2016 | Credit for builder sink only | $ | (50.00) |

ATLANTA COMMUNITIES
REAL ESTATE BROKERAGE

# AMENDMENT TO AGREEMENT
## AMENDMENT # 4

Date: 02/17/2017

*Georgia*REALTORS®

2017 Printing

**Whereas**, the undersigned parties have entered into a certain Agreement between  H. Alan Mushegan
Denise Mushegan                        ("Buyer") and  Blomquist Builders Group                        ("Seller"),
with a Binding Agreement Date of  4/27/2016                         for the purchase and sale of real property located at:
5020 Pindos Trail                                , Powder Springs           , Georgia 30127           ; and

**Whereas**, the undersigned parties desire to amend the aforementioned Agreement, it being to the mutual benefit of all parties
to do so;

Now therefore, for and in consideration of the sum of Ten Dollars ($10) and other valuable considerations paid by each to the
other, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree to modify and amend the
aforementioned Agreement as follows: [Note: The following language is furnished by the parties and is particular to this
transaction.]

All parties agree to the following:
1.) $(0.66)        CORRECTION TO PURCHASE PRICE (AFTER AMENDMENT 2)
        REVISED PURCHASE PRICE AFTER CORRECTION- $1,000,037.57

2.) Purchaser name shall be changed:   "ANITA DENISE CHAPMAN"

3.) Additional page 1 attached and included herein:
        *Listing of checks received to date totaling 92,000.00

**Additional pages ☒ are or ☐ are not attached.**

It is agreed by the parties hereto that all of the other terms and conditions of the aforementioned Agreement shall remain in full
force and effect other than as modified herein. Upon execution by all parties, this Amendment shall be attached to and form a
part of said Agreement.

_____
1 Buyer's Signature

*Jennifer Blomquist*
1 Seller's Signature

_____ Chapman
2 Buyer's Signature

_____
2 Seller's Signature

**Additional Signature Page ☐ is ☒ is not attached.**

**Additional Signature Page ☐ is ☒ is not attached.**

ATLANTA COMMUNITIES
Selling Brokerage Firm

ATLANTA COMMUNITIES
Listing Brokerage Firm

_____
Broker/Affiliated Licensee Signature

*Brandi True*
Broker/Affiliated Licensee Signature

Atlanta Board of Realtors
REALTOR® Membership

Atlanta Board of Realtors
REALTOR® Membership

**Acceptance Date.** The above Amendment is hereby accepted, 2/18/17  o'clock 2:52 pm on the date of
_____, ("Acceptance Date"). This Amendment will become binding upon the parties when notice of
the acceptance of the Amendment has been received. The offeror shall promptly notify offeree when
acceptance has been received.

THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH  Brandi True           IS INVOLVED AS A REAL
ESTATE LICENSEE. UNAUTHORIZED USE OF THE FORM MAY RESULT IN LEGAL SANCTIONS BEING BROUGHT AGAINST THE USER AND SHOULD BE REPORTED TO
THE GEORGIA ASSOCIATION OF REALTORS® AT (770) 451-1831.

Copyright© 2017 by Georgia Association of REALTORS®, Inc.              F105, Amendment to Agreement, 01/01/17

ID# 2018-0056305-CV
Page 23

BLOMQUIST BUILDERS
GROUP



# The Summit
### At Lost Mountain



Brandi True, RENE – Realtor – (678) 699-7101
Luis Rodriguez – Realtor, – (678) 229-8689
(770) 693-8828 – Onsite sales office

---

**Date of Contract:** | **LOT #:** 21

**PURCHASER: ALAN & DENISE MUSHEGAN**

**PROPERTY ADDRESS:**
5020 PINDOS TRAIL
POWDER SPRINGS, GA 30127

### NON-REFUNDABLE DEPOSITS RECEIVED

## SCHEDULED BUILDER DEPOSITS

| CHECK # | DATE RECEIVED | DESCRIPTION | AMOUNT PAID | SUBTOTAL |
|---|---|---|---|---|
| 1) 2001 | 03/18/2016 | Lot Reservation | $5,000.00 | $ 5,000.00 |
| 2) 1904 | 08/24/2016 | Builder Deposit | $34,800.00 | $ 39,800.00 |
| 3) 1938 | 10/31/2016 | Additional Builder Deposit | $52,200.00 | $ 92,000.00 |
| | | | **TOTAL** | $ 92,000.00 |

## UPGRADES (ADDED TO CONTRACT AMENDMENTS)

| CHECK # | DATE RECEIVED | DESCRIPTION | AMOUNT PAID | SUBTOTAL |
|---|---|---|---|---|
| 4) | | Amendment | | |
| 5) | | Amendment | | |
| 6) | | Amendment | | |
| 7) | | Amendment | | |
| 8) | | Amendment | | |
| 9) | | Amendment | | |
| 10) | | Amendment | | |
| | | | **TOTAL** | 0.00 |

**TERMS:**
1. All payments received are NON-REFUNDABLE BUILDER DEPOSITS except and unless specified within the terms of the contract.
2. All payments above to be applied to final contract sales price, at time of closing and credited to buyer according to contract terms.
3. This list of payments received is meant for reference only and is not to be considered a validation that the above payments have been fully funded or cleared from the bank account, nor should it be used as an indication of any related project or work status.
4. All checks/payments above have been given as pre-payment deposits for professional contracting work associated with Blomquist Builders Group, Inc., and any inquiries concerning these payments are to be directed to either the agents above or Blomquist Builders Group, inc. during normal business hours.

### COPIES DISTRIBUTED (WITH UPDATED CONTRACT)

Lender: LISA W. SMITH

Buyer: ALAN & DENISE MUSHEGAN

Buyers agent: N/A

Closing attorney:

Seller rep:

Broker office: *Brandi True*

*JB*

ID# 2018-0056305-CV
Page 24

**ATLANTA COMMUNITIES**
REAL ESTATE BROKERAGE

## AMENDMENT TO AGREEMENT
### AMENDMENT # 5

Date: 4/17/17

*Georgia*REALTORS®

2017 Printing

Whereas, the undersigned parties have entered into a certain Agreement between  H. Alan Mushegan

Anita Denise Chapman _____ ("Buyer")  and  Blomquist Builders Group _____ ("Seller"),
with a Binding Agreement Date of  4/27/16 _____ for the purchase and sale of real property located at:
5020 Pindos Trail _____, Powder Springs _____, Georgia 30127 _____; and

Whereas, the undersigned parties desire to amend the aforementioned Agreement, it being to the mutual benefit of all parties to do so;

Now therefore, for and in consideration of the sum of Ten Dollars ($10) and other valuable considerations paid by each to the other, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree to modify and amend the aforementioned Agreement as follows: [Note: The following language is furnished by the parties and is particular to this transaction.]

All parties agree to the following changes:

Sales price changes from:     $1,000,037.57
to:     $1,000,038.00

Closing date to be changed to on or before 5/1/17

Additional pages ☐ are or ☒ are not attached.

It is agreed by the parties hereto that all of the other terms and conditions of the aforementioned Agreement shall remain in full force and effect other than as modified herein. Upon execution by all parties, this Amendment shall be attached to and form a part of said Agreement.

_____
1 Buyer's Signature

_____
2 Buyer's Signature

_____
1 Seller's Signature

_____
2 Seller's Signature

Additional Signature Page ☐ is  ☒  is not attached.

Additional Signature Page ☐ is   ☒   is not attached.

ATLANTA COMMUNITIES _____
Selling Brokerage Firm

_____
Broker/Affiliated Licensee Signature

Atlanta Board of Realtors _____
REALTOR® Membership

ATLANTA COMMUNITIES _____
Listing Brokerage Firm

*Brandi True* _____
Broker/Affiliated Licensee Signature

Atlanta Board of Realtors _____
REALTOR® Membership

**Acceptance Date.**  The above Amendment is hereby accepted, _4/20/17_ o'clock ☐ 1:34 m. on the date of
_____, ("Acceptance Date"). This Amendment will become binding upon the parties when notice of the acceptance of the Amendment has been received by offeror. The offeror shall promptly notify offeree when acceptance has been received.

THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH  Brandi True _____ IS INVOLVED AS A REAL ESTATE LICENSEE. UNAUTHORIZED USE OF THE FORM MAY RESULT IN LEGAL SANCTIONS BEING BROUGHT AGAINST THE USER AND SHOULD BE REPORTED TO THE GEORGIA ASSOCIATION OF REALTORS® AT (770) 451-1831.

Copyright© 2017 by Georgia Association of REALTORS®, Inc.

F105, Amendment to Agreement, 01/01/17

ID# 2018-0056305-CV
Page 25

# EXHIBIT B

IN THE SUPERIOR COURT OF COBB COUNTY
STATE OF GEORGIA

ANITA DENISE CHAPMAN, and H. ALAN                 )
MUSHEGAN, SR.,                                    )
                                                  )
      Plaintiffs,              )
                                                  )
v.                                                )     **CIVIL ACTION FILE**
                                                  )     **NO.**
                                                  )
**JENNIFER LEA ORTON BLOMQUIST,**                 )
                                                  )
      Defendant.               )
_____   )

### AFFIDAVIT OF MAUREEN DAVIS

State of Georgia
County of Gwinnett

      CAME BEFORE ME, the undersigned officer duly authorized to administer oaths, Maureen L. Davis, who, upon being sworn, deposes and states:

1.

      My name is Maureen L. Davis. I am over the age of 18, and am competent in all respects to testify to the matters asserted herein. I have personal knowledge of those matters and know them to be true. This affidavit is given for any lawful purpose.

2.

      I am a professional engineer and the principal at Haight Davis & Associates, Inc., located in Lawrenceville, Georgia. A copy of my current Curriculum Vitae is attached as Exhibit A to and made a part of this affidavit.

3.

      I have inspected the property in question at 5020 Pindos Trail, Powder Springs, GA on multiple occasions.  Two of my reports concerning the property, dated September 11, 2018 and

February 25, 2020 are attached hereto <u>Exhibits B and C</u>, respectively. The facts reported in Exhibits B and C, and my analysis therein, was and remains true and accurate to the best of my knowledge. It is, however, highly probable that the conditions have worsened since my last site visit in February 2020.

4.

As noted specifically on Pages 2 and 3 of Exhibit B, the layout, or configuration of the home on the lot was changed from its initial approved layout to a new layout selected by Blomquist Builders. Blomquist Builders, as part of its construction, essentially reversed, or "flipped" the orientation of the home, building the driveway on the downhill side of the lot, rather than the uphill side as set out in the original, approved plans.

5.

The industry standard is to locate the driveway at the higher elevation of the lot. However, by flipping the layout of the house so that the driveway was built on the lower, or downhill, side of the lot, Blomquist Builders violated this industry standard.

6.

Additionally, our analysis, as outlined in more detail on Page 7 of Exhibit B, shows that the house was built in violation of the 2012 Edition of the International Residential Code (IRC) Section R401.3, which states:

*Surface drainage shall be diverted to a storm sewer conveyance or other approved point of collection that does not create a hazard. Lots shall be graded to drain surface water away from foundation walls. The grade shall fall a minimum of 6 inches within the first 10 feet.*

7.

As I stated in Exhibit B, along the front right corner of the Property (as seen from the street), the grade does not meet these requirements. Surface runoff drains towards the house

2

from the front yard, where it is trapped by the retaining wall at this location. Similarly, at the front left of the home, the grade is actually lower adjacent to the foundation wall, encouraging surface runoff to drain directly to this area. It is clearly evident that this drainage pattern does not meet the IRC requirements. Since this water has nowhere to drain, it remains in place and continues to saturate the soils adjacent to the foundation. In my opinion, the probability of this having a negative impact on the home increases with time.

8.

Blomquist Builders' decision to "flip" the plans and build the house in violation of applicable industry standards, and/or its decision to construct the property with a grading layout in violation of code has caused damage to the property, including, but not limited to, increased water run-off and erosion, excessive settlement and uneven floors, cracks in the foundation, and voids under the driveway and under the house itself.

9.

Substantially repairs and/or alterations are necessary to address these violations by Blomquist Builders. Specifically, and as I stated on Page 9 of Exhibit B, re-grading of the soil is essential in order to drain all runoff away from the front foundation wall and away from the retaining wall along the right side. A subsurface drainage system will be required, one that incorporates the downspouts and also captures surface runoff at the low areas. Such a system must discharge well away from the home, in a manner that will not cause soil erosion along the right side slope. The point of discharge must be further towards the rear of the lot, not along the front or the side of the house. The landscaped steps along the right side must be removed and replaced.

3

10.

The driveway along the left side must be removed and replaced. In its current condition, the driveway encourages surface runoff towards the home, which has created subsurface soil erosion of the foundation soils. The new concrete must be placed such that runoff drains away from the home and into a new subsurface drainage system. A curb and sloped surface into the drainage system will be required to prevent the surface runoff from the driveway from causing further erosion at the left side. Again, the point of discharge must be further towards the rear of the lot.

11.

In a manner similar to the right side, the slope along the left side must also be stabilized. The best method for stabilizing this slope would be with tiered retaining walls that will support the foundation soils and the slopes. In its current state, the left side slope is incapable of stabilization.

FURTHER AFFIANT SAYETH NAUGHT.

MAUREEN L. DAVIS

Sworn to and subscribed
before me this 2nd day
of June 2021

NOTARY PUBLIC

4

# EXHIBIT

## "A"

**MAUREEN L. DAVIS, PE, DFE**
**473 Cricket Ridge Court**
**Lawrenceville, GA 30044**
**Office: 770- 979-6650   Cell: 678-907-6158**
**maureen@haight-davis.com**

## CURRICULUM VITAE

**EDUCATION:**      MS, Civil Engineering, North Carolina State University, 1998
BS, Civil Engineering – Construction, North Carolina State University, Summa Cum Laude, 1993

**REGISTRATION:**  State of Georgia, No. 030928

**PROFESSIONAL EXPERIENCE:**

2000-Present:      **Haight Davis & Associates, Inc.**                   Lawrenceville, GA
*Principal*
Construction consultant in civil engineering, construction engineering and building technology.  Provides design services for buildings, inspections, evaluations, forensic engineering, litigation support, construction management, and replacement reserve studies.  Provides expert witness testimony for building foundations, roofing systems, waterproofing systems, building envelope leaks, structural systems, construction defects, construction materials, construction site safety, trench and excavation safety, pavement assessments, erosion and sediment control, drainage issues, blasting evaluations, premises liability issues, building code and handicap accessibility code compliance.

1998-2000:        **Williams Environmental Services, Inc**.           Stone Mountain, GA
*Manager of Project Controls and Contract Management*
Responsible for the oversight of all remediation projects.  Duties included the continuous tracking of projects with respect to schedule and budget. Responsible for the tracking of all incoming proposals, the legal review of all contracts, contract negotiations with potential clients, and the review of all cost estimates.  Instrumental in transforming estimates into working budgets for newly-awarded contracts. Responsible for the writing of project-specific manuals, to include financial and project management manuals.
*Project Manager*
Responsible for the on-site management of 3 Superfund site remediation projects in Cape Girardeau, Missouri, in Albany, Georgia, and in Fayetteville, North Carolina.  Work included all cost control, budgeting, scheduling, subcontracting, quality control and client relations.   At all remediation projects, managed the sampling, excavation, thermal remediation, and backfill of contaminated soils.  Also responsible for building demolition, surveying, monitoring well installation and repair, drainage installation, and waste characterization and removal.

2

| 1997-1998: | **North Carolina State University** | Raleigh, NC |

*Graduate Research and Teaching Assistant*

Conducted research in the field of Human Factors and Ergonomics for the Construction Automation and Robotics Lab. Main focus involved "Technological Interventions to Reduce the Incidents of Back Injury in Residential Construction" while also working on "Underground Buried Utilities Detection and Damage Prevention". Responsible for all grading, advising, and part-time teaching of an advanced Construction Equipment and Methods class.

| 1994-1997: | **United States Army** Total Service (1986-2003) | Fort Bragg, NC |

*Engineering Platoon Leader / Executive Officer/ Construction Officer*

Second in command of an Airborne Combat Construction Company (362nd Eng. Co.), providing design and construction of roads, parking areas, airfields, landing strips and building pads. Responsible for all aspects of construction, including quality control, field testing, surveying, scheduling, equipment utilization and maintenance. Strongly focused on soil stabilization, soil compaction and drainage issues. Successfully deployed 190 personnel and 183 pieces of construction equipment from Fort Bragg, NC to Yugoslavia/Bosnia during Operation Joint Endeavor in 1996. Served as Executive Officer and Construction Officer for the duration of the combat mission. Planned and executed construction projects to include road construction, road repair, quarry and blasting operations, establishment of base camps, and humanitarian work with nearby orphanage.

*Observer/Controller-Trainer (2002-2003)* Fort Gillem, GA

Returned to active duty with Reserve Unit (4th BDE, 87th DIV (TS) 1/347th) for 9 months during Operation Enduring Freedom/Operation Noble Eagle to train GA National Guard Engineering units prior to wartime deployment to Iraq. Remained with each unit for entire duration from initial activation, equipment preparation, personnel training to eventual deployment to war.

**PROFESSIONAL AFFILIATIONS**

National Academy of Forensic Engineers (NAFE), Member
American Society of Civil Engineers (ASCE), Member
National Society of Professional Engineers (NSPE), Member
Society of American Military Engineers (SAME), Member
Georgia Society of Professional Engineers (GSPE), Member
International Institute of Building Enclosure Consultants (IIBEC), Member
ASTM International, E-58 Committee Member
Order of the Engineer, Member
Chi Epsilon Civil Engineering Honor Society
SEAK, Inc., Faculty Member
Half Moon Seminars, Faculty Member

**PROFESSIONAL CERTIFICATIONS**

GA Registered Professional Engineer (No. 030928)
GA Soil and Water Conservation Commission, Level II Design Professional (No. 39625)
NAFE Diplomate in Forensic Engineering (DFE)

# EXHIBIT

## "B"

# HAIGHT DAVIS & ASSOCIATES, INC.

**473 Cricket Ridge Court**
**Lawrenceville, GA  30044**
**(770) 979-6650**
**www.haight-davis.com**

September 11, 2018

Ms. Denise Chapman
5020 Pindos Trail
Powder Springs, GA 30127

RE:    Evaluation of Construction Issues at 5020 Pindos Trail, Powder Springs, GA
       Project No. LS-18-192

Dear Ms. Chapman:

At your request, Maureen L. Davis, PE accompanied by Emily Bunce, Intern, performed a limited inspection at the above referenced address on July 3, 2018. The purpose of our inspection was to evaluate specific construction issues identified by the Homeowner, Denise Chapman.

This report is prepared for the exclusive use of Denise Chapman (Homeowner) for specific application to the residence located at 5020 Pindos Trail in Powder Springs, Georgia. The conclusions and recommendations herein are rendered using generally accepted standards for construction and engineering practice in the State of Georgia.  These conclusions are based upon information provided by you, the results of our visual inspection of the indicated areas of the residence, and our past experience. No intrusive or other testing was performed, nor were building materials removed or excavations made for further observations.  We did, however, perform a limited elevation survey while onsite.

I have reviewed the following documents prior to writing my report and some of my opinions are based upon them:

1. Cobb County Building Permit, issued May 19, 2016.
2. Gaskins Surveying House Location Plan, Lot 21, dated June 1, 2016.
3. Captive Engineering, LLC Subwall Foundation Evaluation, dated August 27, 2016.
4. Captive Engineering, LLC Basement Foundation Subwall Evaluation, dated September 14, 2016.
5. Captive Engineering, LLC Foundation Evaluation, dated October 5, 2016.
6. Captive Engineering, LLC Foundation Wall Evaluation, dated October 11, 2016.
7. Captive Engineering, LLC Basement and Garage Slab Foundations Evaluation, dated October 25, 2016.
8. Captive Engineering, LLC Brick Veneer Crack Evaluation, dated October 16, 2017.

9. Engineered Solutions of Georgia (ESOG) Structural Inspection Report, dated November 3, 2017.
10. Cumberland Engineering Consultants (CEC) Geotechnical Evaluation, dated May 16, 2018.
11. Cobb County Permitting and Inspection Documents, miscellaneous dates.
12. Photographs from Homeowner, miscellaneous dates.

This report does not classify or quantify any mold that may be present. Mold is often stimulated by leaks, and mold spores may affect the health of the occupants and guests. For that reason, we encourage the Homeowner to engage a qualified mold specialist or industrial hygienist to properly evaluate the property with regard to mold and to advise her accordingly.

No other warranty, expressed or implied, is made, nor is any guarantee given other than that professional care and standards were applied.


## DESCRIPTION AND BACKGROUND

The residence located at 5020 Pindos Trail in Powder Springs, Georgia is a two-story structure conventionally framed with wood and veneered with brick *(Photos 1-4)*. It is located in The Summit at Lost Mountain subdivision. The home has poured concrete foundation walls at the partially finished basement elevation. A side-facing two-car garage is located at the left* side with an additional one-car front facing garage adjacent to this area.

The lot slopes steeply from front to rear and from right to left. Due to the challenging topography, tall subwalls were constructed to provide support to the rear section of the home *(Photos 5-6)*. Our measurements indicate that the rear subwall is approximately 18'-6" at its tallest point. Subwalls are also present along both sides of the home. Therefore, the majority of concrete basement slab is supported along the rear and sides by the subwalls and by the backfilled soils placed after the subwalls were constructed *(Photo 7)*.

Along the right side, a wing wall extends from the front right corner of the home *(Photo 8)*. Due to the steep grade, an exterior set of stairs are present at this location. Access to the basement is via a door along this side of the home.

The home was custom built for the Homeowner by Blomquist Builders Group, Inc. (Builder). Originally, the Homeowner chose Lot 19 within the new subdivision, but decided upon Lot 21, with slightly better topography for construction. The original building permit with Cobb County was transferred from Lot 19 to Lot 21, at the request of the Builder.

Construction started in August 2016 and continued into 2017. The Homeowner visited the site frequently, taking photographs of the construction activities. On April 26, 2017, the Homeowner and Builder officially closed on the home, although it was not finished and not ready to be occupied. The Homeowner did not perform a final walkthrough until July 28, 2017.

**\*Orientation is viewing the home from the street.**

Soil erosion around the home has been an ongoing concern since before closing occurred. Severe slope failure has taken place on both sides of the home *(Photos 9-11)*.  Brick veneer cracks along the exterior and additional distress at the interior have prompted the Homeowner to consult with various professionals to inspect the property.

Our assignment was to perform an evaluation of the structure with respect to proper construction and to evaluate the drainage and site conditions around the home.


## DOCUMENT REVIEW

A. **Gaskins Surveying House Location Plan**.  The Homeowner received various documents from Cobb County via an open records request *(Document No. 11, above)*. One of the documents is a copy of the plat which identifies the location of the home.  This document was stamped by Cobb County Site Plan Review Section as being reviewed and approved on June 22, 2016.  Additionally, the plat was reviewed and approved by the Stormwater Management Program on June 21, 2016.

**FIGURE 1 – HOUSE LOCATION**

The configuration depicted on the plat was modified. The original plan called for the driveway to be located along the right side of the home *(Figure 1, above)*. The industry standard is to locate the driveway at the higher elevation of the lot, in this case, along the right property line *(Figure 2, below)*. This is not, however, how the home was constructed. The footprint of the home was reversed and the concrete driveway was constructed along the left property line.

It appears that the officials at Cobb County were concerned with the drainage on the lot before the home was constructed. The plat includes a hand-written note from Mr. Andrew Heath, PE, which states that the Builder is to "*construct drive so runoff from curb will not flow down driveway.*" The intent was to minimize the amount of surface runoff from the street in order to prevent damage to the home.

**FIGURE 2 – ORIGINAL LOT TOPOGRAPHY**



B. **ESOG Structural Inspection Report**. The report from ESOG *(Document No. 9, above)* contains data obtained from a site visit by Nick Crispell, PE on October 30, 2017. ESOG observed cracks in the brick veneer along the right side of the home. ESOG also performed a limited elevation survey of the basement. We compared this data to our information and found some changes have occurred since October 2017.

C. **CEC Geotechnical Evaluation.** The geotechnical investigation performed by Brian A. Grinstead, PE involved both borings and hand augers.  The results of this March 23, 2018 investigation are outlined in the CEC report, dated May 16, 2018 *(Document No. 11, above)*.

CEC states that *"Our evaluation of the existing fill materials indicates that the soil backfill was not properly compacted." "Both the DCP and N-values from the borings are lower than would be expected for properly compacted fill material throughout the respective boring depths."* CEC also noted "*various soil related issues associated with the home."*  Included in these issues are a void in the driveway, a vertical foundation wall crack, cracking of the front sidewalk, erosion from under the stone steps, and brick veneer cracking.

D. **Captive Engineering, LLC Evaluations**. Joseph A. Kaufman, PE visited the property a number of times during construction, at the request of Jennifer Blomquist and Greg Hagerman with Blomquist Builders.  According to Mr. Kaufman, the *"soil conditions are suitable for a design bearing pressure of 2500 pounds per square foot (psf)."* This information conflicts with the data obtained from CEC Geotechnical.

Mr. Kaufman was asked to return to the property on September 2, 2017 to *"observe and evaluate cracks in the brick veneer at lot 21."*  In his evaluation, dated October 16, 2017 *(Document No. 8, above),* Mr. Kaufman stated that the brick veneer cracks were *"hairline to 1/16" cracks in the brick near the basement door located on the right side of the building and by the 1st story, front right windows."* He recommended that bricks be removed to verify that brick ties are present and that the area be monitored for future movement. Based on the repairs made to the brick, it is obvious that the brick distress in this area was much worse than described by Mr. Kaufman *(Photo 12)*.


**EVALUATION**


A. **Basement Slab Distress.** While onsite, we conducted an elevation survey of the basement slab using a Technedia ZipLevel Pro-2000 and a 4-foot level.  Our measurements indicate that there are significant elevation differences within the footprint of the basement slab. Measurements taken along the rear of the basement are substantially higher, in the areas where the slab is well-supported by the subwall foundation.  Towards the center of the home, however, the slab has settled by over 1 inch *(Photos 13-14)*.

Cracks in the basement slab are also present.  These cracks, however, are not the typical shrinkage cracks that are found in most homes.  Instead, the slab is cracked parallel to the rear subwall foundation and diagonally at the left rear corner.  This is indicative of the interior portion of the slab settling relative to the perimeter of the structure.  Cracks are also present at the center of the home, spanning from side to side *(Photos 15-16)*.

B. **Sloped Floor Conditions.**  At both the basement and the first floor levels, the floor surfaces are sloped inward from the rear and side walls of the home.  The basement floor is sloped over 1-inch in 4 feet, as described above.  The first floor slopes in a similar manner *(Photos 17-18)*.

C. **Foundation Wall Crack.**  Along the left side of the basement, the foundation wall has a significant vertical crack located approximately 15 feet from the front left corner.  This crack is larger at the top and narrower at the bottom *(Photos 19-20)*.  Our measurements indicate that the front left corner of the basement foundation has settled relative to the foundation wall that extends further towards the rear.

D. **Brick Veneer Cracks.**  Along the right side of the home, the brick veneer is cracked in a stair-step pattern. This cracking starts at the front right side of the home and extends to the retaining wall located at the corner.  From here, the cracking extends to the veneer along the right side. The Builder has repointed the brick in this area, but the cracks have since opened up again *(Photos 21-24)*.

Brick veneer cracks are also present between the two garages along the left side *(Photos 25-26)*.  Other cracking in present in the brick veneer visible from the rear deck at the basement level *(Photo 27)*.

E. **Driveway Void.** There is a large void present at the left front corner of the home at the garage door opening *(Photos 28-29)*. The driveway is sloped to drain surface runoff directly towards the house at this location. Since the soil is not well compacted, the soil has eroded below the surface of the concrete, creating a void under the driveway adjacent to the garage slab.  This condition has been an ongoing concern since the home was first constructed and continues to worsen with time.

F. **Soil Erosion and Slope Instability**.  The soil around the perimeter of the home continues to erode, causing slope instability.  Along the right side, the pop-up drain installed by the Builder discharges concentrated roof runoff to the top of the stone steps *(Photos 30-32)*. The soil supporting the steps has eroded severely, undermining the steps and making it dangerous to use them.

Along the left side, the slope has failed a number of times.  The Builder has repeatedly attempted to resolve the issue with various stabilization methods, but none have proven successful *(Photos 33-34)*.

G. **Drywall Distress and Trim Separations.** Throughout the home, there are areas of drywall distress and trim separations. This distress appears to be a result of movement of the basement slab foundation *(Photos 35-36)*.

H. **Water Infiltration at Windows and Doors.**  Along the rear of the home, water infiltrates the windows and doors at both the basement and first floor levels. Water stains are clearly visible from repeated events of infiltration. The hardwood flooring adjacent to the rear-facing windows is also damaged from exposure to water *(Photo 37)*.

Shortly after the closing occurred, the Builder replaced windows that were severely scratched. For a period of time, the replaced windows were not a problem. Starting earlier this year, however, the new windows have allowed water to enter into the interior of the home.

I. **Improper Site Drainage.** While onsite, we performed an elevation analysis along the exterior of the home. We discovered that the grade along the front of the home does not comply with the IRC. **Section R401.3 of the IRC** states:

> *Surface drainage shall be diverted to a storm sewer conveyance or other approved point of collection that does not create a hazard. Lots shall be graded to drain surface water away from foundation walls. The grade shall fall a minimum of 6 inches within the first 10 feet.*

Along the front right corner of the home, the grade does not meet these requirements. Surface runoff drains towards the house from the front yard, where it is trapped by the retaining wall at this location. Similarly, at the front left of the home, the grade is actually lower adjacent to the foundation wall, encouraging surface runoff to drain directly to this area.

It is clearly evident that this drainage pattern does not meet the IRC requirements. Since this water has nowhere to drain, it remains in place and continues to saturate the soils adjacent to the foundation. In my opinion, the probability of this having a negative impact on the home increases with time.

J. **Roof Drainage and Discharge.** In some locations, the downspouts of the home discharge directly to the foundation. Combined with the already poor drainage conditions, the roof runoff only adds to the drainage concerns. **Section R801.3 of the IRC** states:

> **Section R801.3 Roof drainage.** *In areas where expansive or collapsible soils are known to exist, all dwellings shall have a controlled method of water disposal from roofs that will collect and discharge roof drainage to the ground surface at least 5 feet from foundation walls or to an approved drainage system.*

During the original construction, the Builder should have installed downspout extensions to direct the concentrated roof runoff away from the foundation. In particular, the downspout at the front right corner of the home should have been incorporated into the construction of the retaining wall. Since this runoff discharged behind the wing wall for a period of time, it likely added to the damage of the brick veneer along at this location.

K. **Additional Issues**

1. **Improper Deck Construction.** The rear deck of the home does not have flashing, as required by the IRC *(Photo 38)*. In addition, the deck has been constructed with

improper connectors.  The guardrail has been toe-nailed, with large gaps present in the railing *(Photos 39-41)*.

2. **Condensers Not Properly Supported**. Because of the erosion along the right side of the home, the condensers are not properly supported *(Photo 42)*.  With the continuation of erosion, this condition will continue to worsen.

3. **Trash in Backfilled Soils.**  Along the sides and rear of the home, construction debris is scattered in the soil.  We found bricks, wire, saw blades, plastics, etc. throughout the soil *(Photos 43-44)*.

4. **Silt Fencing Left in Place.**  Because the slopes are not stabilized, the Builder left silt fencing in place. Upon completion of slope stabilization, silt fencing and other erosion control measures are typically removed from the site.  Since erosion is ongoing, however, the silt fencing remains in place *(Photo 45)*.

5. **Hardwood Flooring Damage.**  As mentioned above, the hardwood floor is damaged in various locations, due to continued water infiltration.

6. **Concrete Walkway Cracks.**  Despite having control joints placed in acceptable locations, the concrete walkway in front of the home is cracked *(Photo 46)*. The joints were not properly constructed, allowing the concrete to crack in undesirable locations.

7. **Loose Handrail.**  The handrail along the stairs is improperly installed.

8. **Roof Leak into Master Bedroom.**  Water has infiltrated through an improperly flashed area of the roof and has stained the master bedroom ceiling.

9. **Cracked Shower Floor.** The master bathroom shower floor, constructed of river stone, has cracked, creating an uneven, rough surface *(Photos 47-48)*.

10. **Unlevel Flooring Under Carpet.**  The carpet installed in the center, second–floor bedroom has hard humps in the carpet padding.  These humps are from the padding being installed with large deposits of glue that did not get spread evenly on the surface of the subflooring.  The glue hardened in place and the deposits can be felt through the carpet and pad.

## CONCLUSIONS AND RECOMMENDATIONS

The home located at 5020 Pindos Trial in Powder Springs has been defectively constructed and is in need of immediate remedial repairs. The major concern is the need for proper support for the foundation of the structure to include the soils surrounding the home.

The basement slab is not properly supported by the foundation soils and must be reinforced to provide adequate support. This can be accomplished with the installation of helical piers under the load bearing areas of the slab, particularly at the grade beam locations. Other areas under the slab must be filled as well. This can accomplished with slab piers or a subsurface fill material, such as PolyLevel or another light-weight pressure grout or void fill. After the home has the required structural support, further surface leveling will be necessary in the center of the home at all floor elevations. This leveling would restore the sloped floor conditions that have resulted from foundation settlement.

The foundation wall crack must be properly sealed and the crack must be monitored. If it is discovered that the crack widens, foundation piers may be necessary along the left front corner of the home.  Presently, this corner has settled slightly, relative to the adjacent area of the basement. Should this settlement continue, foundation support in this area will be required.

As it is currently configured, the driveway encourages surface runoff towards the home, causing soil erosion under the concrete. Important to note is that this condition may be causing some of the distress in the foundation wall at the left front corner. The driveway must be removed and replaced with a proper slope to ensure that all water drains away from the residence along this side. If necessary, the new driveway may require a curb along the left rear edge with a new catch basin to adequately collect surface runoff from the driveway. Any collected water must be discharged far to the rear of the lot, to prevent additional damage to the structure.

Additional modifications are required around the perimeter of the home due to improper drainage. Re-grading of the soil is essential in order to drain all runoff away from the front foundation wall and away from the retaining wall along the right side. A subsurface drainage system will be required, one that incorporates the downspouts and also captures surface runoff at low areas. Such a system must discharge well away from the home, in a manner that will not cause soil erosion along the slopes on either side.  The point of discharge must be further towards the rear of the lot, not along the front or the sides of the house.

The landscaped steps along the right side must be removed and replaced. The slope along the left side must also be stabilized.  The best method for stabilizing this slope would be with tiered retaining walls that support the foundation soils and the slopes. In its current state, the left side slope is incapable of stabilization.

The additional items referenced above must also be corrected and repaired accordingly. The windows and doors must be retrofitted such that no water enters into the home. Any corresponding damage caused by the water infiltration, to include mold remediation, must be identified and corrected. Once the materials are removed, further damage may be discovered behind the finished surfaces of the house. Such damage must also be repaired.

During the renovation process, inspections must take place to ensure that the work is properly performed and to identify any additional damage that may be present.

Should further assistance be required or if additional information is necessary, I can be contacted in the office at 770-979-6650 or via e-mail at maureen@haight-davis.com.


Sincerely,

Maureen L. Davis, PE


Enclosures:    Photographs

**HAIGHT DAVIS & ASSOCIATES, INC.**
473 Cricket Ridge Court
Lawrenceville, GA 30044
(770) 979-6650
FAX (770) 979-1025

**PHOTO 1**



Denise Chapman Residence, 5020 Pindos Trail, Powder Springs, GA

**PHOTO 2**



Rear Elevation.

**HAIGHT DAVIS & ASSOCIATES, INC.**
473 Cricket Ridge Court
Lawrenceville, GA 30044
(770) 979-6650
FAX (770) 979-1025

**PHOTO 3**



Left Elevation.

**PHOTO 4**



Right Elevation.

**HAIGHT DAVIS & ASSOCIATES, INC.**
473 Cricket Ridge Court
Lawrenceville, GA 30044
(770) 979-6650
FAX (770) 979-1025

**PHOTO 5**



Tall subwalls were constructed to support the basement foundation.

**PHOTO 6**



Tall subwalls were constructed to support the basement foundation.

**HAIGHT DAVIS & ASSOCIATES, INC.**
473 Cricket Ridge Court
Lawrenceville, GA 30044
(770) 979-6650
FAX (770) 979-1025

**PHOTO 7**



Backfilled soils are present under the basement slab.

**PHOTO 8**



A wing wall extends from the front right corner of the house.

**HAIGHT DAVIS & ASSOCIATES, INC.**
473 Cricket Ridge Court
Lawrenceville, GA 30044
(770) 979-6650
FAX (770) 979-1025

**PHOTO 9**



Homeowner photographs document the numerous slope failures.

**PHOTO 10**



Homeowner photographs document the numerous slope failures.

**HAIGHT DAVIS & ASSOCIATES, INC.**
473 Cricket Ridge Court
Lawrenceville, GA 30044
(770) 979-6650
FAX (770) 979-1025

**PHOTO 11**



Homeowner photographs document the numerous slope failures.

**PHOTO 12**



Brick veneer cracks appeared shortly after closing.

**HAIGHT DAVIS & ASSOCIATES, INC.**
473 Cricket Ridge Court
Lawrenceville, GA 30044
(770) 979-6650
FAX (770) 979-1025

**PHOTO 13**



The basement slab is cracked and the center has settled relative to the perimeter walls.

**PHOTO 14**



The floor has deflected approximately 1-inch in a 4-foot span.

**HAIGHT DAVIS & ASSOCIATES, INC.**
473 Cricket Ridge Court
Lawrenceville, GA 30044
(770) 979-6650
FAX (770) 979-1025

**PHOTO 15**



The basement slab is cracked parallel to the rear subwall.

**PHOTO 16**



Concrete cracks are also present at the center of the basement slab.

**HAIGHT DAVIS & ASSOCIATES, INC.**
473 Cricket Ridge Court
Lawrenceville, GA 30044
(770) 979-6650
FAX (770) 979-1025

**PHOTO 17**



The first floor is also sloped towards the center of the home.

**PHOTO 18**



The first floor is also sloped towards the center of the home.

**HAIGHT DAVIS & ASSOCIATES, INC.**
473 Cricket Ridge Court
Lawrenceville, GA 30044
(770) 979-6650
FAX (770) 979-1025

**PHOTO 19**



The left side foundation wall has a major crack that continues to widen.

**PHOTO 20**



The left side foundation wall has a major crack that continues to widen.

**HAIGHT DAVIS & ASSOCIATES, INC.**
473 Cricket Ridge Court
Lawrenceville, GA 30044
(770) 979-6650
FAX (770) 979-1025

**PHOTO 21**



Brick veneer cracking is present at the front right corner.

**PHOTO 22**



Brick veneer cracking is present at the front right corner.

**HAIGHT DAVIS & ASSOCIATES, INC.**
473 Cricket Ridge Court
Lawrenceville, GA 30044
(770) 979-6650
FAX (770) 979-1025

**PHOTO 23**



The brick cracking extends around the corner, along the retaining wall.

**PHOTO 24**



The brick cracking extends to the right side of the basement area.

**HAIGHT DAVIS & ASSOCIATES, INC.**
473 Cricket Ridge Court
Lawrenceville, GA 30044
(770) 979-6650
FAX (770) 979-1025

**PHOTO 25**



The brick is cracked along the left side between the garages.

**PHOTO 26**



The brick is also cracked above the single garage door.

**HAIGHT DAVIS & ASSOCIATES, INC.**
473 Cricket Ridge Court
Lawrenceville, GA 30044
(770) 979-6650
FAX (770) 979-1025

**PHOTO 27**



Brick veneer cracks are also present at the rear deck.

**PHOTO 28**



A void is present adjacent to the garage door, where water drains from the driveway.

**HAIGHT DAVIS & ASSOCIATES, INC.**
473 Cricket Ridge Court
Lawrenceville, GA 30044
(770) 979-6650
FAX (770) 979-1025

**PHOTO 29**



The void extends approximately 4-5 feet up and under the concrete.

**PHOTO 30**



A pop-up drain allows roof runoff to discharge to the soils along the right front of the house.

**HAIGHT DAVIS & ASSOCIATES, INC.**
473 Cricket Ridge Court
Lawrenceville, GA 30044
(770) 979-6650
FAX (770) 979-1025

**PHOTO 31**



The soil is eroding from under the stairs along the right side.

**PHOTO 32**



The steep slope along the right side is not stable.

**HAIGHT DAVIS & ASSOCIATES, INC.**
473 Cricket Ridge Court
Lawrenceville, GA 30044
(770) 979-6650
FAX (770) 979-1025

**PHOTO 33**



The slope along the left side is also unstable.

**PHOTO 34**



The slope along the left side is also unstable

**HAIGHT DAVIS & ASSOCIATES, INC.**
473 Cricket Ridge Court
Lawrenceville, GA 30044
(770) 979-6650
FAX (770) 979-1025

**PHOTO 35**



Drywall distress and trim separation are visible throughout the house.

**PHOTO 36**



Drywall cracking is visible in the home.

**HAIGHT DAVIS & ASSOCIATES, INC.**
473 Cricket Ridge Court
Lawrenceville, GA 30044
(770) 979-6650
FAX (770) 979-1025

**PHOTO 37**



The hardwood flooring is damaged from water infiltration.

**PHOTO 38**



The deck has no flashing at the brick surface.

**HAIGHT DAVIS & ASSOCIATES, INC.**
473 Cricket Ridge Court
Lawrenceville, GA 30044
(770) 979-6650
FAX (770) 979-1025

**PHOTO 39**



Improper deck connectors have been used.

**PHOTO 40**



Connectors are not properly attached.

**HAIGHT DAVIS & ASSOCIATES, INC.**
473 Cricket Ridge Court
Lawrenceville, GA 30044
(770) 979-6650
FAX (770) 979-1025

**PHOTO 41**



The top rail is not properly attached and the intermediate rails are loose.

**PHOTO 42**



The condensers are starting to rotate rearward, as the soil erodes.

**HAIGHT DAVIS & ASSOCIATES, INC.**
473 Cricket Ridge Court
Lawrenceville, GA 30044
(770) 979-6650
FAX (770) 979-1025

**PHOTO 43**



Construction trash is spread throughout the property.

**PHOTO 44**



Construction trash remains onsite.

**HAIGHT DAVIS & ASSOCIATES, INC.**
473 Cricket Ridge Court
Lawrenceville, GA 30044
(770) 979-6650
FAX (770) 979-1025

**PHOTO 45**



Silt fencing remains onsite.

**PHOTO 46**



The concrete walkway is cracked, despite having cut control joints.

**HAIGHT DAVIS & ASSOCIATES, INC.**
473 Cricket Ridge Court
Lawrenceville, GA 30044
(770) 979-6650
FAX (770) 979-1025

**PHOTO 47**



The river stone floor of the shower is cracked.

**PHOTO 48**



The river stone floor of the shower is cracked.

# EXHIBIT

## "C"

# HAIGHT DAVIS & ASSOCIATES, INC.

**473 Cricket Ridge Court**
**Lawrenceville, GA 30044**
**(770) 979-6650**
**FAX (770) 979-1025**

## FIELD INSPECTION REPORT NO. 1

**PROJECT NO.**: LS-20-149                          **DATE**: 2-25-2020
**PROJECT NAME**: Denise Chapman                **TIME**:  8:00 AM
**WEATHER**:  Overcast, 52ºF                       **PHOTOS**: Yes
**LOCATION**:  5020 Pindos Trail, Powder Springs, GA 30127
**INSPECTION PURPOSE**:  Evaluation of Foundation Settlement and Water Infiltration Issues

**STATUS, DEFICIENCIES & RECOMMENDATIONS**:

1. Maureen L. Davis, PE met with Denise Chapman, Alan Mushegan, Brian Burkhalter, Esq. and David King, Esq. at the Chapman/Mushegan Residence to discuss the continued settlement of the structure and the additional water damage to the property. This is a follow-up inspection since I had previously visited the property on July 3, 2018.  After that site visit, I wrote a detailed report, dated September 11, 2018, outlining my findings and recommendations.  On December 12, 2018, I developed a Scope of Work, which described the Foundation Restoration and Slope Stabilization Repairs.

2. Ms. Chapman and Mr. Mushegan (Homeowners) identified additional and continuing damage throughout the house.  The water infiltration issues and damages include:

   a. Massive amounts of water and silt/soil entering through the concrete foundation wall adjacent to the single-car garage.
   b. Water infiltration through the rear-facing first floor windows, with the water draining across the surface of the hardwood flooring towards the kitchen island.
   c. Continued water infiltration into master bedroom (1st floor – right* rear).
   d. Water infiltration at the window on the stair landing between the first and second floors.
   e. Continued water infiltration at the rear-facing basement windows.
   f. Continued water infiltration into the right rear basement office.

3. Additional issues include:

   a. Slope failure at both the right and left side yards.
   b. Continued widening of the basement slab cracks.
   c. Development of new cracks in single-car garage.
   d. New drywall cracks and the continuation of distress at previously identified drywall crack locations.
   e. Continued cracking and widening of exterior brick veneer.
   f. Continued soil erosion around the perimeter of the home.

**\*Orientation is viewing the home from the front.**

    g.  New development of efflorescence on the upper surface of the basement patio slab.

4.  **The major concern at this time is the slope failure along both sides of the home. Both of these areas must be immediately blocked off with safety barrier fencing. These two areas are a major safety concern.**

5.  The following procedure is recommended:

    a.  Coordinate with an erosion control company to install both silt fencing and safety fencing on both sides of the property.  The attached drawing indicates the locations for both. Also install sandbags (or other temporary preventative measures to redirect water entry at garage entrances.

    b.  Coordinate with the geotechnical engineering company to core the basement slab, the single-car garage and the main garage.  Cores should be left onsite after they are removed from their locations.  Voids must be fully documented during/after the coring operation.

    c.  Coordinate with the geotechnical engineering company to return to the site during the future meeting with the Builder and Builder's representatives.  At that time, compaction testing will be performed in the cored-slab areas and around the perimeter of the home.

6.  Should you have any questions related to this report, I can be reached in the office at 770-979-6650, or via e-mail at maureen@haight-davis.com.

**PREPARED BY**: _____
                     Maureen L. Davis, PE

Enclosure:    Drawing DC-AM-1



LOT 21

SILT FENCE

SILT FENCE

SAFETY FENCE

SAFETY FENCE

SAND BAGS

D/W

S/W

PINDOS TRAIL

TEMPORARY SITE
SAFETY MEASURES

1. INSTALL BOTH SAFETY
FENCE + SILT FENCE

2. COMPLETELY BLOCK OFF
ALL DANGEROUS AREAS

3. INSTALL SIGNAGE PROHIBITING
ENTRY TO MARKED AREAS

4. PROVIDE ACCESS ONLY FOR
UTILITY COMPANY WORKERS,

5. INSTALL SAND BAGS AT BOTH
GARAGES TO PREVENT FURTHER
SOIL EROSION AND GARAGE
SLAB DAMAGE,

| HAIGHT DAVIS & ASSOCIATES, INC. Consulting Engineers Civil, Structural, Construction 473 Cricket Ridge Ct. Lawrenceville, Ga. 30044 770-979-6650 | DENISE CHAPMAN ALAN MUSHEGAN 5020 PINDOS TRAIL POWDER SPRINGS, GA 30127 |
|---|---|
| DATE: 02-25-2020 | DWG NO.: DC-AM-1   REV: |
| SCALE: | SHEET: | BY: MLD |

**Exhibit "C"**

**Dismissal Order**

ID: 2021-01104549-CV
EFILED IN OFFICE
CLERK OF SUPERIOR COURT
COBB COUNTY, GEORGIA

21104229
C. LaTain Kell Sr. - 49
DEC 20, 2021 04:13 PM

Connie Taylor, Clerk of Superior Court
Cobb County, Georgia

### IN THE SUPERIOR COURT OF COBB COUNTY
### STATE OF GEORGIA

| | |
|---|---|
| **ANITA DENISE CHAPMAN, and** | x |
| **H. ALAN MUSHEGAN, SR.,** | x |
| **Plaintiffs,** | x |
| | x |
| **v.** | x |
| | x |
| **JENNIFER LEA ORTON BLOMQUIST** | x |
| **Defendant.** | x |
| | x |

**Case No. 21-1-04229-49**

### ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

This Matter, having come before the Court on Defendant's Motion to Dismiss and the Court

having considered the pleadings and arguments submitted by Counsel hereby **GRANTS** Defendant's

Motion to Dismiss and **ORDERS** that the present case be **Dismissed with Prejudice** .

### PROCEDURAL BACKGROUND

The case (Case No. 21104229) was initiated on June 2nd, 2021 and a Motion to Dismiss

was filed shortly after. This action is closely associated with a matter previously filed by

Blomquist Builder Group, Inc., a corporation in the state of Georgia, against Denise

Chapman/Mushegan, in Cobb Superior Court (Civil Case No. 18101356) on or about February

23, 2018. *Blomquist Builders Group Inc. v. Mushegan Denise Chapman.* (Hereafter, the

Blomquist Builders Case). A counterclaim was filed by Chapman/Mushegan in the Blomquist

Builder's Case and ample opportunity to fully litigate the case was provided to all parties. After

discovery had been completed in the Blomquist Builder's case, Denise Chapman/Mushegan filed

a motion to add parties, specifically, Jennifer Blomquist, and re-open discovery on or about Sept

22, 2020. That Motion was subsequently denied for good cause on May 25, 2021. Thereafter,

Denise Chapman/Mushegan filed the instant case (Case No. 21104229) alleging similar conduct

against the Defendant that had been alleged in Plaintiff's initial counterclaim. Subsequent

motions were then filed by both parties. Blomquist Builder's Group was not included as party in this action.

## FACTUAL BACKGROUND

Blomquist Builder's Group (not a party to this instant action) entered into a contract for the sale and/or construction of a new home on or about April 27, 2016. Blomquist Builder's Group discovered a website created by and managed by Denise Chapman/Mushegan which contained allegedly defamatory, intentionally false, misleading and malicious statements and subsequently filed a lawsuit February 23, 2018. This is the "Blomquist Builders Case" Case No. 18101356. That case proceeded through discovery including discovery requests and depositions. Denise Chapman/Mushegan filed a motion to add parties and reopen discovery on or about September 22, 2020. That motion was denied on or about May 25, 2021. That litigation is still active and pending. Approximately one week after the Court denied the motion, on June 2, 2021, Denise Chapman/Mushegan filed the instant case (Case No. 21104229). The allegations involved identical allegations as the Motion to Add Parties in the Blomquist Builder's Case.

## FINDINGS OF THE COURT

Plaintiff's allegations are barred by the statute of limitations as they initiated their claim on June 2, 2021 more than five (5) years from the allegations referenced in the complaint - April 27, 2016. Under O.C.G.A. § 9-3-30, "All actions for trespass or damage upon realty shall be brought within four (4) years after the right of action accrues." O.C.G.A.§ 9-3-31 provides that "Actions for injuries to personality shall be brought within four (4) years since the action accrues." During the time of the Plaintiff's alleged wrong doing a global pandemic ensued which provided for a temporary excused delay in Court operations. This tolling from the Supreme Court of Georgia Judicial Emergency Order (of which Fourteen extensions have been issued)

imposed tolling between March 14, 2020 and July 14, 2020. Even if applying this tolling period, more than four (4) years have elapsed from the April 27, 2016, placing Plaintiff's allegations well outside the statute of limitations even including the tolling period provided by the Georgia Supreme Court due to the pandemic. The Court finds no factual or reason to provide additional tolling of the statute of limitations.

Second, the Court finds that Defendant is not privy to any contract with Plaintiffs. Georgia law requires that real estate contracts to be enforceable must be in writing under O.C.G.A. § 13-5-30. The contract upon which Plaintiffs' rely is between Blomquist Builders Group Inc. and Plaintiffs not between Plaintiffs' and the Defendant individually. In order to have a viable claim, there must be a breach of the contract at issue and resulting damages to a party who has the right to complain about the contract being violated. Canton Plaza v. Regions Bank, 315 Ga.App. 303(1), 732 S.E.2d 449 (2012). The question of standing to sue on a breach of contract action is a threshold inquiry. The requisite standing for a third party to enforce a contract must clearly appear from the contract. "It is axiomatic that each corporation is a separate entity, distinct and apart from its stockholders." *Accurate Printers, Inc. v. Stark*, 295 Ga.App. 172, 175(1)(a), 671 S.E.2d 228 (2008). As a general rule, an action on a contract, ... shall be [315 Ga.App. 308] brought in the name of the party in whom the legal interest in the contract is vested[.]"); See Canton Plaza v. Regions Bank, 315 Ga.App. 303(1), 732 S.E.2d 449 (2012) quoting, Accurate Printers, supra, 295 Ga.App. at 175(1)(a), 671 S.E.2d 228. Here, it is clear that the contract is between the buyers and Blomquist Builder's Inc., a separate and distinct entity from Jennifer Blomquist individually. It is of no consequence to the present contract that Blomquist is an owner of this or any other number of companies. Thus, any negligence or fraud

being alleged now is not only barred by the Stature of Limitations but also would be brought against the party allegedly committing such acts, Blomquist Builder's Group, Inc.

Third, the Court finds that Plaintiffs' already have a pending counterclaim against Blomquist Builders Group Inc., in which they sought to add Parties *[See Superior Court Case No. 18101356],* specifically Defendant Jennifer Blomquist. This Court on or about May 24, 2021 DENIED Chapman/Mushegan leave to Add Parties or Reopen Discovery. Approximately one week later on June 2, 2021, Plaintiffs Chapman/Mushegan filed this action ***which is nearly identical to the Amended Complaint they filed on or about September 22, 2020 in tandem with their Motion to Add New Parties.*** Thus, the Court has already ruled separately in a pending matter that it is not appropriate to Jennifer Blomquist as a party to this action at this time.

The Court further finds that Plaintiff has not complied with Georgia Code which requires certain actions be taken with regards to a negligent construction claim.

O.C.G.A. § 8-2-28 provides in relevant part,  (a) In every action subject to this part, the claimant shall, no later than 90 days before initiating an action against a contractor, provide service of written notice of claim on that contractor. The notice of claim shall state that the claimant asserts a construction defect claim or claims and is providing notice of the claim or claims pursuant to the requirements of this part. The notice of claim shall describe the claim or claims in detail sufficient to explain the nature of the alleged construction defects and the results of the defects. In addition, the claimant shall provide to the contractor any evidence that depicts the nature and cause of the construction defect, including expert reports, photographs, and videotapes, if that evidence would be discoverable under evidentiary rules. Here, the Court finds that No notice of claim was presented to Jennifer Blomquist individually prior to the initiation of this suit, nor in fact has such notice of claim ever been provided.

Even if such notice of claim were provided O.C.G.A. § 9-3-30 would still bar this action as it is more than four (4) years old.

The Court also finds that Plaintiffs are privy to a written contract between themselves and Blomquist Builders Group, Inc., which specifically provides for a one-year time period in which to raise issues and/or claims regarding alleged construction defects. Plaintiffs are bound by such contract which specifically bars Plaintiffs from bringing this action beyond that warranty period for new home construction defects Against Blomquist Builder's Group, Inc. and thus would apply to Jennifer Blomquist individually if she were party to the contract.

Based on the above findings, IT IS HEREBY **ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss be GRANTED, and this Matter be dismissed with prejudice. It is further **Ordered** that any pending Motions related to Discovery are now moot. It is further **Ordered** that Defendant is entitled to be reimbursed for Attorney fees for having to defend a redundant lawsuit initiated with the intent to harass and annoy Defendant.

Dec. 17, 2021.

Honorable Judge Kell
Judge Cobb County Superior Court

Prepared by:

/s/Travis M. Cain
Travis M. Cain
J. David Haskin
Attorneys for Defendant
1675 Lower Roswell Road
Marietta, Georgia 30068

IN THE SUPERIOR COURT OF COBB COUNTY
STATE OF GEORGIA

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I have this day served a copy of the within and foregoing order (Civil Action File No. 21-1-4229-49) upon all parties electronically, via Peach Court, or through the Cobb County Mail System, addressed to the following:

Brian W. Burkhalter, Esq.
David C. King, Esq.
April Freeman, Esq.
brian@burkhalterlawllc.com
david@burkhalterlawllc.com
april@burkhalterlawllc.com

Travis M. Cain, Esq.
J. David Haskin, Esq.
travismcain@gmail.com
david@haskinlawgroup.com

This _____ day of _____, 2021.

_____
Natalie C. Bloodworth
for Honorable C. LaTain Kell, Judge
Superior Court of Cobb County
Cobb Judicial Circuit

**IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION**

| | |
|---|---|
| IN RE: | **CHAPTER 11** |
| **NORMAN'S INVESTMENTS SERVICES, LLC,** | **CASE NO. 23-10010-pmb** |
| Debtor. | |

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on this day the foregoing *Notice of Hearing on Debtor's Motion to Dismiss* (the "<u>Notice</u>") and *Motion to Voluntarily Dismiss Chapter 7 Case or for Court to Abstain* (the "<u>Motion</u>") was electronically filed using the Bankruptcy Court's Electronic Case Filing program which sends a notice of and an accompanying link to the Notice and Motion to the following parties who have appeared in this case under the Bankruptcy Court's Electronic Case Filing program:

- **Evan M. Altman**    evan.altman@laslawgroup.com, soraya.hedjazi@laslawgroup.com
- **Michael J. Bargar**    mbargar@rlkglaw.com, GA67@ecfcbis.com;emiller@rlkglaw.com;mbargar@ecf.courtdrive.com;emillerrlkg@ecf.courtdrive.com
- **S. Gregory Hays**    ghays@haysconsulting.net, saskue@haysconsulting.net;GA32@ecfcbis.com
- **G. Frank Nason**    fnason@lcenlaw.com, NasonFR86494@notify.bestcase.com;rstuder@lcenlaw.com
- **Office of the United States Trustee**    ustpregion21.at.ecf@usdoj.gov

I further certify that on this day I caused a true and correct copy of the Notice and Motion to be served upon the parties listed on the attached mailing matrix via U.S. First Class Mail by placing a copy of same in a properly addressed envelope with adequate postage affixed thereon.

This 18th day of January, 2024.

**JONES & WALDEN LLC**
*/s/ Leslie M. Pineyro*
Leslie M. Pineyro
Georgia Bar No. 969800
Mark Gensburg
Georgia Bar No. 213119
*Proposed Attorneys for Debtor*
699 Piedmont Avenue, NE, Atlanta, GA, 30308
(404) 564-9300
lpineyro@joneswalden.com
mgensburg@joneswalden.com

Label Matrix for local noticing
113E-1
Case 23-59198-wlh
Northern District of Georgia
Atlanta
Thu Jan 18 12:33:43 EST 2024

Blake Blomquist
3478 Rabbit Run NW
Acworth, GA 30101-7603

Blomquist Builders Group Inc.
3478 Rabbit Run
Acworth, GA 30101-7603

Bryan Burkhalter
900 Circle 75 Parkway Suite 950
Atlanta, GA 30339-3053

Bryan Busch
3424 Peachtree Road Suite 1600
Atlanta, GA 30326-1139

Denise Chapman
5020 Pindos Trail
Powder Springs, GA 30127-4396

David King
4045 Orchard Road Building 400
Smyrna, GA 30080-4900

Denise Chapman Mushegan and H. Alan Mushegan
5020 Pindos Trail
Powder Springs, GA 30127-4396

Jeffrey Tucker
2950 Atlanta road SE
Smyrna, GA 30080-3655

Jennifer Blomquist
3478 Rabbit Run
Acworth, GA 30101-7603