UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| In re:<br><br>BLOMQUIST BUILDERS GROUP, INC.,<br><br>Debtor. | CASE NO. 23-59198-SMS<br><br>CHAPTER 7 |

**APPLICATION TO EMPLOY REAL ESTATE AGENT UNDER LISTING AGREEMENTS**

COMES NOW S. Gregory Hays, as Chapter 7 Trustee ("**Trustee**") for the bankruptcy estate (the "**Estate**" or "**Bankruptcy Estate**") of Blomquist Builders Group, Inc. (the "**Debtor**"), and moves this Court for an Order authorizing him to employ Chambers Select Realty, Wendy Chambers, and Bill Celler (collectively, "**Chambers Select**") as listing agent for the Estate (the "**Application**"), and respectfully shows this Court:

**Jurisdiction and Venue**

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409(a).

**Background Facts**

**a. *General Background Facts***

2. On September 21, 2023 (the "**Petition Date**"), Debtor filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division ("**Bankruptcy Court**"), initiating Case No. 23-59198-SMS (the "**Bankruptcy Case**" or "**Case**").

3. The United States Trustee appointed Trustee as the Chapter 7 Trustee in this Case, and he remains in that role.

4. Upon Debtor's filing its voluntary petition, a bankruptcy estate was created, constituting the Estate under 11 U.S.C. § 541(a), and the Estate includes all of Debtor's legal or equitable interests in property as of the commencement of the Case and any interest in property that the Estate acquires after commencement of the Case. 11 U.S.C. § 541(a)(1) and (7).

5. Trustee is the sole representative of the Estate. 11 U.S.C. § 323(a).

**b. *The Properties***

6. On the Petition Date, Debtor filed its schedules of assets and liabilities [Doc. No. 1] (the "**Schedules**") together with its Statement of Financial Affairs [Doc. No. 1] (the "**SOFA**"). On its original Schedule A/B, Debtor indicated that it had no ownership interest in any real property. On October 30, 2023, Debtor filed Amended Schedules [Doc. No. 11] indicating that Debtor is the owner of three parcels of improved real property, each located in Cobb County, Georgia, more particularly described as: (i) 111 Catesby Road, Powder Springs, Georgia 30127, also known as Lot 27, Somerset Oaks (Tax Parcel I.D. No. 20-0340-0-064-0); (ii) 5035 Pindos Trail, Powder Springs, Georgia 30127, also known as Lot 6, Estates at Cornerstone (Tax Parcel I.D. No. 20-0338-0-111-0); and (iii) 5749 Sunburst Drive, Powder Springs, Georgia 30127, also known as Lot 66, Somerset Oaks (Tax Parcel I.D. No. 20-0340-0-103-0) [Doc. No. 11 at p. 8 of 19] (collectively, the "**Properties**").

7. The Properties are titled in the name of Debtor in the real estate records of the Superior Court of Cobb County, State of Georgia (the "**Real Estate Records**").

**c. Alleged Liens, Interests and Encumbrances on or Against the Properties**

8. Debtor's insider, Blake Blomquist ("**Mr. Blomquist**"), has asserted that the Properties are subject to a purchase money resulting trust for his benefit. [Doc. No. 18 at ¶ 37]. No document evidencing any such interest is recorded in the Real Estate Records. On September 21, 2025, Trustee commenced Adversary Proceeding No. 25-5173-SMS against Mr. Blomquist and Blomquist Holdings, LLC, seeking, among other things, a determination of the Estate's interest in the Properties. [Adv. Doc. No. 1]. Mr. Blomquist's claims in and to the Properties have been resolved.

**d. *Estimated Value of the Properties***

9. Based on Trustee's independent investigation of value and a real estate broker's inspection, evaluation, and comparative marketing analysis of the value of each of the Properties, Trustee has determined that the value of each Property would support a listing price of $100,000.00. Based on the value of the Properties, there is sufficient value to benefit the Estate and for Trustee to make a meaningful distribution to creditors if he sells the Properties.

**Request for Authority to Employ Realtor**

10. Trustee requests authority from the Court to employ Chambers Select as his listing agent in the proposed sale of the Property located at 111 Catesby Road, Powder Springs, Georgia 30127, under a listing agreement (the "**Catesby Listing Agreement**") at a listing price of $100,000.00, which may be extended if necessary, with a six (6%) percent commission of the selling price. The Catesby Listing Agreement is attached hereto, marked as Exhibit "A" and incorporated herein by reference.

11. Trustee requests authority from the Court to employ Chambers Select as his listing agent in the proposed sale of the Property located at 5035 Pindos Trail, Powder Springs, Georgia

30127, under a listing agreement (the "**Pindos Listing Agreement**") at a listing price of $100,000.00, which may be extended if necessary, with a six (6%) percent commission of the selling price. The Pindos Listing Agreement is attached hereto, marked as Exhibit "B" and incorporated herein by reference.

12. Trustee requests authority from the Court to employ Chambers Select as his listing agent in the proposed sale of the Property located at 5749 Sunburst Drive, Powder Springs, Georgia 30127, under a listing agreement (the "**Sunburst Listing Agreement**") at a listing price of $100,000.00, which may be extended if necessary, with a six (6%) percent commission of the selling price. The Sunburst Listing Agreement is attached hereto, marked as Exhibit "C" and incorporated herein by reference. The Catesby Listing Agreement, the Pindos Listing Agreement, and the Sunburst Listing Agreement are sometimes referred to herein collectively as the "Listing Agreements".

13. Any contract for sale of any of the Properties will be subject to Bankruptcy Court approval following the filing of a motion pursuant to 11 U.S.C. § 363.

14. The verified statement of Bill Celler regarding the matters set out in this Application is attached hereto as Exhibit "D" and incorporated herein by reference.

15. Chambers Select does not represent any interest adverse to the Estate and is a disinterested person as that term is defined in 11 U.S.C. §101(14). Chambers Select has no current relationship with Debtor.

16. The employment of Chambers Select as the listing agent to sell the Properties pursuant to the terms of the Listing Agreements is in the best interest of the Estate.

WHEREFORE, Trustee respectfully requests that this Court grant him (a) authority to employ Chambers Select as his listing agent to sell the Properties pursuant to the Listing Agreements; and (b) such order and further relief as is just and proper.

Respectfully submitted this 9th day of September, 2026.

ROUNTREE LEITMAN KLEIN & GEER, LLC
*Attorneys for Trustee*

*/s/Michael J. Bargar*
Michael J. Bargar
Georgia Bar No. 645709
mbargar@rlkglaw.com

Century Plaza I
2987 Clairmont Road, Suite 350
Atlanta, Georgia 30329
(404) 584-1238 Telephone

**EXHIBIT "A" FOLLOWS**

# EXCLUSIVE SELLER BROKERAGE ENGAGEMENT AGREEMENT

GeorgiaREALTORS®

**2026 Printing**

**State law prohibits Broker from representing Seller as a client without first entering into a written agreement with Seller under O.C.G.A. § 10-6A-1 et. seq.**

**A. KEY TERMS AND CONDITIONS**

1. **Exclusive Seller Brokerage Engagement Agreement.** For and in consideration of the mutual promises contained herein and other good and valuable consideration, the undersigned seller(s) ("Seller") and the undersigned broker (hereinafter "Broker" or "Seller's Broker") do hereby enter into this Exclusive Seller Brokerage Engagement Agreement ("Agreement") for Broker to exclusively represent Seller in listing and selling the property described below ("Property") for sale on the terms and conditions set forth herein.
   a. **Property Identification:** Address: 111 Catesby Road
   City Powder Springs, County Cobb, Georgia, Zip Code 30127
   Tax Parcel I.D. Number: 20-0340-0-064-0
   b. **Legal Description:** The legal description of the Property is *[select one of the following below]*:
   ☒ (1) attached as an exhibit hereto;
   ☐ (2) the same as described in Deed Book ________, Page _____, et. seq., of the land records of the above county; **OR**
   ☐ (3) Land Lot(s) ________________ of the ______________ District, _________________________ Section/ GMD, Lot __________, Block ______________, Unit ____________, Phase/Section ______________________ of_____________________________________________Subdivision/Development, according to the plat recorded in Plat Book ____________, Page ___________, et. seq., of the land records of the above county; **OR**
   ☐ (4) described below if Property is a condominium unit and a full unit legal description is to be used **[NOT TO BE USED IF PROPERTY IS A FEE SIMPLE TOWNHOME]**:
   Unit _____ of ______________________________________________ Condominium ("Condominium"), located in Land Lot _____________ of the _________ District of _________________ County, Georgia, together with its percentage of undivided interest in the common elements of the Condominium, and its interest in the limited common elements assigned to the unit ("Unit"). The Condominium was created pursuant to the Declaration of Condominium for any Condominium ("Declaration"), recorded in Deed Book _______________, Page ___________________, et seq.,__________________________ County, Georgia records ("Declaration"), and shown and delineated on the plat of survey filed in Condominium Plat Book___________, Page__________, ________________________________ County, Georgia records, and on the floor plans filed in Condominium Floor Plan Book _________, Page _________, ______________________________ County, Georgia records.

2. **List Price and Listing Period.**
   a. The price at which the Property shall be listed for sale is $ 100000 ("List Price").
   b. **Commencement Date of Agreement:** ____________________________________. This Agreement shall commence and be effective upon it being signed by Seller and Broker and a signed copy delivered to both parties.
   c. **Ending Date of Agreement:** 2/28/2027. This shall be the last full date of the Agreement after which it shall terminate and no longer be in effect unless the parties agree in writing to extend it.
   d. **Listing Period.** The term of this Agreement shall also be known as the listing period or listing term.

3. **Marketing.**
   a. **Selection of Multiple Listing Service(s).** Broker agrees to file the listing with the following Multiple Listing Service(s) ("MLS(s)"): Gamls and FMLS
   b. **DELIVERY OF AGREEMENT TO AND LISTING WITH MLS.** THIS AGREEMENT SHALL BE TIMELY DELIVERED TO AND LISTED WITH THE ABOVE-REFERENCED MULTIPLE LISTING SERVICE(S) IN ACCORDANCE WITH THE RULES OF SUCH MULTIPLE LISTING SERVICE(S), WHICH MAY LIMIT THE AVAILABILITY AND TIME DURATION OF THE MARKETING OPTIONS BELOW. THIS OBLIGATION AND THESE LIMITATIONS SHALL CONTROL OVER ANY CONFLICTING OR INCONSISTENT LANGUAGE CONTAINED HEREIN.
   c. **Marketing Commencement Date:** 9/1/2026 This shall be the date when the Property is first marketed to the public. Seller shall have the right, upon notice to Broker, to move this date up or back by not more than 20 days.

**THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH** Wendy Gravlin Chambers **IS INVOLVED AS A REAL ESTATE LICENSEE. UNAUTHORIZED USE OF THE FORM MAY RESULT IN LEGAL SANCTIONS BEING BROUGHT AGAINST THE USER AND SHOULD BE REPORTED TO THE GEORGIA ASSOCIATION OF REALTORS® AT (770) 451-1831.**
**Copyright© 2026 by Georgia Association of REALTORS®, Inc.**

i. **Coming Soon.** If offered by the MLS, Seller ☐ directs or ☒ does not direct Broker to file the Property listing in the MLS(s) listed above in "Coming Soon" status for _____ days prior to the Marketing Commencement Date, during which time the Property will be visible to MLS participants as Coming Soon, but the Property may not be shown to the public or purchased during this period. At the end of this period, the Property will be changed to "Active" status and marketed to the public as set forth in Section A.3.(c) above. The maximum Coming Soon status period is set by the MLS. If the Coming Soon status period herein exceeds the maximum days permitted by the MLS, then the MLS maximum shall control.

d. **MLS Marketing Options:** Within one (1) business day of the Marketing Commencement Date, the listing must be filed with the MLS(s) listed above. Seller directs Broker to market the Property for sale using the Multiple Listing Service option selected below: *[Select the option below which applies. The options not selected shall not become part of this Agreement.]*

☒ **(1) Immediate Public Marketing Option**. The listing will be immediately visible to MLS participants and may be electronically distributed through Internet Data Exchange ("IDX") so that MLS participants can display it on their websites. The Property may also be distributed through syndication to make it available to be viewed on various third-party websites such as REALTOR.COM, Zillow, or Homes.com. Such listings are considered to be active listings and the Property may be shown to potential buyers.

☐ **(2) Delayed Marketing Exempt Option**. The listing will be immediately visible to MLS participants and may appear on the websites of Broker and Broker's licensees. However, marketing of the Property by other brokers through the IDX and syndication to third-party websites will be delayed for a period of _______ days. During the Delayed Marketing Exempt Period, the listing will not appear on other brokers' websites or on websites like REALTOR.COM, Zillow and Homes.com. Such listings are considered active listings and the Property may be shown to potential buyers.

☐ **(3) Office Exclusive Marketing Option**. The Property will initially be marketed through an office exclusive period of _______ days during which time the Property listing will only be available to licensees affiliated with Broker. During the Office Exclusive Marketing period, the Property listing will be submitted to the MLS(s) listed above; however, the listing will neither be marketed publicly nor disseminated through the MLS and will not be visible to other MLS participants. Such listings are considered to be active listings and the Property may be shown to potential buyers.

e. **Disclaimer:** BY SIGNING THIS AGREEMENT, SELLER UNDERSTANDS AND ACKNOWLEDGES THAT IF SELLER IS DELAYING THE PUBLIC MARKETING OF THE PROPERTY, BY SELECTING AN OFFICE EXCLUSIVE MARKETING OPTION OR THE DELAYED MARKETING EXEMPT OPTION, SELLER MAY NOT MAXIMIZE EITHER THE NUMBER OF OFFERS SELLER RECEIVES OR THE PRICE OFFERED TO BUY THE PROPERTY. SELLER NEVERTHELESS KNOWINGLY WAIVES THE POTENTIAL BENEFITS OF IMMEDIATE PUBLIC MARKETING.

4. **Compensation to Broker(s) for Professional Services ("Compensation").**

a. **Generally:** Compensation to Broker(s) is negotiable and is not set by law.

b. **Compensation to Seller's Broker:** Seller agrees to pay Seller's Broker the following Compensation at the closing of any Contract to Sell (as that term is hereinafter defined) of the Property as follows:

☒ Six percent ( 6 %) of the purchase price;

☐ $______________________;

☐ (other) ______________________.

c. **Whether Compensation is Offered to Buyer's Broker:** Seller hereby approves the following: *[Select all which are applicable]*

☐ (1) not initially offering Compensation to Buyer's Broker but marketing that Seller is open to receiving offers in which Seller pays Compensation to Buyer's Broker;

☒ (2) Compensation being offered to Buyer's Broker by either; ☐ Seller (in addition to the Compensation being paid to Seller's Broker); ☒ Seller's Broker (out of the Compensation being paid to Seller's Broker); or ☐ Seller and Seller's Broker as set forth in "other" section below:

☒ Three percent ( 3 %) of the purchase price;

☐ $______________________;

☐ (other) ______________________

☐ If Seller's offer of Compensation to the Buyer's Broker is conditional, specify the conditions here: ______________________;

**OR**

☐ (3) No Compensation being offered or marketed to Buyer's Brokers.

For all purposes herein, the term "Buyer's Broker" shall mean the Broker, including the Broker representing the Seller, if they are also working with or representing the buyer as a customer or client. If buyer or Buyer's Broker does not request or accept the full amount of Compensation being offered by Seller's Broker, the remainder shall be additional compensation to Seller's Broker.

d. **Separate Compensation on Lease.** If Seller leases the Property or enters into a lease/purchase agreement or a lease with an option to purchase agreement during this Agreement, Seller shall also pay Broker a separate leasing Compensation in the amount of $ 0 and as follows: NA

Notwithstanding any provision to the contrary contained herein, the payment of a leasing Compensation (including in lease/purchase transactions or lease with an option to purchase transactions) shall not relieve Seller from paying the Compensation at the closing of a Contract to Sell, as provided elsewhere in this Agreement.

5. **Protected Period**. The length of Protected Period during which time Broker shall be entitled to Compensation under certain circumstances where this Agreement has been unilaterally terminated by Seller or has expired, shall be 30 days.

6. **Agency and Brokerage**.
   a. The following are types of agency relationship(s) **NOT** offered by Broker:
   ☐ seller agency ☐ buyer agency ☐ designated agency ☒ dual agency ☒ sub-agency ☒ tenant agency ☒ landlord agency
   b. If Broker offers dual agency as one of its agency relationships above, Seller ☐ does or ☒ does not consent to Broker acting in a dual agency capacity, as that agency relationship is explained in Section B.6(b) below and in the CB01 ABCs of Agency. Seller expressly consents to Broker acting in any other agency relationship offered by Broker.

7. **Lead-Based Paint Disclosure**. Federal law requires disclosure of lead-based paint in homes/residential properties, or a portion thereof, constructed prior to 1978. *[select one below]*
   a. ☐ A dwelling on the Property, or portion thereof, was constructed prior to 1978, Seller agrees to complete and provide Broker with a signed Lead-Based Paint Disclosure Exhibit (F316) at the same time as the signing of this Agreement and is attached as Exhibit "___".
   **OR**
   b. ☒ No dwelling on the Property, or portion thereof, was constructed prior to 1978.

8. **Seller Has the Following Special Circumstances That Will Require Third-Party Approval Before Seller Can Do the Following:**
   a. **List the Property for Sale:**
   ☒ (1) **Bankruptcy:** Seller has filed for bankruptcy protection and this Agreement is made contingent upon the bankruptcy court authorizing the listing of the Property for sale.
   ☐ (2) **Divorce:** Seller has filed for divorce and this Agreement is made contingent upon the court having jurisdiction over the divorce action authorizing the listing of the Property for sale.
   ☒ (3) **Other (Please describe):** ** See below*
   b. **Contract to Sell the Property:**
   ☒ (1) **Bankruptcy:** Seller has filed for bankruptcy protection. Any purchase and sale agreement for the sale of the Property will need to be conditioned upon the approval of the bankruptcy court.
   ☐ (2) **Divorce:** Seller has filed for divorce. Any purchase and sale agreement for the sale of the Property will need to be conditioned upon the approval of the court having jurisdiction over the divorce.
   ☐ (3) **Short Sale:** The sale of the Property will not generate sufficient proceeds to pay off the Broker's Compensation and all mortgages or liens on the Property. Therefore, the purchase and sale agreement for the sale of the Property will need to be made contingent upon the mortgage lender(s) and other lien holders agreeing to take less than the face amount of what they are owed.
   ☐ (4) **Seller Not on Title:** Seller does not yet have title to the Property and the purchase and sale agreement for the Property ☐ will or ☐ will not need to be subject to Seller acquiring title to the Property.
   ☒ (5) **Other (Please describe):** *Upon Bankruptcy Court approval of the sale, Seller will execute a Trustee's Deed conveying title to the Purchaser(s).*

9. **Negotiation**. Seller ☒ does **OR** ☐ does not authorize the Broker to assist, to the extent requested by Seller, in negotiating the terms of and filling out a pre-printed form contracts for Seller's review and approval.

## B. FURTHER EXPLANATIONS TO CORRESPONDING PARAGRAPHS IN SECTION A.

1. **Exclusive Seller Brokerage Engagement Agreement**. Seller has the full authority to enter into this Agreement for the listing of Seller's Property for sale. This Agreement may not be amended except by the written agreement of Seller and Broker. The failure of the parties to adhere strictly to the terms and conditions of this Agreement shall not constitute a waiver of the right of the parties later to insist on such strict adherence. Seller is not a party to any other exclusive Seller brokerage engagement agreement and all such previous agreements, if any, have expired and not been renewed. Seller acknowledges that Seller may have to pay a previous broker Compensation if Seller is subject to a current Seller brokerage engagement agreement or has unilaterally terminated a previous Seller brokerage engagement agreement without the consent of the previous broker.

2. **List Price and Listing Period**.
   a. **List Price:** Seller agrees to list the Property for sale at the list price specified in this Agreement. The failure of the Property to be shown or sell at the list price may be an indication that the list price for the Property is too high.
   b. **Initial Listing Period When Property Is Under Contract to Sell:** If the Property is under a Contract to Sell, as that term is defined below, during the Listing Period, but the Listing Period expires prior to the closing, then the Listing Period shall be automatically extended through the closing of the Contract to Sell.
   c. **Extension:** If during the term of this Agreement, Seller and a prospective buyer enter into: 1) a real property purchase and sale agreement for the Property; 2) a contract to exchange property, including the Property; 3) an option contract for the sale of the Property; or 4) a contract to sell the shares or partnership or membership interests in the legal entity constituting Seller (hereinafter, collectively referred to in this Agreement as a "Contract to Sell") which is not consummated or closed for any reason whatsoever, then the Listing Period may be extended unilaterally by Broker for the number of days that Property was under the Contract to Sell (hereinafter, "Extension Period") by Broker providing written notice of the same to Seller within five (5) days of the Contract to Sell not being consummated but in no event later than prior to the expiration of this Agreement (hereinafter, "Notification Period"). If such written notice is not given before the end of the Notification Period, then the Extension Period for that transaction shall be deemed to have been waived by Broker.

** Seller is a federal bankruptcy trustee and has never seen or had any knowledge of the property. Seller makes no warranties or representations. Property is being sold as is, where is, with all faults and subject to bankruptcy court approval.*

**Copyright© 2026 by Georgia Association of REALTORS®, Inc.** 

3. **Marketing.**
   a. **Generally:** Broker is exclusively authorized to market and advertise the Property for sale to the public through any means of Broker's choosing. This may include, without limitation, flyers, brochures, videos, yard and window signs, including "For Sale" signs, open houses and mailings. Marketing information about the Property may be posted on websites, placed in electronic and print media and multiple listing services and sent by email, text and all other means. Seller agrees not to market the Property during the term of this Agreement.
   b. **Ownership of Marketing Materials:** Any photography and marketing materials paid for or created by Broker shall be the property of Broker. Such materials shall not be used without the prior written permission of Broker. Any photography and marketing materials paid for by Seller shall be the property of Seller.
   c. **Liability for Misinformation:** Seller warrants that any information Seller provides to Broker, which Broker then uses to market and advertise the Property, shall be accurate and complete. Seller hereby agrees to indemnify and hold Broker harmless from any and all claims, causes of action, suits and damages arising out of or resulting from Seller providing misinformation to Broker.
   d. **Images:** Seller agrees to remove any personal property prior to listing the Property of which Seller does not want images to be so captured. Broker shall not be liable to Seller if other brokers or buyers take photographs, videos or use other technology to capture and manipulate images of the Property without the permission of the Seller and Broker.
   e. **Multiple Listing Service(s):** Broker agrees to file this Agreement with the above referenced Multiple Listing Service(s) within one (1) business day of the Marketing Commencement Date, which shall be the date the Property is made available to the public. Seller acknowledges that the MLS(s) is/are not a party to this Agreement and is/are not responsible for errors or omissions on the part of Seller or Broker. Seller agrees to indemnify Service(s) from and against any and all claims, liabilities, damages or losses arising out of or related to the listing and sale of Property. Seller acknowledges that by virtue of listing the Property in MLS(s), all MLS(s) members and their affiliated licensees, will have access to Seller's listing information for the purpose of assisting Seller in the sale of the Property.
   f. **Consent of Seller to be Called:** If Seller is on a "Do Not Call List," Seller expressly consents to Broker calling Seller for any purpose related to the sale of the Property. This paragraph shall survive the termination of this Agreement.
   g. **Lockboxes:** A lockbox may be used in connection with the marketing of Property. There have been isolated instances of reported burglaries of homes on which lockboxes have been placed and for which the lockbox has been alleged to have been used to access the home. In order to minimize the risk of misuse of the lockbox, Broker recommends against the use of lockboxes on door handles that can be unscrewed from the outside or on other parts of the home from which the lockbox can be easily removed. Since prospective buyers and others will have access to Property, Seller agrees to either remove all valuables, prescription drugs and/or keys, or put them in a secure place.

4. **Compensation for Professional Services of Seller's Broker ("Compensation").**
   a. **Obligation to Pay Compensation to Seller's Broker**: In the event that Seller enters into a Contract to Sell or lease, lease/purchase, or lease with an option to purchase the Property or any portion thereof during the term of this Agreement with any buyer, Seller agrees to pay Seller's Broker's Compensation at the closing (regardless of whether the closing is during or after the term of this Agreement), and if applicable, Seller's Broker's Leasing Compensation prior to the commencement of a lease, lease/purchase, or lease with an option to purchase.
   b. **Optional Compensation to Buyer's Broker:** Seller shall have no obligation to pay the Compensation of the Buyer's Broker. However, some Sellers approve such Compensation being offered and paid for by either the Seller or the Seller's Broker. If Seller has agreed to offer Compensation to the Buyer's Broker on any Contract to Sell, it shall be paid in full at the closing. If Seller does not approve offering Compensation to the Buyer's Broker, then the buyer shall be solely responsible for paying the Buyer's Broker's Compensation.
   c. **Separate Compensation on Lease:** Notwithstanding the above, if Seller leases real property or enters into a lease/purchase or lease with an option to purchase contract during this Agreement, Seller shall also pay Broker a separate leasing Compensation in the amount as indicated elsewhere in this Agreement. Notwithstanding any provision to the contrary contained herein, the payment of leasing Compensation (including in lease purchase and lease with an option to purchase transactions) shall not relieve Seller from paying the Compensation at the closing of a Contract to Sell, as provided elsewhere in this Agreement.

5. **Protected Period.** The Protected Period shall be the period of time set forth in this Agreement commencing upon the expiration or the unilateral termination of this Agreement by Seller during which Broker shall be protected for its Compensation (or leasing Compensation, as applicable). If this Agreement is unilaterally terminated by Seller without the consent of the Broker, the Protected Period shall be: a) the number of days remaining on what would have been the original listing period had it not been terminated, plus b) the number of days set forth as the Protected Period in Section A.5 of this Agreement. There shall be no Protected Period if Broker and Seller mutually agree to terminate this Agreement. In the event that during the Protected Period, Seller enters into a Contract to Sell or lease, lease/purchase, or lease with an option to purchase of all or any portion of the Property which during the term of this Agreement was shown to any buyer (either in person or virtually), or such buyer was provided information about the Property, either directly or through a broker working with the buyer, then Seller shall pay Broker at closing (or the commencement of the lease, lease/purchase, or lease with an option to purchase, as applicable), the Compensation or leasing Compensation set forth above. For all purposes herein, showing property to buyers virtually shall include showing the buyers the property by video or sending a video tour of the property to the buyers.

   Notwithstanding the above, if this Agreement expires (and is not unilaterally terminated by Seller) the following exception to the above Compensation obligations shall apply. Specifically, no Compensation or leasing Compensation, as applicable, shall be owing to Broker if Seller signs an exclusive seller brokerage engagement agreement with another broker and the Property is then sold or leased during the term of the Agreement with that broker.

6. **Agency and Brokerage.**
   a. **Broker's Policy on Agency:** Unless Broker has indicated elsewhere herein that Broker is not offering a specific agency relationship, the types of agency relationships offered by Broker are: seller agency, buyer agency, designated agency, dual agency, sub-agency, landlord agency, and tenant agency.

Copyright© 2026 by Georgia Association of REALTORS®, Inc. 

**b. Dual Agency Disclosure:** *[Applicable only if Broker's agency policy is to practice dual agency and Seller has consented to Broker acting in a dual agency capacity.]* If Seller and a prospective buyer are both being represented by the same Broker and the Broker is not acting in a designated agency capacity, Seller is aware that Broker is acting as a dual agent in this transaction and hereby consents to the same. Seller has been advised that:

(1) In serving as a dual agent, Broker is representing two parties, Seller and the buyer, as clients whose interests are or at times could be different or even adverse;

(2) Broker will disclose all adverse, material facts relevant to the transaction and actually known to the dual agent to all parties in the transaction except for information made confidential by request or instructions from either party which is not otherwise required to be disclosed by law;

(3) Seller does not have to consent to dual agency. The consent of the Seller to dual agency has been given voluntarily in Section A and the Seller has read and understands this Agreement.

(4) Notwithstanding any provision to the contrary contained herein, Seller hereby directs Broker, while acting as a dual agent, to keep confidential and not reveal to the other party any information which could materially and adversely affect their negotiating position except as required by law.

(5) Broker or Broker's affiliated licensees will timely disclose to each party the nature of any material relationship with other party other than that incidental to the transaction. A material relationship shall mean any actually known personal, familial, or business relationship between Broker and a party which would impair the ability of Broker to exercise fair and independent judgment relative to another client. The other party whom Broker may represent in the event of dual agency may not be identified at the time Seller enters into this Agreement. If any party is identified after the Agreement and has a material relationship with Broker, then Broker shall timely provide to Seller a disclosure of the nature of such relationship.

(6) Upon signing this brokerage engagement with the dual agency disclosures contained herein, Seller's consent to dual agency is conclusively deemed to have been given and informed in accordance with state law, provided that Seller has consented to Broker acting in a dual agency capacity in Section A(6) above.

**c. Designated Agency Disclosure:** *[Applicable only if Broker's agency policy is to practice designated agency.]* Seller does hereby consent to Broker acting in a designated agency capacity in transactions in which Broker is representing Seller and a prospective buyer, but where Broker assigns one or more of its affiliated licensees exclusively to represent the Seller and one or more of its other affiliated licensees exclusively to represent the prospective buyer.

**d. No Other Adverse Agency Relationships:** Unless specified herein, Broker has no other known agency relationships with other parties which would conflict with any interests of Seller (except that Broker may represent other buyers, sellers, landlords, and tenants in buying, selling or leasing property).

**7. Lead-Based Paint Disclosure.** As required by federal law (Residential Lead-Based Paint Hazard Reduction Act of 1992, Title X), if any portion of a residential dwelling was built prior to 1978, the Lead-Based Paint Disclosure Exhibit (F316) is hereby attached as an exhibit to this Agreement. The term "residential dwelling" includes any painted fixture or material used therein that was built or manufactured prior to 1978. Seller understands that Seller must (1) disclose to the buyer the presence of known lead-based paint and/or lead-based paint hazards; (2) provide the buyer with all available records and reports pertaining to lead-based paint and lead-based paint hazards in the residential housing; (3) provide the buyer with a lead-based paint hazard information pamphlet, in a form approved by the Environmental Protection Agency; and (4) permit the buyer to have a 10 day period to conduct a risk assessment or inspection for the presence of lead-based paint hazards.

**8. Special Circumstances.**

**a.** The sale of Property is contingent upon a third party's approval as indicated above. It shall be Seller's responsibility to seek to fulfill any contingency or condition selected herein, if any, and ensure that the purchase and sale agreement is made subject to any such contingency or condition.

**b.** Broker agrees to keep confidential all information which Seller asks to be kept confidential by express request or instruction unless Seller permits such disclosure by subsequent word or conduct or such disclosure is required by law. Seller acknowledges, however, that buyer and buyer's broker may possibly not treat any offer made by Seller (including its existence, terms and conditions) as confidential unless those parties have entered into a Confidentiality Agreement with Seller.

**c.** Broker may not knowingly give customers false information.

**d.** In the event of a conflict between Broker's duty not to give customers false information and the duty to keep the confidences of Seller, the duty not to give customers false information shall prevail.

**9. Negotiation.** While Broker may assist Seller in negotiating the terms of a Contract to Sell, if Seller has elected to have Broker assist in this role, all decisions regarding price, terms and other conditions in a Contract to Sell shall still be made by Seller.

**C. OTHER TERMS AND CONDITIONS**

~~**1. Seller's Property Disclosure Statement.** Georgia law (O.C.G.A. §51-6-2) requires that a Seller disclose known latent defects in the Property which could not be observed by Buyer upon a reasonable inspection of the Property. This is the case even if the Property is sold in "as-is" condition. Within three (3) days of the date of this Agreement, Seller agrees to provide Broker with a current, fully executed Seller's Property Disclosure Statement (F301, F304 or F307) or Disclosure of Latent Defects & Fixtures Checklist (F302). Broker is hereby authorized to distribute the Seller's Property Disclosure Statement to buyers interested in Property. Seller agrees to promptly update any of the above-referenced disclosure documents through the Closing should any changes occur.~~ *See below*

**** NOT APPLICABLE. NO DISCLOSURE STATEMENT WILL BE PROVIDED BY SELLER.***

Copyright© 2026 by Georgia Association of REALTORS®, Inc. 

2. **HAZARDOUS CONDITIONS ON PROPERTY**. SELLER ACKNOWLEDGES THAT BROKER HAS NO DUTY TO INSPECT THE PROPERTY FOR DEFECTS, HAZARDOUS CONDITIONS, REPAIRS OR ANY OTHER MATTER. SELLER OWES A DUTY OF REASONABLE CARE TO KEEP THE PROPERTY SAFE FOR PROSPECTIVE BUYERS AND THEIR AGENTS, INVITEES AND CONTRACTORS WHO VIEW AND/OR INSPECT THE PROPERTY. THIS DUTY INCLUDES A DUTY TO WARN ALL SUCH PERSONS OF DANGEROUS CONDITIONS THAT WOULD NOT BE OBVIOUS TO SUCH PERSONS. TO MINIMIZE SELLER'S POTENTIAL LIABILITY, SELLER IS ENCOURAGED TO CORRECT ALL HAZARDOUS CONDITIONS ON THE PROPERTY. SELLER AGREES TO INDEMNIFY AND HOLD BROKER HARMLESS FROM AND AGAINST ANY AND ALL CLAIMS, CAUSES OF ACTION, SUITS AND DAMAGES ARISING OUT OF OR RELATING TO A PERSON OR PERSONS BEING INJURED OR HARMED WHILE ON THE PROPERTY.

3. **Limits on Broker's Authority and Responsibility**. Seller acknowledges and agrees that Broker:
   - **a.** may show other properties to prospective buyers who are interested in Property;
   - **b.** shall have no duty to inspect the Property or advise buyer or Seller on any matter relating to the Property which could have been revealed through a survey, appraisal, title search, Official Georgia Wood Infestation Report, utility bill review, septic system inspection, well water test, tests for radon, asbestos, mold, and lead-based paint; inspection of the Property by a licensed home inspector, construction expert, structural engineer, or environmental engineer; review of this Agreement and transaction by an attorney, financial planner, mortgage consultant, or tax consultant; and consulting appropriate governmental officials to determine, among other things and without limitation, the zoning of the Property, the propensity of the Property to flood, flood zone certifications, whether any condemnation action is pending or has been filed or other nearby governmental improvements are planned. Seller acknowledges that Broker does not perform or have expertise in any of the above tests, inspections, and reviews or in any of the matters handled by the professionals referenced above. Seller should seek independent expert advice regarding any matter of concern to Seller relative to the Property and this Agreement. Seller acknowledges that Broker shall not be responsible to monitor or supervise or inspect any portion of any construction or repairs to Property and that such tasks fall outside the scope of real estate brokerages services;
   - **c.** shall owe no duties to Seller nor have any authority on behalf of Seller other than what is set forth in this Agreement;
   - **d.** shall make all disclosures required by law;
   - **e.** shall not be responsible for ensuring that Seller complies with the duties and deadlines contained in any Contract to Sell entered into by Seller and that Seller shall be solely responsible for the same; and
   - **f. SHALL BE INDEMNIFIED AND HELD HARMLESS BY SELLER DURING AND AFTER THE TERMINATION OF THIS AGREEMENT FROM ANY AND ALL CLAIMS, CAUSES OF ACTION, OR DAMAGES ARISING OUT OF OR RELATING TO:**
     - (1) **INACCURATE AND/OR INCOMPLETE INFORMATION PROVIDED BY SELLER TO BROKER;**
     - (2) **EARNEST MONEY HANDLED BY ANYONE OTHER THAN BROKER;**
     - (3) **SELLER'S NEGLIGENCE OR INTENTIONAL WRONGDOING;**
     - (4) **ANY LOSS OR THEFT OF VALUABLES, PRESCRIPTION DRUGS, KEYS, OR OTHER PERSONAL PROPERTY, RELATING TO THE USE OF A LOCKBOX OR AN OPEN HOUSE RESULTING FROM SELLER'S FAILURE TO REMOVE OR SECURE THE SAME;**
     - (5) **THE EXISTENCE OF UNDISCLOSED MATERIAL FACTS ABOUT THE PROPERTY OR THE TRANSACTION; AND**
     - (6) **ANY DAMAGES OR INJURIES OCCURRING ON THE PROPERTY AS A RESULT OF DANGEROUS OR DEFECTIVE CONDITIONS ON THE PROPERTY OR THE FAILURE TO SECURE OR RESTRAIN PETS.**
   - **g.** shall have no authority to bind Seller to any Contract to Sell or give notices on behalf of Seller other than to forward, if requested by Seller, a notice signed by Seller pertaining to a real estate transaction. Under the standard GAR Purchase and Sale Agreement Forms, notice received by the Broker is deemed to be notice received by the Seller.

4. **LIMIT ON BROKER'S LIABILITY. SELLER ACKNOWLEDGES THAT BROKER:**
   - **a. SHALL, UNDER NO CIRCUMSTANCES, HAVE ANY LIABILITY GREATER THAN THE AMOUNT OF COMPENSATION PAID HEREUNDER TO BROKER (EXCLUDING ANY COMPENSATION AMOUNT PAID TO A COOPERATING REAL ESTATE BROKER, IF ANY) OR, IF NO COMPENSATION IS PAID TO BROKER, THAN THE SUM OF $100;**
   - **b. BROKER SHALL HAVE NO LIABILITY FOR PROVIDING INFORMATION THAT LATER TURNS OUT TO BE INCORRECT OR FALSE; PROVIDED THAT, BROKER DID NOT HAVE ACTUAL KNOWLEDGE THAT THE INFORMATION WAS FALSE AND DISCLOSES TO SELLER THE SOURCE OF THE INFORMATION; AND**
   - **c. NOTWITHSTANDING THE ABOVE, SHALL HAVE NO LIABILITY IN EXCESS OF $100 FOR ANY LOSS OF FUNDS AS THE RESULT OF WIRE OR CYBER FRAUD.**
   - **d. THIS LIMITATION OF LIABILITY SHALL SURVIVE THE TERMINATION OF THIS AGREEMENT.**

5. **Disclosure of Potentially Fraudulent Activities as required by the Georgia Residential Mortgage Fraud Act (O.C.G.A. § 16-8-100 et seq.)**
   - **a.** To help prevent fraud in real estate transactions, Seller does hereby give Broker permission to report any suspicious, unusual and/or potentially illegal or fraudulent activity (including but not limited to mortgage fraud) to:
     - (1) Governmental officials, agencies and/or authorities and/or
     - (2) Any mortgage lender, mortgage insurer, mortgage investor and/or title insurance company which could potentially be harmed if the activity was in fact fraudulent or illegal.
   - **b.** Seller acknowledges that Broker does not have special expertise with respect to detecting fraud in real estate transactions. Therefore, Seller acknowledges that:
     - (1) Activities which are fraudulent or illegal may be undetected by Broker; and
     - (2) Activities which are lawful and/or routine may be reported by Broker as being suspicious, unusual or potentially illegal or fraudulent.

Copyright© 2026 by Georgia Association of REALTORS®, Inc.

6. Miscellaneous.

a. ~~Arbitration: All claims arising out of or relating to this Agreement and the alleged acts or omissions of any or all the parties hereunder shall be resolved by arbitration in accordance with the Federal Arbitration Act 9 U.S.C. § 1 et. seq. and the rules and procedures of the arbitration company selected to administer the arbitration. Upon making or receiving a demand for arbitration, the parties shall work together in good faith to select a mutually acceptable arbitration company with offices in Georgia to administer and conduct the arbitration. If the parties cannot mutually agree on an arbitration company, the company shall be selected as follows. Each party shall simultaneously exchange with the other party a list of three arbitration companies with offices in Georgia acceptable to that party to administer and conduct the arbitration. If there is only one (1) arbitration company that is common to both lists, that company shall administer and conduct the arbitration. If there is more than one arbitration company that is common to both lists, the parties shall either mutually agree on which arbitration company shall be selected or flip a coin to select the arbitration company. If there is not initially a common arbitration company on the lists, the parties shall repeat the process by expanding their lists by two each time until there is a common name on the lists selected by the parties. The decision of the arbitrator shall be final and the arbitrator shall have authority to award attorneys' fees and allocate the costs of arbitration as part of any final award. All claims shall be brought by a party in his or her individual capacity and not as a plaintiff or class member in any purported class or representative proceeding. The arbitrator may not consolidate more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding. Notwithstanding anything to the contrary contained herein, this agreement to arbitrate shall not apply to: (1) any claim regarding the handling and disbursement of earnest money; and (2) any claim of Broker regarding the entitlement to or the non-payment of Compensation hereunder.~~ *** PARAGRAPH CONTINUES AT THE BOTTOM OF THE PAGE**

b. **Assignability:** As part of a sale of all or substantially all of the assets of Broker to another brokerage firm, Seller consents to this Agreement being assigned by Broker to the other brokerage firm. In such event, the assignee, upon consenting to the assignment, shall: (1) thereafter be responsible for performing all of the duties and responsibilities of the assignor under this Agreement; and (2) have all of the rights of assignor including the right to receive the Compensation referenced in this Agreement.

c. **Attorney's Fees:** In the event this Agreement, or any provision therein, is enforced through or is the subject of a dispute resulting in litigation or arbitration, the prevailing party shall be entitled to recover its actual attorney's fees, reasonably incurred.

d. **Broker:** In this Agreement, the term "Broker" shall mean the licensed Georgia real estate broker(s) or brokerage firm(s) and their affiliated licensees in this transaction except as may be specifically provided otherwise herein.

e. **Definition of Seller and Buyer:** For the purposes of this section, the term "Seller" shall include Seller, all members of the Seller's immediate family, any legal entity in which Seller or any member of Seller's immediate family owns or controls, directly or indirectly, more than ten percent (10%) of the shares or interests therein, and any third party who is acting under the direction or control of any of the above parties. For the purposes of this Agreement, the term "buyer" shall include buyer, all members of the buyer's immediate family, any legal entity in which buyer or any member of buyer's immediate family owns or controls, directly or indirectly, more than ten percent (10%) of the shares or interests therein, and any third party who is acting under the direction or control of any of the above parties.

f. **Disclaimer Regarding the Sale of Certain Property:** Seller acknowledges that O.C.G.A. § 2-1-7 prohibits certain nonresident aliens, foreign persons, foreign companies and U.S. companies owned by any of the above from buying or possessing agricultural land and certain land within a ten (10) mile radius of any military base, military installation, or military airport. Seller agrees to carefully read the entirety of the above referenced Code section before contracting to sell such land. Seller should consult with legal counsel to fully understand the law. If Seller has not submitted written questions to Broker regarding the law to Broker prior to contracting to sell prohibited property, Seller acknowledges that Seller fully understands the limitations and requirements of the law, and Broker shall have no responsibility for further doing the same. In such event, Seller shall indemnify and hold Broker harmless from any and all claims, causes of action, suits and damages arising out of or relating to Seller's failure to comply with the law. Violating the law can subject Seller to civil and criminal penalties. The law also requires certain Sellers and others to divest themselves of such property within certain time periods if they are now no longer legally able to purchase such property.

g. **Entire Agreement:** This Agreement represents the entire agreement of the parties with respect to listing of the Property for sale and is intended to supersede all prior written and verbal agreements of the parties hereto. No representation, statement, promise, or inducement not contained herein shall be binding on either party hereto. This Agreement shall be binding on the heirs of the Seller.

h. **Fair Housing Disclosure:** Seller acknowledges that Broker is committed to providing equal housing opportunities to all persons and that Seller and Broker are obligated to comply with state and federal fair housing laws in selling the Property. Seller and Broker agree not to discriminate in the sale of the Property on the basis of race, color, religion, national origin, sex, familial status, disability, sexual orientation or gender identity.

i. **FIRPTA:** Under the Foreign Investment in Real Property Tax Act ("FIRPTA"), Sellers who are not a "foreign person" as that term is defined in Section 1445(f)(3) of the Internal Revenue Code, shall deliver to the Closing Attorney at Closing a FIRPTA Affidavit. If Seller is a "foreign person" additional taxes may need to be withheld at Closing.

j. **GAR Forms:** The Georgia Association of REALTORS®, Inc. ("GAR") issues certain standard real estate forms. These GAR forms are frequently provided to the parties in real estate transactions. No party is required to use any GAR form. These forms are generic and written with the interests of multiple parties in mind. The parties agree to carefully review the GAR Forms to be used in this transaction and modify the same to meet their specific needs. If any party has any questions about their rights and obligations under any GAR form, they should consult an attorney. Provisions in the GAR Forms may be subject to differing interpretations by our courts other than what the parties may have intended. Our courts may at times strike down or not enforce provisions in our GAR Forms, as written. No representation is made that the GAR Forms will protect the interests of any particular party or will be fit for any specific purpose. The parties hereto agree that the GAR forms may only be used in accordance with the licensing agreement of GAR. While GAR forms may be modified by the parties, no GAR form may be reproduced with sections removed, altered or modified unless the changes are visible on the form itself or in a stipulation, addendum, exhibit or amendment thereto.

**** CONTINUED: shall be subject to the jurisdiction of the United States Bankruptcy Court, Northern District of Georgia, Atlanta Division, in re: Blomquist Builders Group, Inc., Case No. 23-59198-SMS.***

k. **Governing Law and Interpretation:** This Agreement may be signed in multiple counterparts each of which shall be deemed to be an original and shall be interpreted in accordance with the laws of Georgia. No provision herein, by virtue of the party who drafted it, shall be interpreted less favorably against one party than another. All references to time shall mean the time in Georgia. If any provision herein is held to be unenforceable, it shall be severed from this Agreement while the remainder of the Agreement shall, to the fullest extent permitted by law, continue to have full force and effect as a binding contract.

l. **Independent Contractor Relationship:** This Agreement shall create an independent contractor relationship between Broker and Seller. Broker shall at no time be considered an employee of Seller. Unless otherwise stipulated, all affiliated licensees of Broker are independent contractors of Broker.

m. **No Imputed Knowledge:** Seller acknowledges and agrees that with regard to any property which Seller intends to sell, there shall be no knowledge imputed between Broker and Broker's licensees or between the different licensees of Broker. Broker and each of Broker's licensees shall be deemed to have only actual knowledge of such properties.

n. **Notices Between Seller and Broker:**

(1) Communications Regarding Real Estate Transactions: Seller acknowledges that many communications and notices in real estate transactions are of a time sensitive nature and that the failure to be available to receive such notices and communications can have adverse legal, business and financial consequences. During the term of this Agreement, Seller agrees to remain reasonably available to receive communications from Broker.

(2) Notices between Broker and Seller Regarding this Agreement: Seller and Broker agree that communications and notices between them regarding the terms of this Agreement shall be in writing, signed by the party giving the notice, and may be delivered in person or to any address, email address and/or facsimile number to the person to whom the communication or notice is being given specifically set forth in this Agreement. It is the intent of the parties that those means of transmitting notices for which a party has not provided an address or number shall not be used for receiving notices and communications. For example, if a party has not provided an email address in this Agreement, it shall mean that the party is not accepting notices or communications sent by this means.

o. **Referrals:** Seller hereby authorizes Broker to refer Seller to another real estate licensee or broker for brokerage or relocation services, or to a builder for services, not related to the sale of the Property. Seller acknowledges and agrees that Broker may receive a valuable consideration for the referral.

p. **Survival:** The rights and obligations of Broker to Compensation subsequent to the termination or expiration of this Agreement as set forth herein, the limitation of liability, the obligation to arbitrate and indemnify Broker and other similar provisions that by their terms are meant to protect Broker shall survive the termination of this Agreement.

q. **Third Party Vendors:** Broker may provide Seller with the names of vendors to perform services on behalf of Seller relative to real estate transactions involving Seller. Broker does not warrant or endorse the performance of any such vendor and the names of vendors are provided solely as a courtesy and starting point for Seller to identify possible vendors to perform services on behalf of Seller. Seller agrees to do his or her own due diligence regarding the skills, expertise and reputation of all such vendors performing services for Seller and the terms of all contracts with vendors (including whether there is a limitation of liability in such contracts). All decisions regarding which vendor to hire shall be solely that of Seller.

r. **Time of Essence:** Time is of the essence of this Agreement.

s. **Use of Initials "N/A":** The use of the initials "N/A" or "N.A." in filling out a blank in this Agreement shall mean "not applicable".

7. **Broker's and Seller's Duties.**

a. **Broker's Duties to Seller.** Broker shall promote the interests of the Seller by:

1. seeking a sale price at the price and terms stated in this Agreement or at a price and terms acceptable to Seller; provided, however, Broker shall not be obligated to seek additional offers to purchase the Property while the Property is subject to a Contract to Sell, unless brokerage engagement so provides;
2. timely presenting all offers to and from the Seller, even when Property is subject to a Contract to Sell;
3. disclosing to the Seller material facts which the Broker has actual knowledge concerning the transaction;
4. advising Seller to obtain expert advice as to material matters which are beyond the expertise of Broker; and
5. timely accounting for all money and property received in which the Seller has or may have an interest.

b. Broker shall keep confidential all information received by Broker during the course of the engagement which is made confidential by an express request or instruction from Seller unless Seller permits such disclosure by subsequent word or conduct, or such disclosure is required by law; provided, however, that disclosures between Broker and any of Broker's affiliated licensees assisting Broker in representing Seller shall not be deemed to breach the duty of confidentiality described above.

c. **Seller's Duties.** Seller will do the following:

1. cooperate with Broker to sell the Property to prospective buyers and will refer all inquiries concerning the sale of Property to the Broker during the term of this Agreement;
2. make the Property available for showing at reasonable times as requested by Broker;
3. provide Broker with accurate information regarding the Property (including information concerning all adverse material facts pertaining to the physical condition of Property);
4. comply with all local, state and federal laws applicable to the sale of the Property; and
5. carefully read all Contracts to Sell before signing them and comply with all duties and all time deadlines contained therein.

Copyright© 2026 by Georgia Association of REALTORS®, Inc.

8. Seller Default.
   a. **Events Constituting a Seller Default.** Seller shall be in breach of this Agreement if Seller:
      1. Terminates this Agreement prior to the end of the Agreement without the prior written agreement of Broker. Broker removing the listing from multiple listing service(s), taking down Broker's sign, ceasing to market the Property after this Agreement is unilaterally terminated by Seller and other similar activities shall not be evidence of the Broker's agreement to mutually terminate this Agreement, but shall instead merely be an acquiescence by Broker of the unilateral termination by Seller;
      2. Defaults under any Contract to Sell the Property resulting in such contract not closing;
      3. Agrees with a buyer of the Property to terminate a Contract to Sell without the consent of Broker; or
      4. Refuses to accept a lawful, bona fide, written offer to purchase the Property meeting the following terms and conditions at a time when the Property is not otherwise under contract:
         i. The purchase price in the offer, after deducting all fees, costs and contributions to be paid by the Seller (other than the real estate brokerage Compensation to be paid by Seller and the Seller's payment of ad valorem real property taxes through the date of closing) is for at least the full listing price set forth herein and is to be paid in cash or cash equivalent at the closing;
         ii. The offer is not subject to contingencies, conditions precedent, due diligence periods, or required terms other than those set forth herein;
         iii. The offer is not subject to Seller warranties or representations other than: (i) those warranties the Seller agrees to provide in any Seller's Property Disclosure Statement the Seller has filled out and made available to prospective buyers for inclusion in any offer, and (ii) the Seller warranting to convey good and marketable title (which for all purposes herein shall have the same meaning as set forth in the GAR Purchase and Sale Agreements) to the Property at closing by limited warranty deed; and
         iv. The date of closing in the offer is not less than thirty (30) days nor more than forty-five (45) days from the offer date.

      Notwithstanding the above, in the event there are multiple offers to purchase the Property meeting the above criteria, Seller shall not be in breach of this Agreement if the Seller first gives the prospective buyers a reasonable opportunity (not exceeding ten (10) days from the date of the first offer) to make their best offer to purchase the Property and Seller accepts one of the offers.
   b. **Broker Remedies for Seller Default.** Seller shall immediately pay Broker the Compensation referenced herein for any of the Seller defaults above, except for Seller unilaterally terminating this Agreement prior to the end of the Listing Period (as the same may have been extended as provided for herein). With respect to this event of default, Seller's obligation to pay Broker its Compensation shall be controlled by the Protected Period sections of this Agreement.
   c. ~~**Seller Default.** In the event Seller defaults under this Agreement, Seller shall, in addition to its other obligations set forth elsewhere herein, immediately reimburse Broker for the out-of-pocket costs and expenses incurred by Broker and Broker's affiliated licensees in seeking to market and sell the Property. Such costs and expenses shall include, without limitation, printing, and copying charges, mileage at the highest rate allowed by the IRS as a business deduction and expenses to advertise the Property in various media. Seller shall also pay all costs, fees and charges for removing the listing from any multiple listing service. The payment of these costs, fees, charges and expenses by Seller shall not waive or limit Broker's right to assert any other claim, cause of action or suit (hereinafter collectively, "Claims") against Seller for Broker's Compensation and /or other damages and shall not release Seller from such Claims. Notwithstanding the above, the amount of such fees, charges, costs and expenses paid by Seller to Broker hereunder shall be an offset against any Claim of Broker for Compensation.~~ ** See below*

9. WARNING TO BUYERS AND SELLERS: BEWARE OF CYBER-FRAUD. Fraudulent emails attempting to get the buyer and/or Seller to wire money to criminal computer hackers are increasingly common in real estate transactions. Specifically, criminals are impersonating the online identity of the actual mortgage lender, closing attorney, real estate broker or other person or companies involved in the real estate transaction. In that role, the criminals send fake wiring instructions attempting to trick buyers and/or sellers into wiring them money related to the real estate transaction, including, for example, the buyer's earnest money, the cash needed for the buyer to close, and/or the Seller's proceeds from the closing. These instructions, if followed, will result in the money being wired to the criminals. In many cases, the fraudulent email is believable because it is sent from what appears to be the email address/domain of the legitimate company or person responsible for sending the buyer or Seller wiring instructions. The buyer and/or Seller should verify wiring instructions sent by email by independently looking up and calling the telephone number of the company or person purporting to have sent them. Buyers and Sellers should never call the telephone number provided with wiring instructions sent by email since they may end up receiving a fake verification from the criminals. Buyer and Sellers should be on special alert for: 1) emails directing the buyer and/or Seller to wire money to a bank or bank account in a state other than Georgia; and 2) emails from a person or company involved in the real estate transaction that are slightly different (often by one letter, number, or character) from the actual email address of the person or company.

10. STATUTE OF LIMITATIONS: **FOR AND IN CONSIDERATION OF THE SUM OF $10.00 AND OTHER GOOD AND VALUABLE CONSIDERATION, THE RECEIPT AND SUFFICIENCY OF WHICH ARE THEREBY ACKNOWLEDGED, ALL CLAIMS OF ANY NATURE WHATSOEVER AGAINST BROKER AND/OR THEIR AFFILIATED LICENSEES, AND ANY OTHER REAL ESTATE BROKER AND THEIR AFFILIATED LICENSEES INVOLVED IN ANY TRANSACTION IN WHICH SELLER CONTRACTS TO SELL THE PROPERTY, WHETHER ASSERTED IN LITIGATION OR ARBITRATION AND SOUNDING IN BREACH OF CONTRACT AND/OR TORT, MUST BE BROUGHT WITHIN ONE (1) YEAR FROM THE DATE ANY CLAIM OR CAUSE OF ACTION ARISES. SUCH ACTIONS SHALL THEREAFTER BE TIME-BARRED. ALL SUCH BROKERS SHALL BE EXPRESS THIRD-PARTY BENEFICIARIES OF THIS PROVISION.**

**** NOT APPLICABLE - ALL SELLER DEFAULT PROVISIONS SHALL BE SUBJECT TO FURTHER ORDER OF THE BANKRUPTCY COURT.***

**11. <u>Brochures</u>.** Brochures referenced herein are prepared courtesy of GAR. The recommendations contained therein are general in nature and may not be applicable to the transaction reflected in this Agreement, and are not intended to either be exhaustive or specific advice that Seller should rely on without Seller first consulting with independent experts and professionals of Seller's own choosing to ensure that Seller is protected.

**The following Brochures have been received by the Seller(s):** (Check all that apply. Any box not checked means the Seller(s) has not received that brochure or other consumer information)

- ☐ GAR CB01 – The ABC's of Agency
- ☐ GAR CB04 – Lead-Based Paint Pamphlet
- ☐ GAR CB07 – Mold Pamphlet
- ☐ GAR CB08 – EPA Home Buyer's and Seller's Guide to Radon Pamphlet
- ☐ GAR CB10 – Protect Yourself When Selling Real Property
- ☐ GAR CB28 – What Buyers and Sellers Should Know About Short Sales and Distressed Properties
- ☐ GAR CB29 – What to Know about Buying Agricultural Land and Land Near Military Bases, Installations and Airports
- ☐ Other: ______________________________
- ☐ Other: ______________________________

**12. <u>Exhibits and Addenda</u>.** All exhibits and/or addenda attached hereto, listed below, or referenced herein are made a part of this Agreement. If any such exhibit or addenda conflicts with any preceding paragraph (including any changes thereto made by the parties), said exhibit or addendum shall control:

- ☐ Legal Description Exhibit (F807 or other) "________"
- ☐ Lead-Based Paint Exhibit (F316) "________"
- ☐ Retainer Fee Exhibit (F149) "________"
- ☒ Other: Special Stipulations Exhibit "B"
- ☐ Other: ______________________________

**SPECIAL STIPULATIONS:** The following Special Stipulations, if conflicting with any exhibit, addendum, or preceding paragraph, shall control:

☐ **Additional Special Stipulations (F246) are attached.**

**BY SIGNING THIS AGREEMENT, SELLER ACKNOWLEDGES THAT: (1) SELLER HAS READ ALL PROVISIONS AND DISCLOSURES MADE HEREIN; (2) SELLER UNDERSTANDS ALL SUCH PROVISIONS AND DISCLOSURES AND HAS ENTERED INTO THIS AGREEMENT VOLUNTARILY; AND (3) SELLER IS NOT SUBJECT TO A CURRENT SELLER BROKERAGE ENGAGEMENT AGREEMENT WITH ANY OTHER BROKER. IF A LICENSEE IS SIGNING THIS AGREEMENT ON BEHALF OF BROKER, LICENSEE WARRANTS THAT LICENSEE HAS FULL AUTHORITY TO SIGN THIS AGREEMENT AND BIND BROKER HERETO.**

## SELLER'S ACCEPTANCE AND CONTACT INFORMATION

If Seller is a legal entity, this Agreement must be signed by one or more authorized persons, as required in the entity's legal documents. The person's signature must include the capacity in which the person is signing, such as "Trustee", "General Partner", "Manager", "President", etc.

1 **Seller's Signature** [signature], Trustee

*S. Gregory Hays, as and only as Trustee for the Bankruptcy Estate of Blomquist Builders Group, Inc.*

Print or Type Name Date

Seller's Address for Receiving Notice

Seller's Phone Number: ☐ Cell ☐ Home ☐ Work

Seller's Email Address

2 **Seller's Signature**

Print or Type Name Date

Seller's Address for Receiving Notice

Seller's Phone Number: ☐ Cell ☐ Home ☐ Work

Seller's Email Address

☐ **Additional Signature Page (F146) is attached.**

## BROKER / BROKER'S AFFILIATED LICENSEE CONTACT INFORMATION

Brokerage Firm: Chambers Select Realty

MLS Office Code: CHAM01

Brokerage Firm License Number: 78991

**Broker/Affiliated Licensee Signature**: [signature]

Broker's Phone Number: 404-593-5156

Fax Number:

Print or Type Name: Wendy Chambers/Bill Celler

Date: 9.8.26

Broker's Address: 444 Manget Street Marietta GA 30060

Licensee's Phone Number: 404-593-5156

Fax Number:

Licensee's Email Address: wendy@chambersselect.com

GA Real Estate License Number: 356558

REALTOR® Membership: Cobb

RECEIPT OF A COPY OF THIS AGREEMENT IS HEREBY ACKNOWLEDGED BY SELLER.

The above Agreement is hereby accepted ________ o'clock _____ .m. on the date of ______________________________.

Copyright© 2026 by Georgia Association of REALTORS®, Inc.

# Exhibit "B"

The following Special Stipulations, if conflicting with any preceding paragraph, shall control:

1. The "Seller" of the Property means S. Gregory Hays, as and only as Chapter 7 Trustee for the Bankruptcy Estate of Blomquist Builders Group, Inc. (Case No. 23-59198-SMS).
2. Seller's Property Disclosure Statement and Official Wood Infestation Report. Seller and Listing Broker have no specific knowledge and make no representations concerning the condition of the Property. Purchaser understands that the Property is being sold "AS IS", "WHERE IS".
3. Seller warrants that Seller has title to the Property described herein and/or will have full authority to enter into this Agreement upon order of the Bankruptcy Court and that the information with respect to the Property as set out in this Agreement is true and correct to the best of the Seller's knowledge, it being understood that Trustee is a bankruptcy trustee who has no knowledge of the Property.
4. The parties hereto acknowledge that the Agreement and all terms, conditions, warranties and representations are subject to the approval (and not binding without such approval) of the U.S. Bankruptcy Court, Northern District of Georgia, Atlanta Division, in Chapter 7 Case No. 23-59198-SMS.
5. In the event Seller contracts to sell the Property to any buyer, the parties hereto acknowledge that any contract for sale of the Property is subject to and contingent upon approval of the U.S. Bankruptcy Court, Northern District of Georgia, Atlanta Division, in Chapter 7 Case No. 23-59198-SMS, and no commission shall be paid unless or until Bankruptcy Court approval and closing of the sale, at which time Trustee will execute a Trustee's Deed transferring the Property, free and clear of all liens, interests and encumbrances.
6. All parties agree that the closing shall take place no later than ten (10) days after the date the Court's Order approving the sale has been entered on the Court's Docket.
7. The closing attorney shall be such attorney as selected by Seller.
8. Earnest Money shall be at least two percent (2%) of the Purchase Price.
9. Seller will make no repairs to the Property.
10. In the event Seller sells or contracts to sell the Property to any buyer introduced to the Property by said broker within sixty (60) days after expiration of the listing period, then Seller shall pay the commission to said broker at the rate set herein at the closing on the sale or exchange of the Property subject to bankruptcy court approval.

[signature] Trustee ______________________ ______________________

**EXHIBIT "B" FOLLOWS**

# EXCLUSIVE SELLER BROKERAGE ENGAGEMENT AGREEMENT

GeorgiaREALTORS®

**2026 Printing**

**State law prohibits Broker from representing Seller as a client without first entering into a written agreement with Seller under O.C.G.A. § 10-6A-1 et. seq.**

## A. KEY TERMS AND CONDITIONS

1. **Exclusive Seller Brokerage Engagement Agreement**. For and in consideration of the mutual promises contained herein and other good and valuable consideration, the undersigned seller(s) ("Seller") and the undersigned broker (hereinafter "Broker" or "Seller's Broker") do hereby enter into this Exclusive Seller Brokerage Engagement Agreement ("Agreement") for Broker to exclusively represent Seller in listing and selling the property described below ("Property") for sale on the terms and conditions set forth herein.
   a. **Property Identification:** Address: 5035 Pindos Trail
   City Powder Springs, County Cobb, Georgia, Zip Code 30127
   Tax Parcel I.D. Number: 20-0338-0-111-0
   b. **Legal Description:** The legal description of the Property is *[select one of the following below]*:
   ☒ (1) attached as an exhibit hereto;
   ☐ (2) the same as described in Deed Book ________, Page _____, et. seq., of the land records of the above county; **OR**
   ☐ (3) Land Lot(s) ________________ of the ______________ District, _________________________ Section/ GMD, Lot _________, Block _____________, Unit ____________, Phase/Section ______________________ of______________________________________________Subdivision/Development, according to the plat recorded in Plat Book ___________, Page ___________, et. seq., of the land records of the above county; **OR**
   ☐ (4) described below if Property is a condominium unit and a full unit legal description is to be used **[NOT TO BE USED IF PROPERTY IS A FEE SIMPLE TOWNHOME]**:
   Unit _____ of ____________________________________________ Condominium ("Condominium"), located in Land Lot ____________ of the _________ District of _________________ County, Georgia, together with its percentage of undivided interest in the common elements of the Condominium, and its interest in the limited common elements assigned to the unit ("Unit"). The Condominium was created pursuant to the Declaration of Condominium for any Condominium ("Declaration"), recorded in Deed Book _______________, Page _________________, et seq.,___________________ County, Georgia records ("Declaration"), and shown and delineated on the plat of survey filed in Condominium Plat Book___________, Page_________, ______________________________ County, Georgia records, and on the floor plans filed in Condominium Floor Plan Book _________, Page _________, _________________________ County, Georgia records.

2. **List Price and Listing Period**.
   a. The price at which the Property shall be listed for sale is $ 100000 ("List Price").
   b. **Commencement Date of Agreement:** ______________________________. This Agreement shall commence and be effective upon it being signed by Seller and Broker and a signed copy delivered to both parties.
   c. **Ending Date of Agreement:** 2/28/2027. This shall be the last full date of the Agreement after which it shall terminate and no longer be in effect unless the parties agree in writing to extend it.
   d. **Listing Period.** The term of this Agreement shall also be known as the listing period or listing term.

3. **Marketing**.
   a. **Selection of Multiple Listing Service(s)**. Broker agrees to file the listing with the following Multiple Listing Service(s) ("MLS(s)"): Gamls and FMLS
   b. **DELIVERY OF AGREEMENT TO AND LISTING WITH MLS.** THIS AGREEMENT SHALL BE TIMELY DELIVERED TO AND LISTED WITH THE ABOVE-REFERENCED MULTIPLE LISTING SERVICE(S) IN ACCORDANCE WITH THE RULES OF SUCH MULTIPLE LISTING SERVICE(S), WHICH MAY LIMIT THE AVAILABILITY AND TIME DURATION OF THE MARKETING OPTIONS BELOW. THIS OBLIGATION AND THESE LIMITATIONS SHALL CONTROL OVER ANY CONFLICTING OR INCONSISTENT LANGUAGE CONTAINED HEREIN.
   c. **Marketing Commencement Date:** 9/1/2026 This shall be the date when the Property is first marketed to the public. Seller shall have the right, upon notice to Broker, to move this date up or back by not more than 20 days.

THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH Wendy Gravlin Chambers IS INVOLVED AS A REAL ESTATE LICENSEE. UNAUTHORIZED USE OF THE FORM MAY RESULT IN LEGAL SANCTIONS BEING BROUGHT AGAINST THE USER AND SHOULD BE REPORTED TO THE GEORGIA ASSOCIATION OF REALTORS® AT (770) 451-1831.
Copyright© 2026 by Georgia Association of REALTORS®, Inc.

i. **Coming Soon.** If offered by the MLS, Seller ☐ directs or ☒ does not direct Broker to file the Property listing in the MLS(s) listed above in "Coming Soon" status for _____ days prior to the Marketing Commencement Date, during which time the Property will be visible to MLS participants as Coming Soon, but the Property may not be shown to the public or purchased during this period. At the end of this period, the Property will be changed to "Active" status and marketed to the public as set forth in Section A.3.(c) above. The maximum Coming Soon status period is set by the MLS. If the Coming Soon status period herein exceeds the maximum days permitted by the MLS, then the MLS maximum shall control.

d. **MLS Marketing Options:** Within one (1) business day of the Marketing Commencement Date, the listing must be filed with the MLS(s) listed above. Seller directs Broker to market the Property for sale using the Multiple Listing Service option selected below: *[Select the option below which applies. The options not selected shall not become part of this Agreement.]*

☒ **(1) Immediate Public Marketing Option.** The listing will be immediately visible to MLS participants and may be electronically distributed through Internet Data Exchange ("IDX") so that MLS participants can display it on their websites. The Property may also be distributed through syndication to make it available to be viewed on various third-party websites such as REALTOR.COM, Zillow, or Homes.com. Such listings are considered to be active listings and the Property may be shown to potential buyers.

☐ **(2) Delayed Marketing Exempt Option.** The listing will be immediately visible to MLS participants and may appear on the websites of Broker and Broker's licensees. However, marketing of the Property by other brokers through the IDX and syndication to third-party websites will be delayed for a period of _______ days. During the Delayed Marketing Exempt Period, the listing will not appear on other brokers' websites or on websites like REALTOR.COM, Zillow and Homes.com. Such listings are considered active listings and the Property may be shown to potential buyers.

☐ **(3) Office Exclusive Marketing Option.** The Property will initially be marketed through an office exclusive period of _______ days during which time the Property listing will only be available to licensees affiliated with Broker. During the Office Exclusive Marketing period, the Property listing will be submitted to the MLS(s) listed above; however, the listing will neither be marketed publicly nor disseminated through the MLS and will not be visible to other MLS participants. Such listings are considered to be active listings and the Property may be shown to potential buyers.

e. **Disclaimer:** BY SIGNING THIS AGREEMENT, SELLER UNDERSTANDS AND ACKNOWLEDGES THAT IF SELLER IS DELAYING THE PUBLIC MARKETING OF THE PROPERTY, BY SELECTING AN OFFICE EXCLUSIVE MARKETING OPTION OR THE DELAYED MARKETING EXEMPT OPTION, SELLER MAY NOT MAXIMIZE EITHER THE NUMBER OF OFFERS SELLER RECEIVES OR THE PRICE OFFERED TO BUY THE PROPERTY. SELLER NEVERTHELESS KNOWINGLY WAIVES THE POTENTIAL BENEFITS OF IMMEDIATE PUBLIC MARKETING.

4. **Compensation to Broker(s) for Professional Services ("Compensation").**

a. **Generally:** Compensation to Broker(s) is negotiable and is not set by law.

b. **Compensation to Seller's Broker:** Seller agrees to pay Seller's Broker the following Compensation at the closing of any Contract to Sell (as that term is hereinafter defined) of the Property as follows:

☒ Six percent ( 6 %) of the purchase price;

☐ $______________________;

☐ (other) ______________________.

c. **Whether Compensation is Offered to Buyer's Broker:** Seller hereby approves the following: *[Select all which are applicable]*

☐ (1) not initially offering Compensation to Buyer's Broker but marketing that Seller is open to receiving offers in which Seller pays Compensation to Buyer's Broker;

☒ (2) Compensation being offered to Buyer's Broker by either; ☐ Seller (in addition to the Compensation being paid to Seller's Broker); ☒ Seller's Broker (out of the Compensation being paid to Seller's Broker); or ☐ Seller and Seller's Broker as set forth in "other" section below:

☒ Three percent ( 3 %) of the purchase price;

☐ $______________________;

☐ (other) ______________________

☐ If Seller's offer of Compensation to the Buyer's Broker is conditional, specify the conditions here: ______________________;

**OR**

☐ (3) No Compensation being offered or marketed to Buyer's Brokers.

For all purposes herein, the term "Buyer's Broker" shall mean the Broker, including the Broker representing the Seller, if they are also working with or representing the buyer as a customer or client. If buyer or Buyer's Broker does not request or accept the full amount of Compensation being offered by Seller's Broker, the remainder shall be additional compensation to Seller's Broker.

d. **Separate Compensation on Lease.** If Seller leases the Property or enters into a lease/purchase agreement or a lease with an option to purchase agreement during this Agreement, Seller shall also pay Broker a separate leasing Compensation in the amount of $ 0 and as follows: NA

Notwithstanding any provision to the contrary contained herein, the payment of a leasing Compensation (including in lease/purchase transactions or lease with an option to purchase transactions) shall not relieve Seller from paying the Compensation at the closing of a Contract to Sell, as provided elsewhere in this Agreement.

Copyright© 2026 by Georgia Association of REALTORS®, Inc.

5. **Protected Period.** The length of Protected Period during which time Broker shall be entitled to Compensation under certain circumstances where this Agreement has been unilaterally terminated by Seller or has expired, shall be 30 days.

6. **Agency and Brokerage.**
   a. The following are types of agency relationship(s) **NOT** offered by Broker:
   ☐ seller agency ☐ buyer agency ☐ designated agency ☒ dual agency ☒ sub-agency ☒ tenant agency ☒ landlord agency
   b. If Broker offers dual agency as one of its agency relationships above, Seller ☐ does or ☒ does not consent to Broker acting in a dual agency capacity, as that agency relationship is explained in Section B.6(b) below and in the CB01 ABCs of Agency. Seller expressly consents to Broker acting in any other agency relationship offered by Broker.

7. **Lead-Based Paint Disclosure.** Federal law requires disclosure of lead-based paint in homes/residential properties, or a portion thereof, constructed prior to 1978. *[select one below]*
   a. ☐ A dwelling on the Property, or portion thereof, was constructed prior to 1978, Seller agrees to complete and provide Broker with a signed Lead-Based Paint Disclosure Exhibit (F316) at the same time as the signing of this Agreement and is attached as Exhibit "___".
   **OR**
   b. ☒ No dwelling on the Property, or portion thereof, was constructed prior to 1978.

8. **Seller Has the Following Special Circumstances That Will Require Third-Party Approval Before Seller Can Do the Following:**
   a. **List the Property for Sale:**
   ☒ (1) **Bankruptcy:** Seller has filed for bankruptcy protection and this Agreement is made contingent upon the bankruptcy court authorizing the listing of the Property for sale.
   ☐ (2) **Divorce:** Seller has filed for divorce and this Agreement is made contingent upon the court having jurisdiction over the divorce action authorizing the listing of the Property for sale.
   ☒ (3) **Other (Please describe):** ** See below*
   b. **Contract to Sell the Property:**
   ☒ (1) **Bankruptcy:** Seller has filed for bankruptcy protection. Any purchase and sale agreement for the sale of the Property will need to be conditioned upon the approval of the bankruptcy court.
   ☐ (2) **Divorce:** Seller has filed for divorce. Any purchase and sale agreement for the sale of the Property will need to be conditioned upon the approval of the court having jurisdiction over the divorce.
   ☐ (3) **Short Sale:** The sale of the Property will not generate sufficient proceeds to pay off the Broker's Compensation and all mortgages or liens on the Property. Therefore, the purchase and sale agreement for the sale of the Property will need to be made contingent upon the mortgage lender(s) and other lien holders agreeing to take less than the face amount of what they are owed.
   ☐ (4) **Seller Not on Title:** Seller does not yet have title to the Property and the purchase and sale agreement for the Property ☐ will or ☐ will not need to be subject to Seller acquiring title to the Property.
   ☒ (5) **Other (Please describe):** *Upon Bankruptcy Court approval of the sale, Seller will execute a Trustee's Deed conveying title to the Purchaser(s).*

9. **Negotiation.** Seller ☒ does **OR** ☐ does not authorize the Broker to assist, to the extent requested by Seller, in negotiating the terms of and filling out a pre-printed form contracts for Seller's review and approval.

## B. FURTHER EXPLANATIONS TO CORRESPONDING PARAGRAPHS IN SECTION A.

1. **Exclusive Seller Brokerage Engagement Agreement.** Seller has the full authority to enter into this Agreement for the listing of Seller's Property for sale. This Agreement may not be amended except by the written agreement of Seller and Broker. The failure of the parties to adhere strictly to the terms and conditions of this Agreement shall not constitute a waiver of the right of the parties later to insist on such strict adherence. Seller is not a party to any other exclusive Seller brokerage engagement agreement and all such previous agreements, if any, have expired and not been renewed. Seller acknowledges that Seller may have to pay a previous broker Compensation if Seller is subject to a current Seller brokerage engagement agreement or has unilaterally terminated a previous Seller brokerage engagement agreement without the consent of the previous broker.

2. **List Price and Listing Period.**
   a. **List Price:** Seller agrees to list the Property for sale at the list price specified in this Agreement. The failure of the Property to be shown or sell at the list price may be an indication that the list price for the Property is too high.
   b. **Initial Listing Period When Property Is Under Contract to Sell:** If the Property is under a Contract to Sell, as that term is defined below, during the Listing Period, but the Listing Period expires prior to the closing, then the Listing Period shall be automatically extended through the closing of the Contract to Sell.
   c. **Extension:** If during the term of this Agreement, Seller and a prospective buyer enter into: 1) a real property purchase and sale agreement for the Property; 2) a contract to exchange property, including the Property; 3) an option contract for the sale of the Property; or 4) a contract to sell the shares or partnership or membership interests in the legal entity constituting Seller (hereinafter, collectively referred to in this Agreement as a "Contract to Sell") which is not consummated or closed for any reason whatsoever, then the Listing Period may be extended unilaterally by Broker for the number of days that Property was under the Contract to Sell (hereinafter, "Extension Period") by Broker providing written notice of the same to Seller within five (5) days of the Contract to Sell not being consummated but in no event later than prior to the expiration of this Agreement (hereinafter, "Notification Period"). If such written notice is not given before the end of the Notification Period, then the Extension Period for that transaction shall be deemed to have been waived by Broker.

** Seller is a federal bankruptcy trustee and has never seen or had any knowledge of the property. Seller makes no warranties or representations. Property is being sold as is, where is, with all faults and subject to bankruptcy court approval.*

Copyright© 2026 by Georgia Association of REALTORS®, Inc.

3. **Marketing.**
   a. **Generally:** Broker is exclusively authorized to market and advertise the Property for sale to the public through any means of Broker's choosing. This may include, without limitation, flyers, brochures, videos, yard and window signs, including "For Sale" signs, open houses and mailings. Marketing information about the Property may be posted on websites, placed in electronic and print media and multiple listing services and sent by email, text and all other means. Seller agrees not to market the Property during the term of this Agreement.
   b. **Ownership of Marketing Materials:** Any photography and marketing materials paid for or created by Broker shall be the property of Broker. Such materials shall not be used without the prior written permission of Broker. Any photography and marketing materials paid for by Seller shall be the property of Seller.
   c. **Liability for Misinformation:** Seller warrants that any information Seller provides to Broker, which Broker then uses to market and advertise the Property, shall be accurate and complete. Seller hereby agrees to indemnify and hold Broker harmless from any and all claims, causes of action, suits and damages arising out of or resulting from Seller providing misinformation to Broker.
   d. **Images:** Seller agrees to remove any personal property prior to listing the Property of which Seller does not want images to be so captured. Broker shall not be liable to Seller if other brokers or buyers take photographs, videos or use other technology to capture and manipulate images of the Property without the permission of the Seller and Broker.
   e. **Multiple Listing Service(s):** Broker agrees to file this Agreement with the above referenced Multiple Listing Service(s) within one (1) business day of the Marketing Commencement Date, which shall be the date the Property is made available to the public. Seller acknowledges that the MLS(s) is/are not a party to this Agreement and is/are not responsible for errors or omissions on the part of Seller or Broker. Seller agrees to indemnify Service(s) from and against any and all claims, liabilities, damages or losses arising out of or related to the listing and sale of Property. Seller acknowledges that by virtue of listing the Property in MLS(s), all MLS(s) members and their affiliated licensees, will have access to Seller's listing information for the purpose of assisting Seller in the sale of the Property.
   f. **Consent of Seller to be Called:** If Seller is on a "Do Not Call List," Seller expressly consents to Broker calling Seller for any purpose related to the sale of the Property. This paragraph shall survive the termination of this Agreement.
   g. **Lockboxes:** A lockbox may be used in connection with the marketing of Property. There have been isolated instances of reported burglaries of homes on which lockboxes have been placed and for which the lockbox has been alleged to have been used to access the home. In order to minimize the risk of misuse of the lockbox, Broker recommends against the use of lockboxes on door handles that can be unscrewed from the outside or on other parts of the home from which the lockbox can be easily removed. Since prospective buyers and others will have access to Property, Seller agrees to either remove all valuables, prescription drugs and/or keys, or put them in a secure place.

4. **Compensation for Professional Services of Seller's Broker ("Compensation").**
   a. **Obligation to Pay Compensation to Seller's Broker**: In the event that Seller enters into a Contract to Sell or lease, lease/purchase, or lease with an option to purchase the Property or any portion thereof during the term of this Agreement with any buyer, Seller agrees to pay Seller's Broker's Compensation at the closing (regardless of whether the closing is during or after the term of this Agreement), and if applicable, Seller's Broker's Leasing Compensation prior to the commencement of a lease, lease/purchase, or lease with an option to purchase.
   b. **Optional Compensation to Buyer's Broker:** Seller shall have no obligation to pay the Compensation of the Buyer's Broker. However, some Sellers approve such Compensation being offered and paid for by either the Seller or the Seller's Broker. If Seller has agreed to offer Compensation to the Buyer's Broker on any Contract to Sell, it shall be paid in full at the closing. If Seller does not approve offering Compensation to the Buyer's Broker, then the buyer shall be solely responsible for paying the Buyer's Broker's Compensation.
   c. **Separate Compensation on Lease:** Notwithstanding the above, if Seller leases real property or enters into a lease/purchase or lease with an option to purchase contract during this Agreement, Seller shall also pay Broker a separate leasing Compensation in the amount as indicated elsewhere in this Agreement. Notwithstanding any provision to the contrary contained herein, the payment of leasing Compensation (including in lease purchase and lease with an option to purchase transactions) shall not relieve Seller from paying the Compensation at the closing of a Contract to Sell, as provided elsewhere in this Agreement.

5. **Protected Period.** The Protected Period shall be the period of time set forth in this Agreement commencing upon the expiration or the unilateral termination of this Agreement by Seller during which Broker shall be protected for its Compensation (or leasing Compensation, as applicable). If this Agreement is unilaterally terminated by Seller without the consent of the Broker, the Protected Period shall be: a) the number of days remaining on what would have been the original listing period had it not been terminated, plus b) the number of days set forth as the Protected Period in Section A.5 of this Agreement. There shall be no Protected Period if Broker and Seller mutually agree to terminate this Agreement. In the event that during the Protected Period, Seller enters into a Contract to Sell or lease, lease/purchase, or lease with an option to purchase of all or any portion of the Property which during the term of this Agreement was shown to any buyer (either in person or virtually), or such buyer was provided information about the Property, either directly or through a broker working with the buyer, then Seller shall pay Broker at closing (or the commencement of the lease, lease/purchase, or lease with an option to purchase, as applicable), the Compensation or leasing Compensation set forth above. For all purposes herein, showing property to buyers virtually shall include showing the buyers the property by video or sending a video tour of the property to the buyers.

   Notwithstanding the above, if this Agreement expires (and is not unilaterally terminated by Seller) the following exception to the above Compensation obligations shall apply. Specifically, no Compensation or leasing Compensation, as applicable, shall be owing to Broker if Seller signs an exclusive seller brokerage engagement agreement with another broker and the Property is then sold or leased during the term of the Agreement with that broker.

6. **Agency and Brokerage.**
   a. **Broker's Policy on Agency:** Unless Broker has indicated elsewhere herein that Broker is not offering a specific agency relationship, the types of agency relationships offered by Broker are: seller agency, buyer agency, designated agency, dual agency, sub-agency, landlord agency, and tenant agency.

Copyright© 2026 by Georgia Association of REALTORS®, Inc.

b. **Dual Agency Disclosure:** *[Applicable only if Broker's agency policy is to practice dual agency and Seller has consented to Broker acting in a dual agency capacity.]* If Seller and a prospective buyer are both being represented by the same Broker and the Broker is not acting in a designated agency capacity, Seller is aware that Broker is acting as a dual agent in this transaction and hereby consents to the same. Seller has been advised that:

(1) In serving as a dual agent, Broker is representing two parties, Seller and the buyer, as clients whose interests are or at times could be different or even adverse;

(2) Broker will disclose all adverse, material facts relevant to the transaction and actually known to the dual agent to all parties in the transaction except for information made confidential by request or instructions from either party which is not otherwise required to be disclosed by law;

(3) Seller does not have to consent to dual agency. The consent of the Seller to dual agency has been given voluntarily in Section A and the Seller has read and understands this Agreement.

(4) Notwithstanding any provision to the contrary contained herein, Seller hereby directs Broker, while acting as a dual agent, to keep confidential and not reveal to the other party any information which could materially and adversely affect their negotiating position except as required by law.

(5) Broker or Broker's affiliated licensees will timely disclose to each party the nature of any material relationship with other party other than that incidental to the transaction. A material relationship shall mean any actually known personal, familial, or business relationship between Broker and a party which would impair the ability of Broker to exercise fair and independent judgment relative to another client. The other party whom Broker may represent in the event of dual agency may not be identified at the time Seller enters into this Agreement. If any party is identified after the Agreement and has a material relationship with Broker, then Broker shall timely provide to Seller a disclosure of the nature of such relationship.

(6) Upon signing this brokerage engagement with the dual agency disclosures contained herein, Seller's consent to dual agency is conclusively deemed to have been given and informed in accordance with state law, provided that Seller has consented to Broker acting in a dual agency capacity in Section A(6) above.

c. **Designated Agency Disclosure:** *[Applicable only if Broker's agency policy is to practice designated agency.]* Seller does hereby consent to Broker acting in a designated agency capacity in transactions in which Broker is representing Seller and a prospective buyer, but where Broker assigns one or more of its affiliated licensees exclusively to represent the Seller and one or more of its other affiliated licensees exclusively to represent the prospective buyer.

d. **No Other Adverse Agency Relationships:** Unless specified herein, Broker has no other known agency relationships with other parties which would conflict with any interests of Seller (except that Broker may represent other buyers, sellers, landlords, and tenants in buying, selling or leasing property).

7. **Lead-Based Paint Disclosure.** As required by federal law (Residential Lead-Based Paint Hazard Reduction Act of 1992, Title X), if any portion of a residential dwelling was built prior to 1978, the Lead-Based Paint Disclosure Exhibit (F316) is hereby attached as an exhibit to this Agreement. The term "residential dwelling" includes any painted fixture or material used therein that was built or manufactured prior to 1978. Seller understands that Seller must (1) disclose to the buyer the presence of known lead-based paint and/or lead-based paint hazards; (2) provide the buyer with all available records and reports pertaining to lead-based paint and lead-based paint hazards in the residential housing; (3) provide the buyer with a lead-based paint hazard information pamphlet, in a form approved by the Environmental Protection Agency; and (4) permit the buyer to have a 10 day period to conduct a risk assessment or inspection for the presence of lead-based paint hazards.

8. **Special Circumstances.**

a. The sale of Property is contingent upon a third party's approval as indicated above. It shall be Seller's responsibility to seek to fulfill any contingency or condition selected herein, if any, and ensure that the purchase and sale agreement is made subject to any such contingency or condition.

b. Broker agrees to keep confidential all information which Seller asks to be kept confidential by express request or instruction unless Seller permits such disclosure by subsequent word or conduct or such disclosure is required by law. Seller acknowledges, however, that buyer and buyer's broker may possibly not treat any offer made by Seller (including its existence, terms and conditions) as confidential unless those parties have entered into a Confidentiality Agreement with Seller.

c. Broker may not knowingly give customers false information.

d. In the event of a conflict between Broker's duty not to give customers false information and the duty to keep the confidences of Seller, the duty not to give customers false information shall prevail.

9. **Negotiation.** While Broker may assist Seller in negotiating the terms of a Contract to Sell, if Seller has elected to have Broker assist in this role, all decisions regarding price, terms and other conditions in a Contract to Sell shall still be made by Seller.

**C. OTHER TERMS AND CONDITIONS**

~~1. **Seller's Property Disclosure Statement.** Georgia law (O.C.G.A. §51-6-2) requires that a Seller disclose known latent defects in the Property which could not be observed by Buyer upon a reasonable inspection of the Property. This is the case even if the Property is sold in "as is" condition. Within three (3) days of the date of this Agreement, Seller agrees to provide Broker with a current, fully executed Seller's Property Disclosure Statement (F301, F304 or F307) or Disclosure of Latent Defects & Fixtures Checklist (F302). Broker is hereby authorized to distribute the Seller's Property Disclosure Statement to buyers interested in Property. Seller agrees to promptly update any of the above referenced disclosure documents through the Closing should any changes occur.~~ *See below*

**** NOT APPLICABLE. NO DISCLOSURE STATEMENT WILL BE PROVIDED BY SELLER.***

2. **HAZARDOUS CONDITIONS ON PROPERTY**. SELLER ACKNOWLEDGES THAT BROKER HAS NO DUTY TO INSPECT THE PROPERTY FOR DEFECTS, HAZARDOUS CONDITIONS, REPAIRS OR ANY OTHER MATTER. SELLER OWES A DUTY OF REASONABLE CARE TO KEEP THE PROPERTY SAFE FOR PROSPECTIVE BUYERS AND THEIR AGENTS, INVITEES AND CONTRACTORS WHO VIEW AND/OR INSPECT THE PROPERTY. THIS DUTY INCLUDES A DUTY TO WARN ALL SUCH PERSONS OF DANGEROUS CONDITIONS THAT WOULD NOT BE OBVIOUS TO SUCH PERSONS. TO MINIMIZE SELLER'S POTENTIAL LIABILITY, SELLER IS ENCOURAGED TO CORRECT ALL HAZARDOUS CONDITIONS ON THE PROPERTY. SELLER AGREES TO INDEMNIFY AND HOLD BROKER HARMLESS FROM AND AGAINST ANY AND ALL CLAIMS, CAUSES OF ACTION, SUITS AND DAMAGES ARISING OUT OF OR RELATING TO A PERSON OR PERSONS BEING INJURED OR HARMED WHILE ON THE PROPERTY.

3. **Limits on Broker's Authority and Responsibility**. Seller acknowledges and agrees that Broker:
   - **a.** may show other properties to prospective buyers who are interested in Property;
   - **b.** shall have no duty to inspect the Property or advise buyer or Seller on any matter relating to the Property which could have been revealed through a survey, appraisal, title search, Official Georgia Wood Infestation Report, utility bill review, septic system inspection, well water test, tests for radon, asbestos, mold, and lead-based paint; inspection of the Property by a licensed home inspector, construction expert, structural engineer, or environmental engineer; review of this Agreement and transaction by an attorney, financial planner, mortgage consultant, or tax consultant; and consulting appropriate governmental officials to determine, among other things and without limitation, the zoning of the Property, the propensity of the Property to flood, flood zone certifications, whether any condemnation action is pending or has been filed or other nearby governmental improvements are planned. Seller acknowledges that Broker does not perform or have expertise in any of the above tests, inspections, and reviews or in any of the matters handled by the professionals referenced above. Seller should seek independent expert advice regarding any matter of concern to Seller relative to the Property and this Agreement. Seller acknowledges that Broker shall not be responsible to monitor or supervise or inspect any portion of any construction or repairs to Property and that such tasks fall outside the scope of real estate brokerages services;
   - **c.** shall owe no duties to Seller nor have any authority on behalf of Seller other than what is set forth in this Agreement;
   - **d.** shall make all disclosures required by law;
   - **e.** shall not be responsible for ensuring that Seller complies with the duties and deadlines contained in any Contract to Sell entered into by Seller and that Seller shall be solely responsible for the same; and
   - **f. SHALL BE INDEMNIFIED AND HELD HARMLESS BY SELLER DURING AND AFTER THE TERMINATION OF THIS AGREEMENT FROM ANY AND ALL CLAIMS, CAUSES OF ACTION, OR DAMAGES ARISING OUT OF OR RELATING TO:**
     - (1) **INACCURATE AND/OR INCOMPLETE INFORMATION PROVIDED BY SELLER TO BROKER;**
     - (2) **EARNEST MONEY HANDLED BY ANYONE OTHER THAN BROKER;**
     - (3) **SELLER'S NEGLIGENCE OR INTENTIONAL WRONGDOING;**
     - (4) **ANY LOSS OR THEFT OF VALUABLES, PRESCRIPTION DRUGS, KEYS, OR OTHER PERSONAL PROPERTY, RELATING TO THE USE OF A LOCKBOX OR AN OPEN HOUSE RESULTING FROM SELLER'S FAILURE TO REMOVE OR SECURE THE SAME;**
     - (5) **THE EXISTENCE OF UNDISCLOSED MATERIAL FACTS ABOUT THE PROPERTY OR THE TRANSACTION; AND**
     - (6) **ANY DAMAGES OR INJURIES OCCURRING ON THE PROPERTY AS A RESULT OF DANGEROUS OR DEFECTIVE CONDITIONS ON THE PROPERTY OR THE FAILURE TO SECURE OR RESTRAIN PETS.**
   - **g.** shall have no authority to bind Seller to any Contract to Sell or give notices on behalf of Seller other than to forward, if requested by Seller, a notice signed by Seller pertaining to a real estate transaction. Under the standard GAR Purchase and Sale Agreement Forms, notice received by the Broker is deemed to be notice received by the Seller.

4. **LIMIT ON BROKER'S LIABILITY. SELLER ACKNOWLEDGES THAT BROKER:**
   - **a. SHALL, UNDER NO CIRCUMSTANCES, HAVE ANY LIABILITY GREATER THAN THE AMOUNT OF COMPENSATION PAID HEREUNDER TO BROKER (EXCLUDING ANY COMPENSATION AMOUNT PAID TO A COOPERATING REAL ESTATE BROKER, IF ANY) OR, IF NO COMPENSATION IS PAID TO BROKER, THAN THE SUM OF $100;**
   - **b. BROKER SHALL HAVE NO LIABILITY FOR PROVIDING INFORMATION THAT LATER TURNS OUT TO BE INCORRECT OR FALSE; PROVIDED THAT, BROKER DID NOT HAVE ACTUAL KNOWLEDGE THAT THE INFORMATION WAS FALSE AND DISCLOSES TO SELLER THE SOURCE OF THE INFORMATION; AND**
   - **c. NOTWITHSTANDING THE ABOVE, SHALL HAVE NO LIABILITY IN EXCESS OF $100 FOR ANY LOSS OF FUNDS AS THE RESULT OF WIRE OR CYBER FRAUD.**
   - **d. THIS LIMITATION OF LIABILITY SHALL SURVIVE THE TERMINATION OF THIS AGREEMENT.**

5. **Disclosure of Potentially Fraudulent Activities as required by the Georgia Residential Mortgage Fraud Act (O.C.G.A. § 16-8-100 et seq.)**
   - **a.** To help prevent fraud in real estate transactions, Seller does hereby give Broker permission to report any suspicious, unusual and/or potentially illegal or fraudulent activity (including but not limited to mortgage fraud) to:
     - (1) Governmental officials, agencies and/or authorities and/or
     - (2) Any mortgage lender, mortgage insurer, mortgage investor and/or title insurance company which could potentially be harmed if the activity was in fact fraudulent or illegal.
   - **b.** Seller acknowledges that Broker does not have special expertise with respect to detecting fraud in real estate transactions. Therefore, Seller acknowledges that:
     - (1) Activities which are fraudulent or illegal may be undetected by Broker; and
     - (2) Activities which are lawful and/or routine may be reported by Broker as being suspicious, unusual or potentially illegal or fraudulent.

Copyright© 2026 by Georgia Association of REALTORS®, Inc.

6. **Miscellaneous.**

a. **Arbitration:** ~~All claims arising out of or relating to this Agreement and the alleged acts or omissions of any or all the parties hereunder shall be resolved by arbitration in accordance with the Federal Arbitration Act 9 U.S.C. § 1 et. seq. and the rules and procedures of the arbitration company selected to administer the arbitration. Upon making or receiving a demand for arbitration, the parties shall work together in good faith to select a mutually acceptable arbitration company with offices in Georgia to administer and conduct the arbitration. If the parties cannot mutually agree on an arbitration company, the company shall be selected as follows. Each party shall simultaneously exchange with the other party a list of three arbitration companies with offices in Georgia acceptable to that party to administer and conduct the arbitration. If there is only one (1) arbitration company that is common to both lists, that company shall administer and conduct the arbitration. If there is more than one arbitration company that is common to both lists, the parties shall either mutually agree on which arbitration company shall be selected or flip a coin to select the arbitration company. If there is not initially a common arbitration company on the lists, the parties shall repeat the process by expanding their lists by two each time until there is a common name on the lists selected by the parties. The decision of the arbitrator shall be final and the arbitrator shall have authority to award attorneys' fees and allocate the costs of arbitration as part of any final award. All claims shall be brought by a party in his or her individual capacity and not as a plaintiff or class member in any purported class or representative proceeding. The arbitrator may not consolidate more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding. Notwithstanding anything to the contrary contained herein, this agreement to arbitrate shall not apply to: (1) any claim regarding the handling and disbursement of earnest money; and (2) any claim of Broker regarding the entitlement to or the non-payment of Compensation hereunder.~~ **** PARAGRAPH CONTINUES AT THE BOTTOM OF THE PAGE***

b. **Assignability:** As part of a sale of all or substantially all of the assets of Broker to another brokerage firm, Seller consents to this Agreement being assigned by Broker to the other brokerage firm. In such event, the assignee, upon consenting to the assignment, shall: (1) thereafter be responsible for performing all of the duties and responsibilities of the assignor under this Agreement; and (2) have all of the rights of assignor including the right to receive the Compensation referenced in this Agreement.

c. **Attorney's Fees:** In the event this Agreement, or any provision therein, is enforced through or is the subject of a dispute resulting in litigation or arbitration, the prevailing party shall be entitled to recover its actual attorney's fees, reasonably incurred.

d. **Broker:** In this Agreement, the term "Broker" shall mean the licensed Georgia real estate broker(s) or brokerage firm(s) and their affiliated licensees in this transaction except as may be specifically provided otherwise herein.

e. **Definition of Seller and Buyer:** For the purposes of this section, the term "Seller" shall include Seller, all members of the Seller's immediate family, any legal entity in which Seller or any member of Seller's immediate family owns or controls, directly or indirectly, more than ten percent (10%) of the shares or interests therein, and any third party who is acting under the direction or control of any of the above parties. For the purposes of this Agreement, the term "buyer" shall include buyer, all members of the buyer's immediate family, any legal entity in which buyer or any member of buyer's immediate family owns or controls, directly or indirectly, more than ten percent (10%) of the shares or interests therein, and any third party who is acting under the direction or control of any of the above parties.

f. **Disclaimer Regarding the Sale of Certain Property:** Seller acknowledges that O.C.G.A. § 2-1-7 prohibits certain nonresident aliens, foreign persons, foreign companies and U.S. companies owned by any of the above from buying or possessing agricultural land and certain land within a ten (10) mile radius of any military base, military installation, or military airport. Seller agrees to carefully read the entirety of the above referenced Code section before contracting to sell such land. Seller should consult with legal counsel to fully understand the law. If Seller has not submitted written questions to Broker regarding the law to Broker prior to contracting to sell prohibited property, Seller acknowledges that Seller fully understands the limitations and requirements of the law, and Broker shall have no responsibility for further doing the same. In such event, Seller shall indemnify and hold Broker harmless from any and all claims, causes of action, suits and damages arising out of or relating to Seller's failure to comply with the law. Violating the law can subject Seller to civil and criminal penalties. The law also requires certain Sellers and others to divest themselves of such property within certain time periods if they are now no longer legally able to purchase such property.

g. **Entire Agreement:** This Agreement represents the entire agreement of the parties with respect to listing of the Property for sale and is intended to supersede all prior written and verbal agreements of the parties hereto. No representation, statement, promise, or inducement not contained herein shall be binding on either party hereto. This Agreement shall be binding on the heirs of the Seller.

h. **Fair Housing Disclosure:** Seller acknowledges that Broker is committed to providing equal housing opportunities to all persons and that Seller and Broker are obligated to comply with state and federal fair housing laws in selling the Property. Seller and Broker agree not to discriminate in the sale of the Property on the basis of race, color, religion, national origin, sex, familial status, disability, sexual orientation or gender identity.

i. **FIRPTA:** Under the Foreign Investment in Real Property Tax Act ("FIRPTA"), Sellers who are not a "foreign person" as that term is defined in Section 1445(f)(3) of the Internal Revenue Code, shall deliver to the Closing Attorney at Closing a FIRPTA Affidavit. If Seller is a "foreign person" additional taxes may need to be withheld at Closing.

j. **GAR Forms:** The Georgia Association of REALTORS®, Inc. ("GAR") issues certain standard real estate forms. These GAR forms are frequently provided to the parties in real estate transactions. No party is required to use any GAR form. These forms are generic and written with the interests of multiple parties in mind. The parties agree to carefully review the GAR Forms to be used in this transaction and modify the same to meet their specific needs. If any party has any questions about their rights and obligations under any GAR form, they should consult an attorney. Provisions in the GAR Forms may be subject to differing interpretations by our courts other than what the parties may have intended. Our courts may at times strike down or not enforce provisions in our GAR Forms, as written. No representation is made that the GAR Forms will protect the interests of any particular party or will be fit for any specific purpose. The parties hereto agree that the GAR forms may only be used in accordance with the licensing agreement of GAR. While GAR forms may be modified by the parties, no GAR form may be reproduced with sections removed, altered or modified unless the changes are visible on the form itself or in a stipulation, addendum, exhibit or amendment thereto.

**** CONTINUED: shall be subject to the jurisdiction of the United States Bankruptcy Court, Northern District of Georgia, Atlanta Division, in re: Blomquist Builders Group, Inc., Case No. 23-59198-SMS.***

**k. Governing Law and Interpretation:** This Agreement may be signed in multiple counterparts each of which shall be deemed to be an original and shall be interpreted in accordance with the laws of Georgia. No provision herein, by virtue of the party who drafted it, shall be interpreted less favorably against one party than another. All references to time shall mean the time in Georgia. If any provision herein is held to be unenforceable, it shall be severed from this Agreement while the remainder of the Agreement shall, to the fullest extent permitted by law, continue to have full force and effect as a binding contract.

**l. Independent Contractor Relationship:** This Agreement shall create an independent contractor relationship between Broker and Seller. Broker shall at no time be considered an employee of Seller. Unless otherwise stipulated, all affiliated licensees of Broker are independent contractors of Broker.

**m. No Imputed Knowledge:** Seller acknowledges and agrees that with regard to any property which Seller intends to sell, there shall be no knowledge imputed between Broker and Broker's licensees or between the different licensees of Broker. Broker and each of Broker's licensees shall be deemed to have only actual knowledge of such properties.

**n. Notices Between Seller and Broker:**

(1) Communications Regarding Real Estate Transactions: Seller acknowledges that many communications and notices in real estate transactions are of a time sensitive nature and that the failure to be available to receive such notices and communications can have adverse legal, business and financial consequences. During the term of this Agreement, Seller agrees to remain reasonably available to receive communications from Broker.

(2) Notices between Broker and Seller Regarding this Agreement: Seller and Broker agree that communications and notices between them regarding the terms of this Agreement shall be in writing, signed by the party giving the notice, and may be delivered in person or to any address, email address and/or facsimile number to the person to whom the communication or notice is being given specifically set forth in this Agreement. It is the intent of the parties that those means of transmitting notices for which a party has not provided an address or number shall not be used for receiving notices and communications. For example, if a party has not provided an email address in this Agreement, it shall mean that the party is not accepting notices or communications sent by this means.

**o. Referrals:** Seller hereby authorizes Broker to refer Seller to another real estate licensee or broker for brokerage or relocation services, or to a builder for services, not related to the sale of the Property. Seller acknowledges and agrees that Broker may receive a valuable consideration for the referral.

**p. Survival:** The rights and obligations of Broker to Compensation subsequent to the termination or expiration of this Agreement as set forth herein, the limitation of liability, the obligation to arbitrate and indemnify Broker and other similar provisions that by their terms are meant to protect Broker shall survive the termination of this Agreement.

**q. Third Party Vendors:** Broker may provide Seller with the names of vendors to perform services on behalf of Seller relative to real estate transactions involving Seller. Broker does not warrant or endorse the performance of any such vendor and the names of vendors are provided solely as a courtesy and starting point for Seller to identify possible vendors to perform services on behalf of Seller. Seller agrees to do his or her own due diligence regarding the skills, expertise and reputation of all such vendors performing services for Seller and the terms of all contracts with vendors (including whether there is a limitation of liability in such contracts). All decisions regarding which vendor to hire shall be solely that of Seller.

**r. Time of Essence:** Time is of the essence of this Agreement.

**s. Use of Initials "N/A":** The use of the initials "N/A" or "N.A." in filling out a blank in this Agreement shall mean "not applicable".

**7. <u>Broker's and Seller's Duties</u>.**

**a. Broker's Duties to Seller.** Broker shall promote the interests of the Seller by:

1. seeking a sale price at the price and terms stated in this Agreement or at a price and terms acceptable to Seller; provided, however, Broker shall not be obligated to seek additional offers to purchase the Property while the Property is subject to a Contract to Sell, unless brokerage engagement so provides;
2. timely presenting all offers to and from the Seller, even when Property is subject to a Contract to Sell;
3. disclosing to the Seller material facts which the Broker has actual knowledge concerning the transaction;
4. advising Seller to obtain expert advice as to material matters which are beyond the expertise of Broker; and
5. timely accounting for all money and property received in which the Seller has or may have an interest.

**b.** Broker shall keep confidential all information received by Broker during the course of the engagement which is made confidential by an express request or instruction from Seller unless Seller permits such disclosure by subsequent word or conduct, or such disclosure is required by law; provided, however, that disclosures between Broker and any of Broker's affiliated licensees assisting Broker in representing Seller shall not be deemed to breach the duty of confidentiality described above.

**c. Seller's Duties.** Seller will do the following:

1. cooperate with Broker to sell the Property to prospective buyers and will refer all inquiries concerning the sale of Property to the Broker during the term of this Agreement;
2. make the Property available for showing at reasonable times as requested by Broker;
3. provide Broker with accurate information regarding the Property (including information concerning all adverse material facts pertaining to the physical condition of Property);
4. comply with all local, state and federal laws applicable to the sale of the Property; and
5. carefully read all Contracts to Sell before signing them and comply with all duties and all time deadlines contained therein.

8. **Seller Default.**

a. **Events Constituting a Seller Default.** Seller shall be in breach of this Agreement if Seller:

1. Terminates this Agreement prior to the end of the Agreement without the prior written agreement of Broker. Broker removing the listing from multiple listing service(s), taking down Broker's sign, ceasing to market the Property after this Agreement is unilaterally terminated by Seller and other similar activities shall not be evidence of the Broker's agreement to mutually terminate this Agreement, but shall instead merely be an acquiescence by Broker of the unilateral termination by Seller;
2. Defaults under any Contract to Sell the Property resulting in such contract not closing;
3. Agrees with a buyer of the Property to terminate a Contract to Sell without the consent of Broker; or
4. Refuses to accept a lawful, bona fide, written offer to purchase the Property meeting the following terms and conditions at a time when the Property is not otherwise under contract:
   i. The purchase price in the offer, after deducting all fees, costs and contributions to be paid by the Seller (other than the real estate brokerage Compensation to be paid by Seller and the Seller's payment of ad valorem real property taxes through the date of closing) is for at least the full listing price set forth herein and is to be paid in cash or cash equivalent at the closing;
   ii. The offer is not subject to contingencies, conditions precedent, due diligence periods, or required terms other than those set forth herein;
   iii. The offer is not subject to Seller warranties or representations other than: (i) those warranties the Seller agrees to provide in any Seller's Property Disclosure Statement the Seller has filled out and made available to prospective buyers for inclusion in any offer, and (ii) the Seller warranting to convey good and marketable title (which for all purposes herein shall have the same meaning as set forth in the GAR Purchase and Sale Agreements) to the Property at closing by limited warranty deed; and
   iv. The date of closing in the offer is not less than thirty (30) days nor more than forty-five (45) days from the offer date.

Notwithstanding the above, in the event there are multiple offers to purchase the Property meeting the above criteria, Seller shall not be in breach of this Agreement if the Seller first gives the prospective buyers a reasonable opportunity (not exceeding ten (10) days from the date of the first offer) to make their best offer to purchase the Property and Seller accepts one of the offers.

b. **Broker Remedies for Seller Default.** Seller shall immediately pay Broker the Compensation referenced herein for any of the Seller defaults above, except for Seller unilaterally terminating this Agreement prior to the end of the Listing Period (as the same may have been extended as provided for herein). With respect to this event of default, Seller's obligation to pay Broker its Compensation shall be controlled by the Protected Period sections of this Agreement.

~~c. **Seller Default.** In the event Seller defaults under this Agreement, Seller shall, in addition to its other obligations set forth elsewhere herein, immediately reimburse Broker for the out-of-pocket costs and expenses incurred by Broker and Broker's affiliated licensees in seeking to market and sell the Property. Such costs and expenses shall include, without limitation, printing, and copying charges, mileage at the highest rate allowed by the IRS as a business deduction and expenses to advertise the Property in various media. Seller shall also pay all costs, fees and charges for removing the listing from any multiple listing service. The payment of these costs, fees, charges and expenses by Seller shall not waive or limit Broker's right to assert any other claim, cause of action or suit (hereinafter collectively, "Claims") against Seller for Broker's Compensation and /or other damages and shall not release Seller from such Claims. Notwithstanding the above, the amount of such fees, charges, costs and expenses paid by Seller to Broker hereunder shall be an offset against any Claim of Broker for Compensation.~~ ** See below*

9. **WARNING TO BUYERS AND SELLERS: BEWARE OF CYBER-FRAUD.** Fraudulent emails attempting to get the buyer and/or Seller to wire money to criminal computer hackers are increasingly common in real estate transactions. Specifically, criminals are impersonating the online identity of the actual mortgage lender, closing attorney, real estate broker or other person or companies involved in the real estate transaction. In that role, the criminals send fake wiring instructions attempting to trick buyers and/or sellers into wiring them money related to the real estate transaction, including, for example, the buyer's earnest money, the cash needed for the buyer to close, and/or the Seller's proceeds from the closing. These instructions, if followed, will result in the money being wired to the criminals. In many cases, the fraudulent email is believable because it is sent from what appears to be the email address/domain of the legitimate company or person responsible for sending the buyer or Seller wiring instructions. The buyer and/or Seller should verify wiring instructions sent by email by independently looking up and calling the telephone number of the company or person purporting to have sent them. Buyers and Sellers should never call the telephone number provided with wiring instructions sent by email since they may end up receiving a fake verification from the criminals. Buyer and Sellers should be on special alert for: 1) emails directing the buyer and/or Seller to wire money to a bank or bank account in a state other than Georgia; and 2) emails from a person or company involved in the real estate transaction that are slightly different (often by one letter, number, or character) from the actual email address of the person or company.

10. **STATUTE OF LIMITATIONS: FOR AND IN CONSIDERATION OF THE SUM OF $10.00 AND OTHER GOOD AND VALUABLE CONSIDERATION, THE RECEIPT AND SUFFICIENCY OF WHICH ARE THEREBY ACKNOWLEDGED, ALL CLAIMS OF ANY NATURE WHATSOEVER AGAINST BROKER AND/OR THEIR AFFILIATED LICENSEES, AND ANY OTHER REAL ESTATE BROKER AND THEIR AFFILIATED LICENSEES INVOLVED IN ANY TRANSACTION IN WHICH SELLER CONTRACTS TO SELL THE PROPERTY, WHETHER ASSERTED IN LITIGATION OR ARBITRATION AND SOUNDING IN BREACH OF CONTRACT AND/OR TORT, MUST BE BROUGHT WITHIN ONE (1) YEAR FROM THE DATE ANY CLAIM OR CAUSE OF ACTION ARISES. SUCH ACTIONS SHALL THEREAFTER BE TIME-BARRED. ALL SUCH BROKERS SHALL BE EXPRESS THIRD-PARTY BENEFICIARIES OF THIS PROVISION.**

**** NOT APPLICABLE - ALL SELLER DEFAULT PROVISIONS SHALL BE SUBJECT TO FURTHER ORDER OF THE BANKRUPTCY COURT.***

11. **Brochures.** Brochures referenced herein are prepared courtesy of GAR. The recommendations contained therein are general in nature and may not be applicable to the transaction reflected in this Agreement, and are not intended to either be exhaustive or specific advice that Seller should rely on without Seller first consulting with independent experts and professionals of Seller's own choosing to ensure that Seller is protected.

**The following Brochures have been received by the Seller(s):** (Check all that apply. Any box not checked means the Seller(s) has not received that brochure or other consumer information)

- ☐ GAR CB01 – The ABC's of Agency
- ☐ GAR CB04 – Lead-Based Paint Pamphlet
- ☐ GAR CB07 – Mold Pamphlet
- ☐ GAR CB08 – EPA Home Buyer's and Seller's Guide to Radon Pamphlet
- ☐ GAR CB10 – Protect Yourself When Selling Real Property
- ☐ GAR CB28 – What Buyers and Sellers Should Know About Short Sales and Distressed Properties
- ☐ GAR CB29 – What to Know about Buying Agricultural Land and Land Near Military Bases, Installations and Airports
- ☐ Other: ______________________________
- ☐ Other: ______________________________

12. **Exhibits and Addenda.** All exhibits and/or addenda attached hereto, listed below, or referenced herein are made a part of this Agreement. If any such exhibit or addenda conflicts with any preceding paragraph (including any changes thereto made by the parties), said exhibit or addendum shall control:

- ☐ Legal Description Exhibit (F807 or other) "________"
- ☐ Lead-Based Paint Exhibit (F316) "________"
- ☐ Retainer Fee Exhibit (F149) "________"
- ☒ Other: Special Stipulations Exhibit "B"
- ☐ Other: ______________________________

**SPECIAL STIPULATIONS:** The following Special Stipulations, if conflicting with any exhibit, addendum, or preceding paragraph, shall control:

☐ **Additional Special Stipulations (F246) are attached.**

Copyright© 2026 by Georgia Association of REALTORS®, Inc.

**BY SIGNING THIS AGREEMENT, SELLER ACKNOWLEDGES THAT: (1) SELLER HAS READ ALL PROVISIONS AND DISCLOSURES MADE HEREIN; (2) SELLER UNDERSTANDS ALL SUCH PROVISIONS AND DISCLOSURES AND HAS ENTERED INTO THIS AGREEMENT VOLUNTARILY; AND (3) SELLER IS NOT SUBJECT TO A CURRENT SELLER BROKERAGE ENGAGEMENT AGREEMENT WITH ANY OTHER BROKER. IF A LICENSEE IS SIGNING THIS AGREEMENT ON BEHALF OF BROKER, LICENSEE WARRANTS THAT LICENSEE HAS FULL AUTHORITY TO SIGN THIS AGREEMENT AND BIND BROKER HERETO.**

## SELLER'S ACCEPTANCE AND CONTACT INFORMATION

If Seller is a legal entity, this Agreement must be signed by one or more authorized persons, as required in the entity's legal documents. The person's signature must include the capacity in which the person is signing, such as "Trustee", "General Partner", "Manager", "President", etc.

Trustee

1 **Seller's Signature**

*S. Gregory Hays, as and only as Trustee for the Bankruptcy Estate of Blomquist Builders Group, Inc.*

Print or Type Name Date

Seller's Address for Receiving Notice

Seller's Phone Number: ☐ Cell ☐ Home ☐ Work

Seller's Email Address

☐ **Additional Signature Page (F146) is attached.**

2 **Seller's Signature**

Print or Type Name Date

Seller's Address for Receiving Notice

Seller's Phone Number: ☐ Cell ☐ Home ☐ Work

Seller's Email Address

## BROKER / BROKER'S AFFILIATED LICENSEE CONTACT INFORMATION

Chambers Select Realty
Brokerage Firm

Bill Celler
**Broker/Affiliated Licensee Signature**

Wendy Chambers/Bill Celler — 9.8.26
Print or Type Name — Date

404-593-5156
Licensee's Phone Number

Fax Number

356558
GA Real Estate License Number

CHAM01
MLS Office Code

78991
Brokerage Firm License Number

404-593-5156
Broker's Phone Number

Fax Number

444 Manget Street Marietta GA 30060
Broker's Address

wendy@chambersselect.com
Licensee's Email Address

Cobb
REALTOR® Membership

RECEIPT OF A COPY OF THIS AGREEMENT IS HEREBY ACKNOWLEDGED BY SELLER.

The above Agreement is hereby accepted ________ o'clock _____ .m. on the date of ______________________________.

Copyright© 2026 by Georgia Association of REALTORS®, Inc.

# Exhibit "B"

The following Special Stipulations, if conflicting with any preceding paragraph, shall control:

1. The "Seller" of the Property means S. Gregory Hays, as and only as Chapter 7 Trustee for the Bankruptcy Estate of Blomquist Builders Group, Inc. (Case No. 23-59198-SMS).

2. Seller's Property Disclosure Statement and Official Wood Infestation Report. Seller and Listing Broker have no specific knowledge and make no representations concerning the condition of the Property. Purchaser understands that the Property is being sold "AS IS", "WHERE IS".

3. Seller warrants that Seller has title to the Property described herein and/or will have full authority to enter into this Agreement upon order of the Bankruptcy Court and that the information with respect to the Property as set out in this Agreement is true and correct to the best of the Seller's knowledge, it being understood that Trustee is a bankruptcy trustee who has no knowledge of the Property.

4. The parties hereto acknowledge that the Agreement and all terms, conditions, warranties and representations are subject to the approval (and not binding without such approval) of the U.S. Bankruptcy Court, Northern District of Georgia, Atlanta Division, in Chapter 7 Case No. 23-59198-SMS.

5. In the event Seller contracts to sell the Property to any buyer, the parties hereto acknowledge that any contract for sale of the Property is subject to and contingent upon approval of the U.S. Bankruptcy Court, Northern District of Georgia, Atlanta Division, in Chapter 7 Case No. 23-59198-SMS, and no commission shall be paid unless or until Bankruptcy Court approval and closing of the sale, at which time Trustee will execute a Trustee's Deed transferring the Property, free and clear of all liens, interests and encumbrances.

6. All parties agree that the closing shall take place no later than ten (10) days after the date the Court's Order approving the sale has been entered on the Court's Docket.

7. The closing attorney shall be such attorney as selected by Seller.

8. Earnest Money shall be at least two percent (2%) of the Purchase Price.

9. Seller will make no repairs to the Property.

10. In the event Seller sells or contracts to sell the Property to any buyer introduced to the Property by said broker within sixty (60) days after expiration of the listing period, then Seller shall pay the commission to said broker at the rate set herein at the closing on the sale or exchange of the Property subject to bankruptcy court approval.

____________________________ ____________________________

**EXHIBIT "C" FOLLOWS**

# EXCLUSIVE SELLER BROKERAGE ENGAGEMENT AGREEMENT

GeorgiaREALTORS®

**2026 Printing**

**State law prohibits Broker from representing Seller as a client without first entering into a written agreement with Seller under O.C.G.A. § 10-6A-1 et. seq.**

## A. KEY TERMS AND CONDITIONS

1. **Exclusive Seller Brokerage Engagement Agreement.** For and in consideration of the mutual promises contained herein and other good and valuable consideration, the undersigned seller(s) ("Seller") and the undersigned broker (hereinafter "Broker" or "Seller's Broker") do hereby enter into this Exclusive Seller Brokerage Engagement Agreement ("Agreement") for Broker to exclusively represent Seller in listing and selling the property described below ("Property") for sale on the terms and conditions set forth herein.
   a. **Property Identification:** Address: 5749 Sunburst Drive
   City Powder Springs, County Cobb, Georgia, Zip Code 30127
   Tax Parcel I.D. Number: 20-0340-0-103-0
   b. **Legal Description:** The legal description of the Property is *[select one of the following below]*:
   ☒ (1) attached as an exhibit hereto;
   ☐ (2) the same as described in Deed Book ________, Page ______, et. seq., of the land records of the above county; **OR**
   ☐ (3) Land Lot(s) ________________ of the ________________ District, ____________________ Section/ GMD, Lot __________, Block ______________, Unit _____________, Phase/Section ________________ of____________________________________Subdivision/Development, according to the plat recorded in Plat Book ____________, Page ___________, et. seq., of the land records of the above county; **OR**
   ☐ (4) described below if Property is a condominium unit and a full unit legal description is to be used **[NOT TO BE USED IF PROPERTY IS A FEE SIMPLE TOWNHOME]**:
   Unit _____ of ______________________________________________ Condominium ("Condominium"), located in Land Lot _____________ of the _________ District of _________________ County, Georgia, together with its percentage of undivided interest in the common elements of the Condominium, and its interest in the limited common elements assigned to the unit ("Unit"). The Condominium was created pursuant to the Declaration of Condominium for any Condominium ("Declaration"), recorded in Deed Book ________________, Page ____________________, et seq.,__________________________ County, Georgia records ("Declaration"), and shown and delineated on the plat of survey filed in Condominium Plat Book____________, Page__________, ______________________________ County, Georgia records, and on the floor plans filed in Condominium Floor Plan Book __________, Page __________, ______________________________ County, Georgia records.
2. **List Price and Listing Period.**
   a. The price at which the Property shall be listed for sale is $ 100000 ("List Price").
   b. **Commencement Date of Agreement:** ______________________________. This Agreement shall commence and be effective upon it being signed by Seller and Broker and a signed copy delivered to both parties.
   c. **Ending Date of Agreement:** 2/28/2027. This shall be the last full date of the Agreement after which it shall terminate and no longer be in effect unless the parties agree in writing to extend it.
   d. **Listing Period.** The term of this Agreement shall also be known as the listing period or listing term.
3. **Marketing.**
   a. **Selection of Multiple Listing Service(s).** Broker agrees to file the listing with the following Multiple Listing Service(s) ("MLS(s)"): Gamls and FMLS
   b. **DELIVERY OF AGREEMENT TO AND LISTING WITH MLS.** THIS AGREEMENT SHALL BE TIMELY DELIVERED TO AND LISTED WITH THE ABOVE-REFERENCED MULTIPLE LISTING SERVICE(S) IN ACCORDANCE WITH THE RULES OF SUCH MULTIPLE LISTING SERVICE(S), WHICH MAY LIMIT THE AVAILABILITY AND TIME DURATION OF THE MARKETING OPTIONS BELOW. THIS OBLIGATION AND THESE LIMITATIONS SHALL CONTROL OVER ANY CONFLICTING OR INCONSISTENT LANGUAGE CONTAINED HEREIN.
   c. **Marketing Commencement Date:** 9/1/2026 This shall be the date when the Property is first marketed to the public. Seller shall have the right, upon notice to Broker, to move this date up or back by not more than 20 days.

**THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH** Wendy Gravlin Chambers **IS INVOLVED AS A REAL ESTATE LICENSEE. UNAUTHORIZED USE OF THE FORM MAY RESULT IN LEGAL SANCTIONS BEING BROUGHT AGAINST THE USER AND SHOULD BE REPORTED TO THE GEORGIA ASSOCIATION OF REALTORS® AT (770) 451-1831.**
**Copyright© 2026 by Georgia Association of REALTORS®, Inc.**

i. **Coming Soon.** If offered by the MLS, Seller ☐ directs or ☒ does not direct Broker to file the Property listing in the MLS(s) listed above in "Coming Soon" status for _____ days prior to the Marketing Commencement Date, during which time the Property will be visible to MLS participants as Coming Soon, but the Property may not be shown to the public or purchased during this period. At the end of this period, the Property will be changed to "Active" status and marketed to the public as set forth in Section A.3.(c) above. The maximum Coming Soon status period is set by the MLS. If the Coming Soon status period herein exceeds the maximum days permitted by the MLS, then the MLS maximum shall control.

**d. MLS Marketing Options:** Within one (1) business day of the Marketing Commencement Date, the listing must be filed with the MLS(s) listed above. Seller directs Broker to market the Property for sale using the Multiple Listing Service option selected below: *[Select the option below which applies. The options not selected shall not become part of this Agreement.]*

☒ **(1) Immediate Public Marketing Option.** The listing will be immediately visible to MLS participants and may be electronically distributed through Internet Data Exchange ("IDX") so that MLS participants can display it on their websites. The Property may also be distributed through syndication to make it available to be viewed on various third-party websites such as REALTOR.COM, Zillow, or Homes.com. Such listings are considered to be active listings and the Property may be shown to potential buyers.

☐ **(2) Delayed Marketing Exempt Option.** The listing will be immediately visible to MLS participants and may appear on the websites of Broker and Broker's licensees. However, marketing of the Property by other brokers through the IDX and syndication to third-party websites will be delayed for a period of _______ days. During the Delayed Marketing Exempt Period, the listing will not appear on other brokers' websites or on websites like REALTOR.COM, Zillow and Homes.com. Such listings are considered active listings and the Property may be shown to potential buyers.

☐ **(3) Office Exclusive Marketing Option.** The Property will initially be marketed through an office exclusive period of _______ days during which time the Property listing will only be available to licensees affiliated with Broker. During the Office Exclusive Marketing period, the Property listing will be submitted to the MLS(s) listed above; however, the listing will neither be marketed publicly nor disseminated through the MLS and will not be visible to other MLS participants. Such listings are considered to be active listings and the Property may be shown to potential buyers.

**e. Disclaimer:** BY SIGNING THIS AGREEMENT, SELLER UNDERSTANDS AND ACKNOWLEDGES THAT IF SELLER IS DELAYING THE PUBLIC MARKETING OF THE PROPERTY, BY SELECTING AN OFFICE EXCLUSIVE MARKETING OPTION OR THE DELAYED MARKETING EXEMPT OPTION, SELLER MAY NOT MAXIMIZE EITHER THE NUMBER OF OFFERS SELLER RECEIVES OR THE PRICE OFFERED TO BUY THE PROPERTY. SELLER NEVERTHELESS KNOWINGLY WAIVES THE POTENTIAL BENEFITS OF IMMEDIATE PUBLIC MARKETING.

**4. <u>Compensation to Broker(s) for Professional Services ("Compensation").</u>**

**a. Generally:** Compensation to Broker(s) is negotiable and is not set by law.

**b. Compensation to Seller's Broker:** Seller agrees to pay Seller's Broker the following Compensation at the closing of any Contract to Sell (as that term is hereinafter defined) of the Property as follows:

☒ ______Six______ percent ( 6 %) of the purchase price;

☐ $________________________;

☐ (other) ________________________.

**c. Whether Compensation is Offered to Buyer's Broker:** Seller hereby approves the following: *[Select all which are applicable]*

☐ (1) not initially offering Compensation to Buyer's Broker but marketing that Seller is open to receiving offers in which Seller pays Compensation to Buyer's Broker;

☒ (2) Compensation being offered to Buyer's Broker by either; ☐ Seller (in addition to the Compensation being paid to Seller's Broker); ☒ Seller's Broker (out of the Compensation being paid to Seller's Broker); or ☐ Seller and Seller's Broker as set forth in "other" section below:

☒ ______Three______ percent ( 3 %) of the purchase price;

☐ $________________________;

☐ (other) ________________________

☐ If Seller's offer of Compensation to the Buyer's Broker is conditional, specify the conditions here: ________________________;

**OR**

☐ (3) No Compensation being offered or marketed to Buyer's Brokers.

For all purposes herein, the term "Buyer's Broker" shall mean the Broker, including the Broker representing the Seller, if they are also working with or representing the buyer as a customer or client. If buyer or Buyer's Broker does not request or accept the full amount of Compensation being offered by Seller's Broker, the remainder shall be additional compensation to Seller's Broker.

**d. Separate Compensation on Lease.** If Seller leases the Property or enters into a lease/purchase agreement or a lease with an option to purchase agreement during this Agreement, Seller shall also pay Broker a separate leasing Compensation in the amount of $____0____ and as follows: NA

Notwithstanding any provision to the contrary contained herein, the payment of a leasing Compensation (including in lease/purchase transactions or lease with an option to purchase transactions) shall not relieve Seller from paying the Compensation at the closing of a Contract to Sell, as provided elsewhere in this Agreement.

Copyright© 2026 by Georgia Association of REALTORS®, Inc. 

5. **Protected Period.** The length of Protected Period during which time Broker shall be entitled to Compensation under certain circumstances where this Agreement has been unilaterally terminated by Seller or has expired, shall be 30 days.

6. **Agency and Brokerage.**
   a. The following are types of agency relationship(s) **NOT** offered by Broker:
      ☐ seller agency ☐ buyer agency ☐ designated agency ☒ dual agency ☒ sub-agency ☒ tenant agency ☒ landlord agency
   b. If Broker offers dual agency as one of its agency relationships above, Seller ☐ does or ☒ does not consent to Broker acting in a dual agency capacity, as that agency relationship is explained in Section B.6(b) below and in the CB01 ABCs of Agency. Seller expressly consents to Broker acting in any other agency relationship offered by Broker.

7. **Lead-Based Paint Disclosure.** Federal law requires disclosure of lead-based paint in homes/residential properties, or a portion thereof, constructed prior to 1978. *[select one below]*
   a. ☐ A dwelling on the Property, or portion thereof, was constructed prior to 1978, Seller agrees to complete and provide Broker with a signed Lead-Based Paint Disclosure Exhibit (F316) at the same time as the signing of this Agreement and is attached as Exhibit "___".
   **OR**
   b. ☒ No dwelling on the Property, or portion thereof, was constructed prior to 1978.

8. **Seller Has the Following Special Circumstances That Will Require Third-Party Approval Before Seller Can Do the Following:**
   a. **List the Property for Sale:**
      ☒ (1) **Bankruptcy:** Seller has filed for bankruptcy protection and this Agreement is made contingent upon the bankruptcy court authorizing the listing of the Property for sale.
      ☐ (2) **Divorce:** Seller has filed for divorce and this Agreement is made contingent upon the court having jurisdiction over the divorce action authorizing the listing of the Property for sale.
      ☒ (3) **Other (Please describe):** ** See below*
   b. **Contract to Sell the Property:**
      ☒ (1) **Bankruptcy:** Seller has filed for bankruptcy protection. Any purchase and sale agreement for the sale of the Property will need to be conditioned upon the approval of the bankruptcy court.
      ☐ (2) **Divorce:** Seller has filed for divorce. Any purchase and sale agreement for the sale of the Property will need to be conditioned upon the approval of the court having jurisdiction over the divorce.
      ☐ (3) **Short Sale:** The sale of the Property will not generate sufficient proceeds to pay off the Broker's Compensation and all mortgages or liens on the Property. Therefore, the purchase and sale agreement for the sale of the Property will need to be made contingent upon the mortgage lender(s) and other lien holders agreeing to take less than the face amount of what they are owed.
      ☐ (4) **Seller Not on Title:** Seller does not yet have title to the Property and the purchase and sale agreement for the Property ☐ will or ☐ will not need to be subject to Seller acquiring title to the Property.
      ☒ (5) **Other (Please describe):** *Upon Bankruptcy Court approval of the sale, Seller will execute a Trustee's Deed conveying title to the Purchaser(s).*

9. **Negotiation.** Seller ☒ does **OR** ☐ does not authorize the Broker to assist, to the extent requested by Seller, in negotiating the terms of and filling out a pre-printed form contracts for Seller's review and approval.

**B. FURTHER EXPLANATIONS TO CORRESPONDING PARAGRAPHS IN SECTION A.**

1. **Exclusive Seller Brokerage Engagement Agreement.** Seller has the full authority to enter into this Agreement for the listing of Seller's Property for sale. This Agreement may not be amended except by the written agreement of Seller and Broker. The failure of the parties to adhere strictly to the terms and conditions of this Agreement shall not constitute a waiver of the right of the parties later to insist on such strict adherence. Seller is not a party to any other exclusive Seller brokerage engagement agreement and all such previous agreements, if any, have expired and not been renewed. Seller acknowledges that Seller may have to pay a previous broker Compensation if Seller is subject to a current Seller brokerage engagement agreement or has unilaterally terminated a previous Seller brokerage engagement agreement without the consent of the previous broker.

2. **List Price and Listing Period.**
   a. **List Price:** Seller agrees to list the Property for sale at the list price specified in this Agreement. The failure of the Property to be shown or sell at the list price may be an indication that the list price for the Property is too high.
   b. **Initial Listing Period When Property Is Under Contract to Sell:** If the Property is under a Contract to Sell, as that term is defined below, during the Listing Period, but the Listing Period expires prior to the closing, then the Listing Period shall be automatically extended through the closing of the Contract to Sell.
   c. **Extension:** If during the term of this Agreement, Seller and a prospective buyer enter into: 1) a real property purchase and sale agreement for the Property; 2) a contract to exchange property, including the Property; 3) an option contract for the sale of the Property; or 4) a contract to sell the shares or partnership or membership interests in the legal entity constituting Seller (hereinafter, collectively referred to in this Agreement as a "Contract to Sell") which is not consummated or closed for any reason whatsoever, then the Listing Period may be extended unilaterally by Broker for the number of days that Property was under the Contract to Sell (hereinafter, "Extension Period") by Broker providing written notice of the same to Seller within five (5) days of the Contract to Sell not being consummated but in no event later than prior to the expiration of this Agreement (hereinafter, "Notification Period"). If such written notice is not given before the end of the Notification Period, then the Extension Period for that transaction shall be deemed to have been waived by Broker.

** Seller is a federal bankruptcy trustee and has never seen or had any knowledge of the property. Seller makes no warranties or representations. Property is being sold as is, where is, with all faults and subject to bankruptcy court approval.*

Copyright© 2026 by Georgia Association of REALTORS®, Inc.

3. **Marketing.**
   a. **Generally:** Broker is exclusively authorized to market and advertise the Property for sale to the public through any means of Broker's choosing. This may include, without limitation, flyers, brochures, videos, yard and window signs, including "For Sale" signs, open houses and mailings. Marketing information about the Property may be posted on websites, placed in electronic and print media and multiple listing services and sent by email, text and all other means. Seller agrees not to market the Property during the term of this Agreement.
   b. **Ownership of Marketing Materials:** Any photography and marketing materials paid for or created by Broker shall be the property of Broker. Such materials shall not be used without the prior written permission of Broker. Any photography and marketing materials paid for by Seller shall be the property of Seller.
   c. **Liability for Misinformation:** Seller warrants that any information Seller provides to Broker, which Broker then uses to market and advertise the Property, shall be accurate and complete. Seller hereby agrees to indemnify and hold Broker harmless from any and all claims, causes of action, suits and damages arising out of or resulting from Seller providing misinformation to Broker.
   d. **Images:** Seller agrees to remove any personal property prior to listing the Property of which Seller does not want images to be so captured. Broker shall not be liable to Seller if other brokers or buyers take photographs, videos or use other technology to capture and manipulate images of the Property without the permission of the Seller and Broker.
   e. **Multiple Listing Service(s):** Broker agrees to file this Agreement with the above referenced Multiple Listing Service(s) within one (1) business day of the Marketing Commencement Date, which shall be the date the Property is made available to the public. Seller acknowledges that the MLS(s) is/are not a party to this Agreement and is/are not responsible for errors or omissions on the part of Seller or Broker. Seller agrees to indemnify Service(s) from and against any and all claims, liabilities, damages or losses arising out of or related to the listing and sale of Property. Seller acknowledges that by virtue of listing the Property in MLS(s), all MLS(s) members and their affiliated licensees, will have access to Seller's listing information for the purpose of assisting Seller in the sale of the Property.
   f. **Consent of Seller to be Called:** If Seller is on a "Do Not Call List," Seller expressly consents to Broker calling Seller for any purpose related to the sale of the Property. This paragraph shall survive the termination of this Agreement.
   g. **Lockboxes:** A lockbox may be used in connection with the marketing of Property. There have been isolated instances of reported burglaries of homes on which lockboxes have been placed and for which the lockbox has been alleged to have been used to access the home. In order to minimize the risk of misuse of the lockbox, Broker recommends against the use of lockboxes on door handles that can be unscrewed from the outside or on other parts of the home from which the lockbox can be easily removed. Since prospective buyers and others will have access to Property, Seller agrees to either remove all valuables, prescription drugs and/or keys, or put them in a secure place.

4. **Compensation for Professional Services of Seller's Broker ("Compensation").**
   a. **Obligation to Pay Compensation to Seller's Broker**: In the event that Seller enters into a Contract to Sell or lease, lease/purchase, or lease with an option to purchase the Property or any portion thereof during the term of this Agreement with any buyer, Seller agrees to pay Seller's Broker's Compensation at the closing (regardless of whether the closing is during or after the term of this Agreement), and if applicable, Seller's Broker's Leasing Compensation prior to the commencement of a lease, lease/purchase, or lease with an option to purchase.
   b. **Optional Compensation to Buyer's Broker:** Seller shall have no obligation to pay the Compensation of the Buyer's Broker. However, some Sellers approve such Compensation being offered and paid for by either the Seller or the Seller's Broker. If Seller has agreed to offer Compensation to the Buyer's Broker on any Contract to Sell, it shall be paid in full at the closing. If Seller does not approve offering Compensation to the Buyer's Broker, then the buyer shall be solely responsible for paying the Buyer's Broker's Compensation.
   c. **Separate Compensation on Lease:** Notwithstanding the above, if Seller leases real property or enters into a lease/purchase or lease with an option to purchase contract during this Agreement, Seller shall also pay Broker a separate leasing Compensation in the amount as indicated elsewhere in this Agreement. Notwithstanding any provision to the contrary contained herein, the payment of leasing Compensation (including in lease purchase and lease with an option to purchase transactions) shall not relieve Seller from paying the Compensation at the closing of a Contract to Sell, as provided elsewhere in this Agreement.

5. **Protected Period.** The Protected Period shall be the period of time set forth in this Agreement commencing upon the expiration or the unilateral termination of this Agreement by Seller during which Broker shall be protected for its Compensation (or leasing Compensation, as applicable). If this Agreement is unilaterally terminated by Seller without the consent of the Broker, the Protected Period shall be: a) the number of days remaining on what would have been the original listing period had it not been terminated, plus b) the number of days set forth as the Protected Period in Section A.5 of this Agreement. There shall be no Protected Period if Broker and Seller mutually agree to terminate this Agreement. In the event that during the Protected Period, Seller enters into a Contract to Sell or lease, lease/purchase, or lease with an option to purchase of all or any portion of the Property which during the term of this Agreement was shown to any buyer (either in person or virtually), or such buyer was provided information about the Property, either directly or through a broker working with the buyer, then Seller shall pay Broker at closing (or the commencement of the lease, lease/purchase, or lease with an option to purchase, as applicable), the Compensation or leasing Compensation set forth above. For all purposes herein, showing property to buyers virtually shall include showing the buyers the property by video or sending a video tour of the property to the buyers.

   Notwithstanding the above, if this Agreement expires (and is not unilaterally terminated by Seller) the following exception to the above Compensation obligations shall apply. Specifically, no Compensation or leasing Compensation, as applicable, shall be owing to Broker if Seller signs an exclusive seller brokerage engagement agreement with another broker and the Property is then sold or leased during the term of the Agreement with that broker.

6. **Agency and Brokerage.**
   a. **Broker's Policy on Agency:** Unless Broker has indicated elsewhere herein that Broker is not offering a specific agency relationship, the types of agency relationships offered by Broker are: seller agency, buyer agency, designated agency, dual agency, sub-agency, landlord agency, and tenant agency.

Copyright© 2026 by Georgia Association of REALTORS®, Inc. 

b. **Dual Agency Disclosure:** *[Applicable only if Broker's agency policy is to practice dual agency and Seller has consented to Broker acting in a dual agency capacity.]* If Seller and a prospective buyer are both being represented by the same Broker and the Broker is not acting in a designated agency capacity, Seller is aware that Broker is acting as a dual agent in this transaction and hereby consents to the same. Seller has been advised that:
   (1) In serving as a dual agent, Broker is representing two parties, Seller and the buyer, as clients whose interests are or at times could be different or even adverse;
   (2) Broker will disclose all adverse, material facts relevant to the transaction and actually known to the dual agent to all parties in the transaction except for information made confidential by request or instructions from either party which is not otherwise required to be disclosed by law;
   (3) Seller does not have to consent to dual agency. The consent of the Seller to dual agency has been given voluntarily in Section A and the Seller has read and understands this Agreement.
   (4) Notwithstanding any provision to the contrary contained herein, Seller hereby directs Broker, while acting as a dual agent, to keep confidential and not reveal to the other party any information which could materially and adversely affect their negotiating position except as required by law.
   (5) Broker or Broker's affiliated licensees will timely disclose to each party the nature of any material relationship with other party other than that incidental to the transaction. A material relationship shall mean any actually known personal, familial, or business relationship between Broker and a party which would impair the ability of Broker to exercise fair and independent judgment relative to another client. The other party whom Broker may represent in the event of dual agency may not be identified at the time Seller enters into this Agreement. If any party is identified after the Agreement and has a material relationship with Broker, then Broker shall timely provide to Seller a disclosure of the nature of such relationship.
   (6) Upon signing this brokerage engagement with the dual agency disclosures contained herein, Seller's consent to dual agency is conclusively deemed to have been given and informed in accordance with state law, provided that Seller has consented to Broker acting in a dual agency capacity in Section A(6) above.

c. **Designated Agency Disclosure:** *[Applicable only if Broker's agency policy is to practice designated agency.]* Seller does hereby consent to Broker acting in a designated agency capacity in transactions in which Broker is representing Seller and a prospective buyer, but where Broker assigns one or more of its affiliated licensees exclusively to represent the Seller and one or more of its other affiliated licensees exclusively to represent the prospective buyer.

d. **No Other Adverse Agency Relationships:** Unless specified herein, Broker has no other known agency relationships with other parties which would conflict with any interests of Seller (except that Broker may represent other buyers, sellers, landlords, and tenants in buying, selling or leasing property).

7. **Lead-Based Paint Disclosure.** As required by federal law (Residential Lead-Based Paint Hazard Reduction Act of 1992, Title X), if any portion of a residential dwelling was built prior to 1978, the Lead-Based Paint Disclosure Exhibit (F316) is hereby attached as an exhibit to this Agreement. The term "residential dwelling" includes any painted fixture or material used therein that was built or manufactured prior to 1978. Seller understands that Seller must (1) disclose to the buyer the presence of known lead-based paint and/or lead-based paint hazards; (2) provide the buyer with all available records and reports pertaining to lead-based paint and lead-based paint hazards in the residential housing; (3) provide the buyer with a lead-based paint hazard information pamphlet, in a form approved by the Environmental Protection Agency; and (4) permit the buyer to have a 10 day period to conduct a risk assessment or inspection for the presence of lead-based paint hazards.

8. **Special Circumstances.**
   a. The sale of Property is contingent upon a third party's approval as indicated above. It shall be Seller's responsibility to seek to fulfill any contingency or condition selected herein, if any, and ensure that the purchase and sale agreement is made subject to any such contingency or condition.
   b. Broker agrees to keep confidential all information which Seller asks to be kept confidential by express request or instruction unless Seller permits such disclosure by subsequent word or conduct or such disclosure is required by law. Seller acknowledges, however, that buyer and buyer's broker may possibly not treat any offer made by Seller (including its existence, terms and conditions) as confidential unless those parties have entered into a Confidentiality Agreement with Seller.
   c. Broker may not knowingly give customers false information.
   d. In the event of a conflict between Broker's duty not to give customers false information and the duty to keep the confidences of Seller, the duty not to give customers false information shall prevail.

9. **Negotiation.** While Broker may assist Seller in negotiating the terms of a Contract to Sell, if Seller has elected to have Broker assist in this role, all decisions regarding price, terms and other conditions in a Contract to Sell shall still be made by Seller.

**C. OTHER TERMS AND CONDITIONS**

~~1. **Seller's Property Disclosure Statement.** Georgia law (O.C.G.A. §51-6-2) requires that a Seller disclose known latent defects in the Property which could not be observed by Buyer upon a reasonable inspection of the Property. This is the case even if the Property is sold in "as is" condition. Within three (3) days of the date of this Agreement, Seller agrees to provide Broker with a current, fully executed Seller's Property Disclosure Statement (F301, F304 or F307) or Disclosure of Latent Defects & Fixtures Checklist (F302). Broker is hereby authorized to distribute the Seller's Property Disclosure Statement to buyers interested in Property. Seller agrees to promptly update any of the above-referenced disclosure documents through the Closing should any changes occur.~~ *See below*

**** NOT APPLICABLE. NO DISCLOSURE STATEMENT WILL BE PROVIDED BY SELLER.***

9-8-26

2. **HAZARDOUS CONDITIONS ON PROPERTY.** SELLER ACKNOWLEDGES THAT BROKER HAS NO DUTY TO INSPECT THE PROPERTY FOR DEFECTS, HAZARDOUS CONDITIONS, REPAIRS OR ANY OTHER MATTER. SELLER OWES A DUTY OF REASONABLE CARE TO KEEP THE PROPERTY SAFE FOR PROSPECTIVE BUYERS AND THEIR AGENTS, INVITEES AND CONTRACTORS WHO VIEW AND/OR INSPECT THE PROPERTY. THIS DUTY INCLUDES A DUTY TO WARN ALL SUCH PERSONS OF DANGEROUS CONDITIONS THAT WOULD NOT BE OBVIOUS TO SUCH PERSONS. TO MINIMIZE SELLER'S POTENTIAL LIABILITY, SELLER IS ENCOURAGED TO CORRECT ALL HAZARDOUS CONDITIONS ON THE PROPERTY. SELLER AGREES TO INDEMNIFY AND HOLD BROKER HARMLESS FROM AND AGAINST ANY AND ALL CLAIMS, CAUSES OF ACTION, SUITS AND DAMAGES ARISING OUT OF OR RELATING TO A PERSON OR PERSONS BEING INJURED OR HARMED WHILE ON THE PROPERTY.

3. **Limits on Broker's Authority and Responsibility.** Seller acknowledges and agrees that Broker:
   - **a.** may show other properties to prospective buyers who are interested in Property;
   - **b.** shall have no duty to inspect the Property or advise buyer or Seller on any matter relating to the Property which could have been revealed through a survey, appraisal, title search, Official Georgia Wood Infestation Report, utility bill review, septic system inspection, well water test, tests for radon, asbestos, mold, and lead-based paint; inspection of the Property by a licensed home inspector, construction expert, structural engineer, or environmental engineer; review of this Agreement and transaction by an attorney, financial planner, mortgage consultant, or tax consultant; and consulting appropriate governmental officials to determine, among other things and without limitation, the zoning of the Property, the propensity of the Property to flood, flood zone certifications, whether any condemnation action is pending or has been filed or other nearby governmental improvements are planned. Seller acknowledges that Broker does not perform or have expertise in any of the above tests, inspections, and reviews or in any of the matters handled by the professionals referenced above. Seller should seek independent expert advice regarding any matter of concern to Seller relative to the Property and this Agreement. Seller acknowledges that Broker shall not be responsible to monitor or supervise or inspect any portion of any construction or repairs to Property and that such tasks fall outside the scope of real estate brokerages services;
   - **c.** shall owe no duties to Seller nor have any authority on behalf of Seller other than what is set forth in this Agreement;
   - **d.** shall make all disclosures required by law;
   - **e.** shall not be responsible for ensuring that Seller complies with the duties and deadlines contained in any Contract to Sell entered into by Seller and that Seller shall be solely responsible for the same; and
   - **f. SHALL BE INDEMNIFIED AND HELD HARMLESS BY SELLER DURING AND AFTER THE TERMINATION OF THIS AGREEMENT FROM ANY AND ALL CLAIMS, CAUSES OF ACTION, OR DAMAGES ARISING OUT OF OR RELATING TO:**
     - (1) **INACCURATE AND/OR INCOMPLETE INFORMATION PROVIDED BY SELLER TO BROKER;**
     - (2) **EARNEST MONEY HANDLED BY ANYONE OTHER THAN BROKER;**
     - (3) **SELLER'S NEGLIGENCE OR INTENTIONAL WRONGDOING;**
     - (4) **ANY LOSS OR THEFT OF VALUABLES, PRESCRIPTION DRUGS, KEYS, OR OTHER PERSONAL PROPERTY, RELATING TO THE USE OF A LOCKBOX OR AN OPEN HOUSE RESULTING FROM SELLER'S FAILURE TO REMOVE OR SECURE THE SAME;**
     - (5) **THE EXISTENCE OF UNDISCLOSED MATERIAL FACTS ABOUT THE PROPERTY OR THE TRANSACTION; AND**
     - (6) **ANY DAMAGES OR INJURIES OCCURRING ON THE PROPERTY AS A RESULT OF DANGEROUS OR DEFECTIVE CONDITIONS ON THE PROPERTY OR THE FAILURE TO SECURE OR RESTRAIN PETS.**
   - **g.** shall have no authority to bind Seller to any Contract to Sell or give notices on behalf of Seller other than to forward, if requested by Seller, a notice signed by Seller pertaining to a real estate transaction. Under the standard GAR Purchase and Sale Agreement Forms, notice received by the Broker is deemed to be notice received by the Seller.

4. **LIMIT ON BROKER'S LIABILITY. SELLER ACKNOWLEDGES THAT BROKER:**
   - **a. SHALL, UNDER NO CIRCUMSTANCES, HAVE ANY LIABILITY GREATER THAN THE AMOUNT OF COMPENSATION PAID HEREUNDER TO BROKER (EXCLUDING ANY COMPENSATION AMOUNT PAID TO A COOPERATING REAL ESTATE BROKER, IF ANY) OR, IF NO COMPENSATION IS PAID TO BROKER, THAN THE SUM OF $100;**
   - **b. BROKER SHALL HAVE NO LIABILITY FOR PROVIDING INFORMATION THAT LATER TURNS OUT TO BE INCORRECT OR FALSE; PROVIDED THAT, BROKER DID NOT HAVE ACTUAL KNOWLEDGE THAT THE INFORMATION WAS FALSE AND DISCLOSES TO SELLER THE SOURCE OF THE INFORMATION; AND**
   - **c. NOTWITHSTANDING THE ABOVE, SHALL HAVE NO LIABILITY IN EXCESS OF $100 FOR ANY LOSS OF FUNDS AS THE RESULT OF WIRE OR CYBER FRAUD.**
   - **d. THIS LIMITATION OF LIABILITY SHALL SURVIVE THE TERMINATION OF THIS AGREEMENT.**

5. **Disclosure of Potentially Fraudulent Activities as required by the Georgia Residential Mortgage Fraud Act (O.C.G.A. § 16-8-100 et seq.)**
   - **a.** To help prevent fraud in real estate transactions, Seller does hereby give Broker permission to report any suspicious, unusual and/or potentially illegal or fraudulent activity (including but not limited to mortgage fraud) to:
     - (1) Governmental officials, agencies and/or authorities and/or
     - (2) Any mortgage lender, mortgage insurer, mortgage investor and/or title insurance company which could potentially be harmed if the activity was in fact fraudulent or illegal.
   - **b.** Seller acknowledges that Broker does not have special expertise with respect to detecting fraud in real estate transactions. Therefore, Seller acknowledges that:
     - (1) Activities which are fraudulent or illegal may be undetected by Broker; and
     - (2) Activities which are lawful and/or routine may be reported by Broker as being suspicious, unusual or potentially illegal or fraudulent.

Copyright© 2026 by Georgia Association of REALTORS®, Inc. 

6. **Miscellaneous.**

~~a. **Arbitration:** All claims arising out of or relating to this Agreement and the alleged acts or omissions of any or all the parties hereunder shall be resolved by arbitration in accordance with the Federal Arbitration Act 9 U.S.C. § 1 et. seq. and the rules and procedures of the arbitration company selected to administer the arbitration. Upon making or receiving a demand for arbitration, the parties shall work together in good faith to select a mutually acceptable arbitration company with offices in Georgia to administer and conduct the arbitration. If the parties cannot mutually agree on an arbitration company, the company shall be selected as follows. Each party shall simultaneously exchange with the other party a list of three arbitration companies with offices in Georgia acceptable to that party to administer and conduct the arbitration. If there is only one (1) arbitration company that is common to both lists, that company shall administer and conduct the arbitration. If there is more than one arbitration company that is common to both lists, the parties shall either mutually agree on which arbitration company shall be selected or flip a coin to select the arbitration company. If there is not initially a common arbitration company on the lists, the parties shall repeat the process by expanding their lists by two each time until there is a common name on the lists selected by the parties. The decision of the arbitrator shall be final and the arbitrator shall have authority to award attorneys' fees and allocate the costs of arbitration as part of any final award. All claims shall be brought by a party in his or her individual capacity and not as a plaintiff or class member in any purported class or representative proceeding. The arbitrator may not consolidate more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding. Notwithstanding anything to the contrary contained herein, this agreement to arbitrate shall not apply to: (1) any claim regarding the handling and disbursement of earnest money; and (2) any claim of Broker regarding the entitlement to or the non-payment of Compensation hereunder.~~ **** PARAGRAPH CONTINUES AT THE BOTTOM OF THE PAGE***

b. **Assignability:** As part of a sale of all or substantially all of the assets of Broker to another brokerage firm, Seller consents to this Agreement being assigned by Broker to the other brokerage firm. In such event, the assignee, upon consenting to the assignment, shall: (1) thereafter be responsible for performing all of the duties and responsibilities of the assignor under this Agreement; and (2) have all of the rights of assignor including the right to receive the Compensation referenced in this Agreement.

c. **Attorney's Fees:** In the event this Agreement, or any provision therein, is enforced through or is the subject of a dispute resulting in litigation or arbitration, the prevailing party shall be entitled to recover its actual attorney's fees, reasonably incurred.

d. **Broker:** In this Agreement, the term "Broker" shall mean the licensed Georgia real estate broker(s) or brokerage firm(s) and their affiliated licensees in this transaction except as may be specifically provided otherwise herein.

e. **Definition of Seller and Buyer:** For the purposes of this section, the term "Seller" shall include Seller, all members of the Seller's immediate family, any legal entity in which Seller or any member of Seller's immediate family owns or controls, directly or indirectly, more than ten percent (10%) of the shares or interests therein, and any third party who is acting under the direction or control of any of the above parties. For the purposes of this Agreement, the term "buyer" shall include buyer, all members of the buyer's immediate family, any legal entity in which buyer or any member of buyer's immediate family owns or controls, directly or indirectly, more than ten percent (10%) of the shares or interests therein, and any third party who is acting under the direction or control of any of the above parties.

f. **Disclaimer Regarding the Sale of Certain Property:** Seller acknowledges that O.C.G.A. § 2-1-7 prohibits certain nonresident aliens, foreign persons, foreign companies and U.S. companies owned by any of the above from buying or possessing agricultural land and certain land within a ten (10) mile radius of any military base, military installation, or military airport. Seller agrees to carefully read the entirety of the above referenced Code section before contracting to sell such land. Seller should consult with legal counsel to fully understand the law. If Seller has not submitted written questions to Broker regarding the law to Broker prior to contracting to sell prohibited property, Seller acknowledges that Seller fully understands the limitations and requirements of the law, and Broker shall have no responsibility for further doing the same. In such event, Seller shall indemnify and hold Broker harmless from any and all claims, causes of action, suits and damages arising out of or relating to Seller's failure to comply with the law. Violating the law can subject Seller to civil and criminal penalties. The law also requires certain Sellers and others to divest themselves of such property within certain time periods if they are now no longer legally able to purchase such property.

g. **Entire Agreement:** This Agreement represents the entire agreement of the parties with respect to listing of the Property for sale and is intended to supersede all prior written and verbal agreements of the parties hereto. No representation, statement, promise, or inducement not contained herein shall be binding on either party hereto. This Agreement shall be binding on the heirs of the Seller.

h. **Fair Housing Disclosure:** Seller acknowledges that Broker is committed to providing equal housing opportunities to all persons and that Seller and Broker are obligated to comply with state and federal fair housing laws in selling the Property. Seller and Broker agree not to discriminate in the sale of the Property on the basis of race, color, religion, national origin, sex, familial status, disability, sexual orientation or gender identity.

i. **FIRPTA:** Under the Foreign Investment in Real Property Tax Act ("FIRPTA"), Sellers who are not a "foreign person" as that term is defined in Section 1445(f)(3) of the Internal Revenue Code, shall deliver to the Closing Attorney at Closing a FIRPTA Affidavit. If Seller is a "foreign person" additional taxes may need to be withheld at Closing.

j. **GAR Forms:** The Georgia Association of REALTORS®, Inc. ("GAR") issues certain standard real estate forms. These GAR forms are frequently provided to the parties in real estate transactions. No party is required to use any GAR form. These forms are generic and written with the interests of multiple parties in mind. The parties agree to carefully review the GAR Forms to be used in this transaction and modify the same to meet their specific needs. If any party has any questions about their rights and obligations under any GAR form, they should consult an attorney. Provisions in the GAR Forms may be subject to differing interpretations by our courts other than what the parties may have intended. Our courts may at times strike down or not enforce provisions in our GAR Forms, as written. No representation is made that the GAR Forms will protect the interests of any particular party or will be fit for any specific purpose. The parties hereto agree that the GAR forms may only be used in accordance with the licensing agreement of GAR. While GAR forms may be modified by the parties, no GAR form may be reproduced with sections removed, altered or modified unless the changes are visible on the form itself or in a stipulation, addendum, exhibit or amendment thereto.

**** CONTINUED: shall be subject to the jurisdiction of the United States Bankruptcy Court, Northern District of Georgia, Atlanta Division, in re: Blomquist Builders Group, Inc., Case No. 23-59198-SMS.***

Copyright© 2026 by Georgia Association of REALTORS®, Inc. 

- **k. Governing Law and Interpretation:** This Agreement may be signed in multiple counterparts each of which shall be deemed to be an original and shall be interpreted in accordance with the laws of Georgia. No provision herein, by virtue of the party who drafted it, shall be interpreted less favorably against one party than another. All references to time shall mean the time in Georgia. If any provision herein is held to be unenforceable, it shall be severed from this Agreement while the remainder of the Agreement shall, to the fullest extent permitted by law, continue to have full force and effect as a binding contract.
- **l. Independent Contractor Relationship:** This Agreement shall create an independent contractor relationship between Broker and Seller. Broker shall at no time be considered an employee of Seller. Unless otherwise stipulated, all affiliated licensees of Broker are independent contractors of Broker.
- **m. No Imputed Knowledge:** Seller acknowledges and agrees that with regard to any property which Seller intends to sell, there shall be no knowledge imputed between Broker and Broker's licensees or between the different licensees of Broker. Broker and each of Broker's licensees shall be deemed to have only actual knowledge of such properties.
- **n. Notices Between Seller and Broker:**
  - (1) Communications Regarding Real Estate Transactions: Seller acknowledges that many communications and notices in real estate transactions are of a time sensitive nature and that the failure to be available to receive such notices and communications can have adverse legal, business and financial consequences. During the term of this Agreement, Seller agrees to remain reasonably available to receive communications from Broker.
  - (2) Notices between Broker and Seller Regarding this Agreement: Seller and Broker agree that communications and notices between them regarding the terms of this Agreement shall be in writing, signed by the party giving the notice, and may be delivered in person or to any address, email address and/or facsimile number to the person to whom the communication or notice is being given specifically set forth in this Agreement. It is the intent of the parties that those means of transmitting notices for which a party has not provided an address or number shall not be used for receiving notices and communications. For example, if a party has not provided an email address in this Agreement, it shall mean that the party is not accepting notices or communications sent by this means.
- **o. Referrals:** Seller hereby authorizes Broker to refer Seller to another real estate licensee or broker for brokerage or relocation services, or to a builder for services, not related to the sale of the Property. Seller acknowledges and agrees that Broker may receive a valuable consideration for the referral.
- **p. Survival:** The rights and obligations of Broker to Compensation subsequent to the termination or expiration of this Agreement as set forth herein, the limitation of liability, the obligation to arbitrate and indemnify Broker and other similar provisions that by their terms are meant to protect Broker shall survive the termination of this Agreement.
- **q. Third Party Vendors:** Broker may provide Seller with the names of vendors to perform services on behalf of Seller relative to real estate transactions involving Seller. Broker does not warrant or endorse the performance of any such vendor and the names of vendors are provided solely as a courtesy and starting point for Seller to identify possible vendors to perform services on behalf of Seller. Seller agrees to do his or her own due diligence regarding the skills, expertise and reputation of all such vendors performing services for Seller and the terms of all contracts with vendors (including whether there is a limitation of liability in such contracts). All decisions regarding which vendor to hire shall be solely that of Seller.
- **r. Time of Essence:** Time is of the essence of this Agreement.
- **s. Use of Initials "N/A":** The use of the initials "N/A" or "N.A." in filling out a blank in this Agreement shall mean "not applicable".

7. **<u>Broker's and Seller's Duties</u>.**
   - **a. Broker's Duties to Seller.** Broker shall promote the interests of the Seller by:
     1. seeking a sale price at the price and terms stated in this Agreement or at a price and terms acceptable to Seller; provided, however, Broker shall not be obligated to seek additional offers to purchase the Property while the Property is subject to a Contract to Sell, unless brokerage engagement so provides;
     2. timely presenting all offers to and from the Seller, even when Property is subject to a Contract to Sell;
     3. disclosing to the Seller material facts which the Broker has actual knowledge concerning the transaction;
     4. advising Seller to obtain expert advice as to material matters which are beyond the expertise of Broker; and
     5. timely accounting for all money and property received in which the Seller has or may have an interest.
   - **b.** Broker shall keep confidential all information received by Broker during the course of the engagement which is made confidential by an express request or instruction from Seller unless Seller permits such disclosure by subsequent word or conduct, or such disclosure is required by law; provided, however, that disclosures between Broker and any of Broker's affiliated licensees assisting Broker in representing Seller shall not be deemed to breach the duty of confidentiality described above.
   - **c. Seller's Duties.** Seller will do the following:
     1. cooperate with Broker to sell the Property to prospective buyers and will refer all inquiries concerning the sale of Property to the Broker during the term of this Agreement;
     2. make the Property available for showing at reasonable times as requested by Broker;
     3. provide Broker with accurate information regarding the Property (including information concerning all adverse material facts pertaining to the physical condition of Property);
     4. comply with all local, state and federal laws applicable to the sale of the Property; and
     5. carefully read all Contracts to Sell before signing them and comply with all duties and all time deadlines contained therein.

Copyright© 2026 by Georgia Association of REALTORS®, Inc. 

8. **Seller Default.**
   a. **Events Constituting a Seller Default.** Seller shall be in breach of this Agreement if Seller:
      1. Terminates this Agreement prior to the end of the Agreement without the prior written agreement of Broker. Broker removing the listing from multiple listing service(s), taking down Broker's sign, ceasing to market the Property after this Agreement is unilaterally terminated by Seller and other similar activities shall not be evidence of the Broker's agreement to mutually terminate this Agreement, but shall instead merely be an acquiescence by Broker of the unilateral termination by Seller;
      2. Defaults under any Contract to Sell the Property resulting in such contract not closing;
      3. Agrees with a buyer of the Property to terminate a Contract to Sell without the consent of Broker; or
      4. Refuses to accept a lawful, bona fide, written offer to purchase the Property meeting the following terms and conditions at a time when the Property is not otherwise under contract:
         i. The purchase price in the offer, after deducting all fees, costs and contributions to be paid by the Seller (other than the real estate brokerage Compensation to be paid by Seller and the Seller's payment of ad valorem real property taxes through the date of closing) is for at least the full listing price set forth herein and is to be paid in cash or cash equivalent at the closing;
         ii. The offer is not subject to contingencies, conditions precedent, due diligence periods, or required terms other than those set forth herein;
         iii. The offer is not subject to Seller warranties or representations other than: (i) those warranties the Seller agrees to provide in any Seller's Property Disclosure Statement the Seller has filled out and made available to prospective buyers for inclusion in any offer, and (ii) the Seller warranting to convey good and marketable title (which for all purposes herein shall have the same meaning as set forth in the GAR Purchase and Sale Agreements) to the Property at closing by limited warranty deed; and
         iv. The date of closing in the offer is not less than thirty (30) days nor more than forty-five (45) days from the offer date.

      Notwithstanding the above, in the event there are multiple offers to purchase the Property meeting the above criteria, Seller shall not be in breach of this Agreement if the Seller first gives the prospective buyers a reasonable opportunity (not exceeding ten (10) days from the date of the first offer) to make their best offer to purchase the Property and Seller accepts one of the offers.
   b. **Broker Remedies for Seller Default.** Seller shall immediately pay Broker the Compensation referenced herein for any of the Seller defaults above, except for Seller unilaterally terminating this Agreement prior to the end of the Listing Period (as the same may have been extended as provided for herein). With respect to this event of default, Seller's obligation to pay Broker its Compensation shall be controlled by the Protected Period sections of this Agreement.
   ~~c. **Seller Default.** In the event Seller defaults under this Agreement, Seller shall, in addition to its other obligations set forth elsewhere herein, immediately reimburse Broker for the out-of-pocket costs and expenses incurred by Broker and Broker's affiliated licensees in seeking to market and sell the Property. Such costs and expenses shall include, without limitation, printing, and copying charges, mileage at the highest rate allowed by the IRS as a business deduction and expenses to advertise the Property in various media. Seller shall also pay all costs, fees and charges for removing the listing from any multiple listing service. The payment of these costs, fees, charges and expenses by Seller shall not waive or limit Broker's right to assert any other claim, cause of action or suit (hereinafter collectively, "Claims") against Seller for Broker's Compensation and /or other damages and shall not release Seller from such Claims. Notwithstanding the above, the amount of such fees, charges, costs and expenses paid by Seller to Broker hereunder shall be an offset against any Claim of Broker for Compensation.~~ ** See below* 9-8-26

9. **WARNING TO BUYERS AND SELLERS: BEWARE OF CYBER-FRAUD.** Fraudulent emails attempting to get the buyer and/or Seller to wire money to criminal computer hackers are increasingly common in real estate transactions. Specifically, criminals are impersonating the online identity of the actual mortgage lender, closing attorney, real estate broker or other person or companies involved in the real estate transaction. In that role, the criminals send fake wiring instructions attempting to trick buyers and/or sellers into wiring them money related to the real estate transaction, including, for example, the buyer's earnest money, the cash needed for the buyer to close, and/or the Seller's proceeds from the closing. These instructions, if followed, will result in the money being wired to the criminals. In many cases, the fraudulent email is believable because it is sent from what appears to be the email address/domain of the legitimate company or person responsible for sending the buyer or Seller wiring instructions. The buyer and/or Seller should verify wiring instructions sent by email by independently looking up and calling the telephone number of the company or person purporting to have sent them. Buyers and Sellers should never call the telephone number provided with wiring instructions sent by email since they may end up receiving a fake verification from the criminals. Buyer and Sellers should be on special alert for: 1) emails directing the buyer and/or Seller to wire money to a bank or bank account in a state other than Georgia; and 2) emails from a person or company involved in the real estate transaction that are slightly different (often by one letter, number, or character) from the actual email address of the person or company.

10. **STATUTE OF LIMITATIONS: FOR AND IN CONSIDERATION OF THE SUM OF $10.00 AND OTHER GOOD AND VALUABLE CONSIDERATION, THE RECEIPT AND SUFFICIENCY OF WHICH ARE THEREBY ACKNOWLEDGED, ALL CLAIMS OF ANY NATURE WHATSOEVER AGAINST BROKER AND/OR THEIR AFFILIATED LICENSEES, AND ANY OTHER REAL ESTATE BROKER AND THEIR AFFILIATED LICENSEES INVOLVED IN ANY TRANSACTION IN WHICH SELLER CONTRACTS TO SELL THE PROPERTY, WHETHER ASSERTED IN LITIGATION OR ARBITRATION AND SOUNDING IN BREACH OF CONTRACT AND/OR TORT, MUST BE BROUGHT WITHIN ONE (1) YEAR FROM THE DATE ANY CLAIM OR CAUSE OF ACTION ARISES. SUCH ACTIONS SHALL THEREAFTER BE TIME-BARRED. ALL SUCH BROKERS SHALL BE EXPRESS THIRD-PARTY BENEFICIARIES OF THIS PROVISION.**

**** NOT APPLICABLE - ALL SELLER DEFAULT PROVISIONS SHALL BE SUBJECT TO FURTHER ORDER OF THE BANKRUPTCY COURT.***

Copyright© 2026 by Georgia Association of REALTORS®, Inc.

**11. Brochures.** Brochures referenced herein are prepared courtesy of GAR. The recommendations contained therein are general in nature and may not be applicable to the transaction reflected in this Agreement, and are not intended to either be exhaustive or specific advice that Seller should rely on without Seller first consulting with independent experts and professionals of Seller's own choosing to ensure that Seller is protected.

**The following Brochures have been received by the Seller(s):** (Check all that apply. Any box not checked means the Seller(s) has not received that brochure or other consumer information)

- ☐ GAR CB01 – The ABC's of Agency
- ☐ GAR CB04 – Lead-Based Paint Pamphlet
- ☐ GAR CB07 – Mold Pamphlet
- ☐ GAR CB08 – EPA Home Buyer's and Seller's Guide to Radon Pamphlet
- ☐ GAR CB10 – Protect Yourself When Selling Real Property
- ☐ GAR CB28 – What Buyers and Sellers Should Know About Short Sales and Distressed Properties
- ☐ GAR CB29 – What to Know about Buying Agricultural Land and Land Near Military Bases, Installations and Airports
- ☐ Other: ______________________________
- ☐ Other: ______________________________

**12. Exhibits and Addenda.** All exhibits and/or addenda attached hereto, listed below, or referenced herein are made a part of this Agreement. If any such exhibit or addenda conflicts with any preceding paragraph (including any changes thereto made by the parties), said exhibit or addendum shall control:

- ☐ Legal Description Exhibit (F807 or other) "________"
- ☐ Lead-Based Paint Exhibit (F316) "________"
- ☐ Retainer Fee Exhibit (F149) "________"
- ☒ Other: Special Stipulations Exhibit "B"
- ☐ Other: ______________________________

**SPECIAL STIPULATIONS:** The following Special Stipulations, if conflicting with any exhibit, addendum, or preceding paragraph, shall control:

☐ **Additional Special Stipulations (F246) are attached.**

Copyright© 2026 by Georgia Association of REALTORS®, Inc.

**BY SIGNING THIS AGREEMENT, SELLER ACKNOWLEDGES THAT: (1) SELLER HAS READ ALL PROVISIONS AND DISCLOSURES MADE HEREIN; (2) SELLER UNDERSTANDS ALL SUCH PROVISIONS AND DISCLOSURES AND HAS ENTERED INTO THIS AGREEMENT VOLUNTARILY; AND (3) SELLER IS NOT SUBJECT TO A CURRENT SELLER BROKERAGE ENGAGEMENT AGREEMENT WITH ANY OTHER BROKER. IF A LICENSEE IS SIGNING THIS AGREEMENT ON BEHALF OF BROKER, LICENSEE WARRANTS THAT LICENSEE HAS FULL AUTHORITY TO SIGN THIS AGREEMENT AND BIND BROKER HERETO.**

## SELLER'S ACCEPTANCE AND CONTACT INFORMATION

If Seller is a legal entity, this Agreement must be signed by one or more authorized persons, as required in the entity's legal documents. The person's signature must include the capacity in which the person is signing, such as "Trustee", "General Partner", "Manager", "President", etc.

9-8-26

**1 Seller's Signature**
*S. Gregory Hays, as and only as Trustee for the Bankruptcy Estate of Blomquist Builders Group, Inc.*
Print or Type Name Date

Seller's Address for Receiving Notice

Seller's Phone Number: ☐ Cell ☐ Home ☐ Work

Seller's Email Address

**2 Seller's Signature**

Print or Type Name Date

Seller's Address for Receiving Notice

Seller's Phone Number: ☐ Cell ☐ Home ☐ Work

Seller's Email Address

☐ **Additional Signature Page (F146) is attached.**

## BROKER / BROKER'S AFFILIATED LICENSEE CONTACT INFORMATION

Chambers Select Realty
Brokerage Firm

**Broker/Affiliated Licensee Signature**

Wendy Chambers/Bill Celler — 9.8.26
Print or Type Name — Date

404-593-5156
Licensee's Phone Number — Fax Number

356558
GA Real Estate License Number

CHAM01 — 78991
MLS Office Code — Brokerage Firm License Number

404-593-5156
Broker's Phone Number — Fax Number

444 Manget Street Marietta GA 30060
Broker's Address

wendy@chambersselect.com
Licensee's Email Address

Cobb
REALTOR® Membership

RECEIPT OF A COPY OF THIS AGREEMENT IS HEREBY ACKNOWLEDGED BY SELLER.
The above Agreement is hereby accepted ________ o'clock _____ .m. on the date of
______________________________.

# Exhibit "B"

The following Special Stipulations, if conflicting with any preceding paragraph, shall control:

1. The "Seller" of the Property means S. Gregory Hays, as and only as Chapter 7 Trustee for the Bankruptcy Estate of Blomquist Builders Group, Inc. (Case No. 23-59198-SMS).

2. Seller's Property Disclosure Statement and Official Wood Infestation Report. Seller and Listing Broker have no specific knowledge and make no representations concerning the condition of the Property. Purchaser understands that the Property is being sold "AS IS", "WHERE IS".

3. Seller warrants that Seller has title to the Property described herein and/or will have full authority to enter into this Agreement upon order of the Bankruptcy Court and that the information with respect to the Property as set out in this Agreement is true and correct to the best of the Seller's knowledge, it being understood that Trustee is a bankruptcy trustee who has no knowledge of the Property.

4. The parties hereto acknowledge that the Agreement and all terms, conditions, warranties and representations are subject to the approval (and not binding without such approval) of the U.S. Bankruptcy Court, Northern District of Georgia, Atlanta Division, in Chapter 7 Case No. 23-59198-SMS.

5. In the event Seller contracts to sell the Property to any buyer, the parties hereto acknowledge that any contract for sale of the Property is subject to and contingent upon approval of the U.S. Bankruptcy Court, Northern District of Georgia, Atlanta Division, in Chapter 7 Case No. 23-59198-SMS, and no commission shall be paid unless or until Bankruptcy Court approval and closing of the sale, at which time Trustee will execute a Trustee's Deed transferring the Property, free and clear of all liens, interests and encumbrances.

6. All parties agree that the closing shall take place no later than ten (10) days after the date the Court's Order approving the sale has been entered on the Court's Docket.

7. The closing attorney shall be such attorney as selected by Seller.

8. Earnest Money shall be at least two percent (2%) of the Purchase Price.

9. Seller will make no repairs to the Property.

10. In the event Seller sells or contracts to sell the Property to any buyer introduced to the Property by said broker within sixty (60) days after expiration of the listing period, then Seller shall pay the commission to said broker at the rate set herein at the closing on the sale or exchange of the Property subject to bankruptcy court approval.

[signature], Trustee ______________________          ______________________

**EXHIBIT "D"**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| In re:<br><br>BLOMQUIST BUILDERS GROUP, INC.,<br><br>Debtor. | CASE NO. 23-59198-SMS<br><br>CHAPTER 7 |

**REAL ESTATE BROKER'S VERIFIED STATEMENT PURSUANT TO FEDERAL RULES OF BANKRUPTCY PROCEDURE 2014 AND 5002**

The undersigned hereby declares under penalty of perjury:

1. Chambers Select has been asked to represent S. Gregory Hays, as Chapter 7 Trustee for the bankruptcy case (the "**Bankruptcy Case**") of Blomquist Builders Group, Inc. (the "**Debtor**"), in the value evaluation and sale of that certain improved real property located at (i) 111 Catesby Road, Powder Springs, Georgia 30127; (ii) 5035 Pindos Trail, Powder Springs, Georgia 30127; and (iii) 5749 Sunburst Drive, Powder Springs, Georgia 30127 (collectively, the "**Properties**").

2. Chambers Select is experienced at providing opinions as to the valuation and at handling the sales of real property in the State of Georgia.

3. Chambers Select is to be compensated for its services as a real estate broker at six (6%) percent of the selling price of each Property, subject to Court approval after notice and hearing, which notice and hearing may be provided with the notice of the relevant sale of that Property.

4. Except as set forth herein, neither I nor Chambers Select has a connection within the scope of Bankruptcy Rule 2014 with the creditors, or any party in interest in this bankruptcy case, or any attorney or accountant thereof, or Debtor.

5. Neither I nor Chambers Select are related to or have any connection within the scope of Bankruptcy Rules 2014 or 5002 with any Judge of the United States Bankruptcy Court, Northern District of Georgia. Moreover, neither I nor Chambers Select are related to or have any connection within the scope of Bankruptcy Rules 2014 or 5002 with any attorney, employee, or agent of the Office of the United States Trustee.

6. To the best of my knowledge, information, and belief, Chambers Select and I are disinterested persons as that term is defined under 11 U.S.C. § 101(14).

Dated this 8th day of September, 2026.

Bill Celler

Bill Celler
Georgia Real Estate License No. 356558
Telephone: (404) 593-5156
wendy@chambersselect.com

**CERTIFICATE OF SERVICE**

This is to certify that I have this day electronically filed the foregoing Application to Employ Real Estate Agent under Listing Agreements using the Bankruptcy Court's Electronic Case Filing program, which sends a notice of this filing to all parties and counsel of record who have appeared in this case and are registered to receive electronic notice, as follows:

- **Evan M. Altman (counsel for Debtor)** [e-mail address per CM/ECF Notice of Electronic Filing]
- **Leslie M. Pineyro (counsel for Debtor)** [e-mail address per CM/ECF Notice of Electronic Filing]
- **Ian M. Falcone (counsel for Blake Blomquist)** [e-mail address per CM/ECF Notice of Electronic Filing]
- **David King (counsel for Denise Chapman)** [e-mail address per CM/ECF Notice of Electronic Filing]
- **G. Frank Nason, IV (counsel for Denise Chapman)** [e-mail address per CM/ECF Notice of Electronic Filing]
- **Miye Johnson Yi (counsel for Estates at Cornerstone Community Association, Inc.)** [e-mail address per CM/ECF Notice of Electronic Filing]
- **William D. Matthews (co-counsel for Trustee)** [e-mail address per CM/ECF Notice of Electronic Filing]
- **Office of the United States Trustee** [e-mail address per CM/ECF Notice of Electronic Filing]

This is to further certify that I have this day served the foregoing Application to Employ Real Estate Agent under Listing Agreements by first class, United States mail, with postage prepaid fully thereon, to the following parties:

Office of the United States Trustee
362 Richard B. Russell Building
75 Ted Turner Drive, SW
Atlanta, GA 30303

Bill Celler
Chambers Select Realty
444 Manget Street
Marietta, GA 30060

This 9th day of September, 2026.

By: */s/ Michael J. Bargar*
Michael J. Bargar
Ga. Bar No. 645709